ALLEN MATKINS LECK GAMBLE
    MALLORY & NATSIS LLP
MATTHEW T. SESSIONS (BAR NO. 307098)
CATRIONA M. LAVERY (BAR NO. 310546)
STACEY A. VILLAGOMEZ (BAR NO. 317081)
2010 Main Street, 8th Floor
Irvine, California 92614-7214
Phone:  (949) 553-1313
Fax:  (949) 553-8354
E-Mail:  msessions@allenmatkins.com
        clavery@allenmatkins.com
        svillagomez@allenmatkins.com

Attorneys for Defendant
PATRICK BYRNE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERIS BANK, a Georgia corporation,<br><br>             Plaintiff,<br><br>    v.<br><br>PATRICK BYRNE, an individual,<br><br>             Defendant. | Case No. 8:26-cv-00393-MWC-JDE<br><br>ASSIGNED FOR ALL PURPOSES TO:<br>Judge Michelle Williams Court<br><br>**DEFENDANT PATRICK BYRNE'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:      July 10, 2026<br>Time:      1:30 p.m.<br>Dept:      6-A |

ALLEN MATKINS LECK
GAMBLE MALLORY &
NATSIS LLP
ATTORNEYS AT LAW

4928-5824-7351

CASE NO. 8:26-CV-00393-MWC-JDE
REPLY ISO MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................................6

II.  ADDITIONAL PROCEDURAL BACKGROUND .........................................7

III. ARGUMENT .........................................................................................................7

    A.   Ameris' Claims are Waived Compulsory Counterclaims ...................7

        1.   Ameris Was on Inquiry Notice When It Filed Its Answer ........................................................................................7

        2.   Ameris' Claims Arise from the Same Transaction or Occurrence as the Main Action ...............................................9

        3.   Collateral Estoppel Further Demonstrates Ameris' Claims are Compulsory Counterclaims ....................................12

    B.   The Claim-Splitting Doctrine Independently Bars Ameris' Claims .........................................................................................13

    C.   The Employment Agreement's Confidentiality Clause is Void .............................................................................................14

    D.   Ameris Fails to State a Claim For Misappropriation .........................15

    E.   CUTSA Preempts Ameris' Conversion Claim .................................16

    F.   Ameris' California Penal Code § 502 Claim Fails ...........................17

    G.   Leave to Amend Should Be Denied....................................................17

IV.  CONCLUSION ...................................................................................................17

ALLEN MATKINS LECK
GAMBLE MALLORY &
NATSIS LLP
ATTORNEYS AT LAW

4928-5824-7351

- 2 -

CASE NO. 8:26-CV-00393-MWC-JDE
REPLY ISO MOTION TO DISMISS

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*7EDU Impact Acad. Inc. v. You*,
760 F. Supp. 3d 981 (N.D. Cal. 2024) ............................................................... 16

*Align Tech., Inc. v. Tran*,
179 Cal. App. 4th 949 (2009) ............................................................................ 11

*Apr. Enters., Inc. v. KTTV*,
147 Cal. App. 3d 805 (1983) ............................................................................... 9

*Arthur J. Gallagher & Co. v. Tarantino*,
498 F. Supp. 3d 1155 (N.D. Cal. 2020) ....................................................... 15, 16

*B & B Hardware, Inc. v. Hargis Indus., Inc.*,
575 U.S. 138 (2015) .......................................................................................... 13

*Brown v. TGS Mgmt. Co., LLC*,
57 Cal. App. 5th 303 (2020),
*as modified on denial of reh'g* (Nov. 12, 2020) ............................................... 14

*Bus. Sols., LLC v. Ganatra*,
2019 WL 926351 (C.D. Cal. Jan. 7, 2019) ....................................................... 17

*Byton N. Am. Corp. v. Breitfeld*,
2021 WL 1152895 (C.D. Cal. Jan. 5, 2021) ..................................................... 12

*Chrisman v. City of Los Angeles*,
155 Cal. App. 4th 29 (2007) ............................................................................. 17

*Competitive Technologies v. Fujitsu Ltd.*,
286 F. Supp. 2d 1118 (N.D. Cal. 2003) ............................................................ 11

*Erhart v. Bofl Holding, Inc.*,
387 F. Supp. 3d 1046 (S.D. Cal. 2019) ............................................................. 17

*Grendene USA, Inc. v. Brady*,
2015 WL 1499229 (S.D. Cal. Apr. 1, 2015) ..................................................... 12

*Grupo Salinas Inc. v. JR Salinas Wheels & Tires Inc.*,
2017 WL 2972339 (C.D. Cal. Jan. 30, 2017) ................................................... 10

*Hullinger v. Anand*,
2015 WL 11072169 (C.D. Cal. Dec. 22, 2015) ................................................ 17

*Intermedics, Inc. v. Ventritex, Inc.*,
775 F. Supp. 1258 (N.D. Cal. 1991) ................................................................ 8, 9

*Latona v. Aetna U.S. Healthcare Inc.*,
82 F. Supp. 2d 1089, 1096 (C.D. Cal. 1999) .................................................... 15

ALLEN MATKINS LECK
GAMBLE MALLORY &
NATSIS LLP
ATTORNEYS AT LAW

4928-5824-7351

- 3 -

CASE NO. 8:26-CV-00393-MWC-JDE
REPLY ISO MOTION TO DISMISS

**Page(s)**

*Lockheed Martin Corp. v. RFI Supply, Inc.*,
2006 WL 1525719 (N.D. Cal. May 30, 2006)......................................................12

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*,
590 U.S. 405 (2020)..............................................................................................11

*Lynx Grills, Inc. v. Edwards*,
2016 WL 3019026 (Cal. Ct. App. May 18, 2016)..........................................10, 11

*Marsh USA, Inc. v. Cobbs Allen Cap., LLC*,
2020 WL 9424331 (D. Colo. Aug. 19, 2020)......................................................16

*Mattel v. MGA Entertainment, Inc.*,
705 F.3d 1108 (9th Cir. 2013) ...............................................................................10

*Mendoza v. Amalgamated Transit Union Int'l*,
30 F.4th 879 (9th Cir. 2022) .................................................................6, 13, 14

*Mull v. Motion Picture Industry Health Plan*,
41 F.4th 1120 (9th Cir. 2022)...............................................................................11

*Navigation Holdings, LLC v. Molavi*,
445 F. Supp. 3d 69 (N.D. Cal. 2020)....................................................................16

*Oyeniran v. Holder*,
672 F.3d 800, 806 (9th Cir. 2012), *as amended* (May 3, 2012)........................13

*Pochiro v. Prudential Ins. Co.*,
827 F.2d 1246 (9th Cir. 1987) ........................................................................passim

*Prot. Techs., Inc. v. Ribler*,
2017 WL 923912 (D. Nev. Mar. 8, 2017) ............................................................16

*ReadyLink Healthcare v. Cotton*,
126 Cal. App. 4th 1006 (2005) .............................................................................15

*Sparrow v. Mazda Am. Credit*,
385 F. Supp. 2d 1063 (E.D. Cal. 2005) ................................................................12

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) ..............................................................................17

*WeRide Corp. v. Kun Huang*,
379 F. Supp. 3d 834 (N.D. Cal. 2019)..................................................................16

**Statutes**

Cal. Bus. & Prof. Code § 16600 ......................................................................14, 15

Cal. Penal Code § 502(h)(1) ....................................................................................17

ALLEN MATKINS LECK
GAMBLE MALLORY &
NATSIS LLP
ATTORNEYS AT LAW

4928-5824-7351

- 4 -

**Page(s)**

**Other Authorities**

C.D. Cal. Gen. Order 24-04, § II.I.1.b..................................................................................7

**Rules**

C.D. Cal. L.R. 83-1.3.3........................................................................................................7

Cal. Rule of Court 8.1115..................................................................................................10

Fed. R. Civ. P. 13(a)(1)........................................................................................................9

ALLEN MATKINS LECK
GAMBLE MALLORY &
NATSIS LLP
ATTORNEYS AT LAW

4928-5824-7351

- 5 -

CASE NO. 8:26-CV-00393-MWC-JDE
REPLY ISO MOTION TO DISMISS

## I.  INTRODUCTION

Since Mr. Byrne moved to dismiss, the jury in the Main Action found in his favor *on all claims* and rejected Ameris' after-acquired evidence defense. As expected, Ameris put on evidence of its confidentiality rules and Mr. Byrne's alleged breach of those rules—the jury rejected that evidence. Yet Ameris continues to advance the same arguments in this separate action, filed over a year after Ameris filed its Answer in the Main Action and only a week after Ameris lost summary judgment in the Main Action.

Under Rule 13(a), Ameris should have brought these claims in the Main Action as compulsory counterclaims when it filed its Answer because they arise out of the same transaction or occurrence as Mr. Byrne's claims there. *Pochiro v. Prudential Ins. Co.*, 827 F.2d 1246, 1249 (9th Cir. 1987). Ameris had ample inquiry notice from the moment it fired Mr. Byrne: the Complaint alleges Mr. Byrne refused to return his Ameris-issued laptop upon termination and that when Ameris found evidence of Mr. Byrne's alleged malfeasance, those documents were within its own files. Compl. ¶¶ 52-54, 60-61. When Ameris filed its Answer in the Main Action, it asserted an after-acquired evidence affirmative defense. But it inexplicably failed to inquire further. Or, it did so explicably, potentially deciding the matter wasn't worth investigating, at least not until Mr. Byrne defeated its summary judgment motion. Either way, Ameris knew or should have known it might have this defense and had every opportunity to present it in the Main Action. It should not be rewarded here for its failure to do so.

Additionally, aside from containing compulsory counterclaims, Ameris' Complaint is also barred by the claim-splitting doctrine, which is designed to prevent the division of a single controversy across multiple lawsuits. *See Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 887 (9th Cir. 2022). And Ameris' substantive claims are replete with pleading deficiencies. The Opposition does not overcome these bars, and the case should be dismissed.

ALLEN MATKINS LECK
GAMBLE MALLORY &
NATSIS LLP
ATTORNEYS AT LAW

4928-5824-7351

- 6 -

CASE NO. 8:26-CV-00393-MWC-JDE
REPLY ISO MOTION TO DISMISS

## II.    ADDITIONAL PROCEDURAL BACKGROUND

Mr. Byrne moved to dismiss on May 18, 2026. From June 2 to June 12, the Court held trial in the Main Action. During Ameris' presentation, it elicited testimony from Mr. Byrne and Ameris' Chief Information Officer, Ross Creasy, about the *exact* issues here. *See* RJN Ex. A [Day 2 Tr.]. Ameris cross-examined Mr. Byrne about Ameris' confidentiality agreements, as well as his alleged duties under the agreements, the use of his personal email, and any permission he had to do so. *See id.*, 165:24-167:20; 168:14-169:22; 170:22-171:23; 172:2-173:5. Ameris then called Mr. Creasy to testify *specifically and only* on these topics. *Id.*, 237:3-249:21. He summarized and explained the purpose of Ameris' confidentiality rules and testified that the company requires customer information to "be transported via secured means," "not to a Gmail, not to a Yahoo account, [because] those types of environments are not secure." *See id.*, 238:7-20; 238:25-239:7; 240:2-8; 240:15-22.

The jury then rejected Ameris' defense and found for Mr. Byrne on all claims, awarding approximately $16.6 million in compensatory damages and nearly $63 million in punitive damages. RJN Exs. B-C [Main Action, Dkts. 227, 237].

Meanwhile, Mr. Byrne filed a Notice of Related Case to flag the substantial overlap between this action and the Main Action. Dkt. 23. Ameris did not object, even though the Local Rules permitted it to do so. L.R. 83-1.3.3. The Court accordingly transferred this action to Judge Michelle Williams Court. Dkt. 24; C.D. Cal. Gen. Order 24-04, § II.I.1.b. Immediately after the transfer, Ameris reneged on a previously agreed briefing schedule for this Motion. Dkts. 22, 29.

## III.    ARGUMENT

### A.    Ameris' Claims are Waived Compulsory Counterclaims.

#### 1.    Ameris Was on Inquiry Notice When It Filed Its Answer.

When Ameris filed its Answer in the Main Action, Ameris had the information it needed to discover the facts on which it now bases its allegations. Ameris' own Complaint asserts that Ameris discovered its claims merely by searching its own

ALLEN MATKINS LECK
GAMBLE MALLORY &
NATSIS LLP
ATTORNEYS AT LAW

4928-5824-7351

- 7 -

CASE NO. 8:26-CV-00393-MWC-JDE
REPLY ISO MOTION TO DISMISS

records. Compl. ¶¶ 60-61. It admits that, according to Mr. Byrne, it was "common knowledge" that he used his personal computer to work from home. *Id.* ¶ 81. It also alleges that upon Mr. Byrne's termination—well before he even filed the Main Action—Ameris demanded that Mr. Byrne return his Ameris-issued laptop and he not only refused but made no effort to conceal his refusal. *See id.* ¶¶ 52-54. And it alleges that Ameris has "robust" data security practices, including tracking devices and conducting regular audits. *Id.* ¶¶ 45-47. All of this establishes inquiry notice. Yet to save its case now, Ameris claims it had no reason to suspect Mr. Byrne's alleged mishandling of confidential information earlier and that "Byrne affirmatively *concealed* his misappropriation," Opp. at 16:17-20, but Ameris' own Complaint, again, undermines the point, Compl. ¶¶ 45-47, 52-54, 60-61.

Ameris' Opposition does nothing to overcome this. Ameris tries to point the finger at Mr. Byrne, claiming it couldn't have discovered his malfeasance because he refused to produce many of the documents and forwarding emails in discovery. Opp. at 16:20-23. Even if that were true, Ameris admits it had these emails in its own possession before the Main Action even began. The Complaint alleges Mr. Byrne sent confidential information *from his Ameris email address* to his personal email address, and Ameris discovered these emails simply by searching its own records in September 2025. Compl. ¶¶ 60-61. There is no explanation of why Ameris did not "commence[] review of ESI in connection with Byrne's lawsuit" earlier than September 2025—a *full year* after Mr. Byrne filed suit and more than a year after his termination and alleged refusal to return his Ameris laptop. *Id.* ¶¶ 52-55, 60-61.

These facts alone are fatal to Ameris' Opposition. And the cases Ameris cites do not save it. Ameris mischaracterizes *Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1258, 1267 (N.D. Cal. 1991) to suggest the discovery rule does not apply to, or is more lenient in, trade secrets claims. Opp. at 17:17-21. *Intermedics* actually demonstrates the opposite proposition—the court found nothing "inherently implausible about plaintiff's contention that it was not until 1989 that it in fact

ALLEN MATKINS LECK
GAMBLE MALLORY &
NATSIS LLP
ATTORNEYS AT LAW

4928-5824-7351

- 8 -

CASE NO. 8:26-CV-00393-MWC-JDE
REPLY ISO MOTION TO DISMISS

discovered, *and could have discovered*, the acts" giving rise to plaintiff's allegations. 775 F. Supp. at 1267 (emphasis added). Even so, the court requested an amended complaint alleging when "plaintiff could have discovered those wrongs." *Id.*

Ameris' remaining citations about the discovery rule only confirm Ameris' inquiry notice. For example, in *Kuschner v. Nationwide Credit, Inc.* (cited at Opp. at 15:24-16:3), the court found there was "nothing to indicate that defendant should have been aware of the facts underlying the claim earlier." 256 F.R.D. 684, 688 (E.D. Cal. 2009). Ameris also cites *April Enterprises, Inc. v. KTTV* as rejecting any "duty to continually monitor" the other party's conduct, particularly where the breaching party "commit[s] the offending act secretly." Opp. at 17:10-12 (quoting *Apr. Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805, 832 (1983)). But in that case the court emphasized that the videos at issue were in the "exclusive custody and control" of the opposing party, unlike here where Ameris had the documents it relies on in its own possession. *Apr. Enters.*, 147 Cal. App. 3d at 832.

### 2. Ameris' Claims Arise from the Same Transaction or Occurrence as the Main Action.

Ameris agrees that a compulsory counterclaim is one arising out of "the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1); Opp. at 14:21-26, 18:10-16. Under the Ninth Circuit's "logical relationship test," courts take a "flexible approach to Rule 13" and "analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Pochiro*, 827 F.2d at 1249. What matters is the facts alleged and whether "the facts necessary to prove the two claims substantially overlap" rather than the precise legal theories alleged. *Id.* at 1251.

Here, the trial record following Mr. Byrne's moving to dismiss confirms the claims Ameris alleges here arise out of the same transaction or occurrence as its affirmative defenses in the Main Action. As in *Pochiro*, the issues in the Main Action

and here and are so "logically connected" that "judicial economy and fairness dictate that all the issues be resolved in one lawsuit." 827 F.2d at 1249.

Ameris' Opposition again relies on distinguishable authorities. For example, in *Grupo Salinas Inc. v. JR Salinas Wheels & Tires Inc.*, the court reasoned there was no logical relationship between former employees' wage and hour claims and the former employer's trademark claims because none of the trademark claims required "proof of a prior employment relationship." 2017 WL 2972339, *3 (C.D. Cal. Jan. 30, 2017). Here, however, Ameris' claims arise out of the very terms of Mr. Byrne's employment, including the Employment Agreement the jury analyzed in the Main Action. Likewise, in *Mattel v. MGA Entertainment, Inc.*, the court found insufficient factual overlap between the parties' trade secrets claims because, while the actions were based on the same legal theory, the claims were based on different facts. 705 F.3d 1108, 1110 (9th Cir. 2013). The opposite is true here: the parties assert different legal theories but the same underlying facts.

Ameris further asserts a general rule that a defense cannot be a "claim" for purposes of Rule 13(a). Opp. at 19:25-20:1 n.2. Simple logic dictates otherwise. It would be not at all unusual for defenses to arise out of the same transaction or occurrence as a plaintiff's claims. Ameris' argument misses the point that Ameris' assertion of the after-acquired evidence defense is not what makes its claims here compulsory counterclaims. Ameris' claims are logically related to Mr. Byrne's claims in the Main Action regardless of how Ameris chose to defend itself.

Even so, Ameris' concocted rule that a defense cannot also be a compulsory counterclaim lacks authority. Ameris argues that *Lynx Grills, Inc. v. Edwards* illustrates this principle but it does not. 2016 WL 3019026 (Cal. Ct. App. May 18, 2016)[1]; *see* Opp. at 20:1-9. In *Lynx Grills*, an employer sued its former employee for conversion and trespass to chattels, alleging he destroyed company data. *Id.* at *1.

[1] *Lynx Grills* is unpublished and not binding on/citable in California courts and may be considered here only for its persuasive value (if any). Cal. Rule of Court 8.1115.

ALLEN MATKINS LECK
GAMBLE MALLORY &
NATSIS LLP
ATTORNEYS AT LAW

4928-5824-7351

CASE NO. 8:26-CV-00393-MWC-JDE
REPLY ISO MOTION TO DISMISS

The employer had raised the former employee's alleged destruction of data in his prior wage and hour suit against the company, but the issue had been "merely an evidentiary issue" raised as an attempt to undermine credibility and suggest that he had deleted evidence. *Id.* at *2. Thus, the fact that the employee had allegedly destroyed data "was relevant only to … *proof* of his wage claims, not to the claims themselves." *Id.* at *5. *Lynx Grills* specifically distinguished a case where an employer asserted in its answer in prior litigation against a former employee "the same misconduct as it now alleged in its current complaint." *Id.* at *6 (discussing *Align Tech., Inc. v. Tran*, 179 Cal. App. 4th 949 (2009)). Thus, *Lynx Grills* in no way holds that a defense cannot also be a compulsory counterclaim.

Ameris also cites *Lucky Brand* and *Mull* as "suggesting that a party's decision to raise a defense does not transform it into a 'claim' generating compulsory counterclaim obligations." Opp. 20:19-23 n.2 (citing *Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*, 590 U.S. 405 (2020), and *Mull v. Motion Picture Industry Health Plan*, 41 F.4th 1120 (9th Cir. 2022)). *Lucky Brand*, if anything, cuts *against* Ameris' suggestion. There, the Supreme Court held that ***there are no special rules governing the preclusive effect of defenses***. 590 U.S. at 412-13 (holding that any "preclusion of defenses must, at a minimum, satisfy the strictures of issue preclusion or claim preclusion"). *Mull* too suggests the opposite of what Ameris claims. Ameris cites *Mull* as holding that an "argument raised by defendant is not a 'cause of action' that could be 'barred by res judicata.'" Opp. at 20:22-23 n.2 (quoting *Mull*, 41 F.4th at 1140). But this paragraph of *Mull* addressed *claim* preclusion, not *issue* preclusion. The decision then stated that issue preclusion would be the "more apt framework" for the questions at hand. *Mull*, 41 F.4th at 1140. The court later held that those questions had not been actually litigated in the prior proceedings, explaining that "[i]n contrast to claim preclusion, issue preclusion bars successive litigation of an *issue of fact or law* actually litigated." *Id.* Simply put, nothing in *Lucky Brand* or *Mull* supports Ameris' broad proposition that an affirmative defense

cannot also be a compulsory counterclaim.[2]

Ameris' reliance on *Byton N. Am. Corp. v. Breitfeld* is also misplaced. 2021 WL 1152895 (C.D. Cal. Jan. 5, 2021). As Ameris acknowledges, the circumstances of *Byton* were "procedurally reversed" from those here. Opp. at 19:12-18. In *Byton*, an employer sued a former executive for misappropriation of trade secrets and the former executive sought to counterclaim for breach of his employment contract and related claims. *Byton N. Am. Corp.*, 2021 WL 1152895, at *2. The court in *Byton* reasoned that the executive's contract-based claims were unrelated to whether he misappropriated trade secrets. *Id.* at *3-5. In so noting, the Court explained that neither party alleged that the executive's "termination was related to concerns [that he] had misappropriated trade secrets" and the executive's "termination is *not relevant to any affirmative defense* he may have." *Id.* at *4 n.6 (emphasis added). That is not the case here where Ameris asserted (and tried) its after-acquired evidence defense on the theory that it would have terminated Mr. Byrne for alleged mishandling of confidential information.

### 3.  Collateral Estoppel Further Demonstrates Ameris' Claims are Compulsory Counterclaims.

Whether an issue litigated in a first action would have collateral estoppel effects in a second action is a *relevant* consideration for determining whether an asserted claim is a compulsory counter claim. *Pochiro*, 827 F.2d at 1251. However,

---

[2] Ameris' attempts to minimize *Competitive Technologies v. Fujitsu Ltd.* are unpersuasive. 286 F. Supp. 2d 1118, 1139 (N.D. Cal. 2003); Opp. at 20:11-15 n.2. Two of the cases Ameris cites as "criticizing" *Competitive Technologies'* consideration of affirmative defenses in analyzing the factual overlap between prior claims and potentially compulsory counterclaims involved affirmative defenses such as off-set and indemnification, which often involve analyzing issues and facts distinct from the primary claims to determine whether the defendant can off-set its liability for some potentially unrelated transaction. *See Lockheed Martin Corp. v. RFI Supply, Inc.*, 2006 WL 1525719 (N.D. Cal. May 30, 2006); *Sparrow v. Mazda Am. Credit*, 385 F. Supp. 2d 1063 (E.D. Cal. 2005). The remaining case involved whether a trademark lawsuit was brought in violation of an existing settlement agreement. The court ruled that the trademark lawsuit itself did not factually overlap with whether that suit violated the settlement agreement. *Grendene USA, Inc. v. Brady*, 2015 WL 1499229, at *3 (S.D. Cal. Apr. 1, 2015).

it is not a necessary finding. The Ninth Circuit's "logical relationship" test is inherently flexible and while consideration of issue preclusion can be helpful in this analysis, it is not a required element. *See id.*

In any event, the relevant issue—whether Mr. Byrne misappropriated confidential information—is identical in both proceedings. Ameris argues collateral estoppel does not apply because the Main Action involved a "different legal standard," Opp. at 21:10-13, but even the Supreme Court case Ameris cites acknowledges that the legal standards need not be identical. There, the Court explained that two cases might be governed by "different statutory provisions" or "use different factors" and issue preclusion may still apply. *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 154 (2015).

There is nothing to suggest that Ameris did not have a full and fair opportunity to litigate the issue at trial in the Main Action or that a decision on the affirmative defense was not necessary to a decision on the merits. *See Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012), *as amended* (May 3, 2012). As such, collateral estoppel principles provide even more support for Ameris' claims being compulsory counterclaims. *See Pochiro*, 827 F.2d at 1251.[3]

**B.     The Claim-Splitting Doctrine Independently Bars Ameris' Claims.**

Ameris' claims are barred by the claim-splitting doctrine for the same reasons. The doctrine prohibits a party from dividing a single controversy across multiple lawsuits where both actions arise from the same transactional nucleus of facts. *See Mendoza*, 30 F.4th at 887.

Ameris' Complaint meets all of the criteria for claim-splitting.[4] As explained

---

[3] As of the time of this filing, the jury verdict in the Main Action has not yet been reduced to a judgment. Mr. Byrne reserves all rights to argue the preclusive effects of any judgment in the Main Action.

[4] *Mendoza* lists four criteria for whether two suits share the same cause of action for claim-splitting purposes: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether

in Section III.A.2, *supra*, the two actions arise out of the same nucleus of facts. Mr. Byrne's rights or interests established in the Main Action would be destroyed or impaired by Ameris' prosecution of this case because Ameris' after-acquired evidence affirmative defense is likely to have preclusive effects here. Section III.A.3, *supra*. Substantially the same evidence will be presented here as was presented in the Main Action: emails Ameris claims constitute mishandling of confidential information and evidence of Ameris' confidentiality requirements and procedures. And both cases involve infringement of the same right: Mr. Byrne's alleged breach of his confidentiality obligations under the terms of his employment with Ameris.

Ameris admits the claim-splitting doctrine is "designed to *protect defendants* from being harassed by repetitive litigation." Opp. at 22:13-14.[5] That is precisely what is happening here. Mr. Byrne filed a single lawsuit against Ameris for wrongful termination. In response, Ameris defended that suit and affirmatively injected its misappropriation allegations into its defense. But having failed to assert those allegations as a timely counterclaim, and facing the defeat at summary judgment, Ameris turned around and sued Mr. Byrne in a separate action.

**C.     The Employment Agreement's Confidentiality Clause is Void.**

The confidentiality provisions of the Employment Agreement are overbroad and thus void and unenforceable under California Business and Professions Code § 16600. Ameris' attempt to characterize the confidentiality definition here as "limited" fails for the same reason the Court rejected the definition in *Brown*: both provisions function as a restraint on lawful competition. *Brown v. TGS Mgmt. Co., LLC*, 57 Cal. App. 5th 303, 320 (2020) *as modified on denial of reh'g* (Nov. 12,

the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." 30 F.4th at 887.

[5] Although Ameris argues that the claim splitting doctrine only protects defendants, it cites no case holding as such. The standard is merely that the two cases involve "the same parties or their privies." *Mendoza*, 30 F.4th at 887. Ameris further fails to articulate any comprehensible reason why application of the claim-splitting doctrine would depend on which side of the v. each party is on.

2020). Despite Ameris' contention, the definition at issue here captures employee experience and knowledge inherent in Mr. Byrne's profession. As in *Brown*, the practical effect is to prevent post-employment competition by converting ordinary industry knowledge into "Confidential Information."

Ameris improperly relies on *ReadyLink Healthcare v. Cotton*, 126 Cal. App. 4th 1006, 1016, 1021 (2005). *ReadyLink* involved a request for preliminary injunctive relief, not a motion to dismiss. *Id.* Further, the court expressly declined to reach the contract claim because there was sufficient evidence the plaintiff would prevail on its trade secret misappropriation claims. *Id.* at 1021. In any event, even if *ReadyLink* permits narrowly tailored restraint to prevent "misappropriation of trade secret information" notwithstanding section 16600, that principle does not salvage the provision here. Opp. at 25:8-9. Section 16600 and *ReadyLink* do not permit a noncompete to be transformed into a trade-secret restriction by including an over-broad "Confidential information" provision.

Finally, while Ameris attempts to rely on *Latona v. Aetna U.S. Healthcare Inc.*, the court there *rejected* the employer's attempt to invoke the trade-secret exception to section 16600. 82 F. Supp. 2d 1089, 1096 (C.D. Cal. 1999). Because the employee had already signed a separate confidentiality agreement, and because California law already provides remedies for trade-secret misuse, the confidentiality clause embedded in the noncompete agreement "added nothing." *Id. Latona* thus supports the position that an employer cannot save an otherwise void restraint by tacking on a redundant confidentiality clause. *Id.*[6]

### D.   Ameris Fails to State a Claim For Misappropriation.

Ameris fails to identify a well-pled instance of misappropriation by Mr. Byrne, whether by "improper acquisition" or "unauthorized disclosure." Opp. at 26-29. Rather, Ameris merely offers conclusory statements that the "Complaint clearly

---

[6] Ameris also misstates Mr. Byrne's position in claiming he does not argue the confidentiality provision is unenforceable "as applied here." Opp. at 25:16. Yet the Motion does exactly that. *E.g.*, Mot. at 24:8-12, 24:19-27.

pleads" Mr. Byrne "improperly acquired" trade secrets. Opp. at 26:27-27:1.

On improper acquisition, Ameris' citation to *Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155 (N.D. Cal. 2020) is inapt. There, employees emailed themselves trade secrets, used them to "woo" clients, and successfully lured some to a competitor—facts that supported an inference of misappropriation and undermined any "innocent explanation" at the pleading stage. *Id.* at 1172. Here, Ameris does not allege that Mr. Byrne's actions benefited any competitor.

Ameris' other authorities likewise involve similar facts involving employee misappropriation for competitive use. Opp. at 27:10-20 (discussing *Marsh USA, Inc. v. Cobbs Allen Cap., LLC*, 2020 WL 9424331 (D. Colo. Aug. 19, 2020); *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834 (N.D. Cal. 2019); *Prot. Techs., Inc. v. Ribler*, 2017 WL 923912 (D. Nev. Mar. 8, 2017)). None of that is alleged here. Instead, Ameris merely alleges that Mr. Byrne emailed himself documents throughout his employment and before his termination. Compl. ¶ 61.

On unauthorized disclosure, Ameris points to no citation supporting its assertion that it pleaded "*specific facts* to plausibly allege unauthorized disclosure or use." Opp. at 28:18-20. Byrne is not asking Ameris to plead *exactly* how he "used the trade secret," but rather, to *plead it at all*. Opp. at 28:14. And Ameris cannot, because Byrne has not done so. Again, Ameris relies on cases where the employees compiled information in the moments before their departure whose timing supported a plausible inference of a "threat of disclosure or use." Opp. at 28:20-29:2 (quoting *7EDU Impact Acad. Inc. v. You*, 760 F. Supp. 3d 981, 997-98 (N.D. Cal. 2024)). That same timing does not exist here. The Opposition admits that Mr. Bryne "took" documents "***long before***" anticipated litigation. Opp. at 28:3 (emphasis added).

### E.   CUTSA Preempts Ameris' Conversion Claim.

CUTSA provides the exclusive civil remedy for misappropriation of trade secrets. *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 81 (N.D. Cal. 2020). Ameris' conversion claim must be dismissed because it is not "materially

ALLEN MATKINS LECK
GAMBLE MALLORY &
NATSIS LLP
ATTORNEYS AT LAW

4928-5824-7351

- 16 -

CASE NO. 8:26-CV-00393-MWC-JDE
REPLY ISO MOTION TO DISMISS

distinct" from the wrongdoing alleged in the CUSTA claim. *See id.*

Here, Ameris again relies on distinguishable cases. First, in *Hullinger v. Anand*, plaintiffs alleged defendants substantially interfered with their possession, control, and access to their property. 2015 WL 11072169, *19-20 (C.D. Cal. Dec. 22, 2015). Ameris makes no such allegations. Ameris' reliance on *Bus. Sols., LLC v. Ganatra* is also misplaced. 2019 WL 926351 (C.D. Cal. Jan. 7, 2019). *Ganatra* explains that courts "have held that allegations of wrongful conduct that are independent and do not necessarily implicate misappropriation of trade secrets are not preempted by CUTSA." *Id.* at *9. Ameris' conversion claim is neither. The conversation claim expressly focuses on alleged trade secret misuse, alleging "Byrne substantially interfered with … Ameris' documents containing confidential, proprietary, [and] trade secret" information.  Compl. ¶ 151.

**F.     Ameris' California Penal Code § 502 Claim Fails.**

California Penal Code § 502 does not apply when the alleged conduct was part of the employee's job duties. Cal. Penal Code § 502(h)(1). Section 502, following tort principles, construes the scope of employment broadly. *Chrisman v. City of Los Angeles*, 155 Cal. App. 4th 29, 37 (2007) ("an employer's disapproval of an employee's conduct does not cast the conduct outside the scope of employment"). Here, Byrne sent documents to himself to perform his job.[7]

**G.     Leave to Amend Should Be Denied.**

The Court should deny leave to amend because amendment would be futile. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998).

**IV.     CONCLUSION**

For these reasons, Byrne respectfully asks the Court to grant the Motion to Dismiss without leave to amend.

---

[7] *Erhart v. Bofl Holding, Inc.*, which Ameris cites, is factually distinct. 387 F. Supp. 3d 1046 (S.D. Cal. 2019). In *Erhart*, an employee was accused of accessing computers "to destroy data without authorization." *Id.* at 1057-58. The Complaint does not allege that Mr. Byrne destroyed Ameris data.

Dated:  June 26, 2026

Respectfully submitted,

ALLEN MATKINS LECK
   GAMBLE MALLORY &
   NATSIS LLP
MATTHEW T. SESSIONS


By:  */s/ Matthew T. Sessions*
MATTHEW T. SESSIONS
Attorneys for Defendant
PATRICK BYRNE

ALLEN MATKINS LECK
GAMBLE MALLORY &
NATSIS LLP
ATTORNEYS AT LAW

4928-5824-7351

- 18 -

CASE NO. 8:26-CV-00393-MWC-JDE
REPLY ISO MOTION TO DISMISS

**Certificate of Compliance (L.R. 11-6.1)**

Consistent with to L.R. 11-6.2, the undersigned counsel certifies that the accompanying Reply complies with the 12-page page limit of the Honorable Michelle Williams Court's Standing Order Regarding Newly Assigned Cases, Dkt. 26.

Dated:  June 26, 2026

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
MATTHEW T. SESSIONS

By: _/s/ Matthew T. Sessions_
MATTHEW T. SESSIONS
Attorneys for Defendant
PATRICK BYRNE

ALLEN MATKINS LECK
GAMBLE MALLORY &
NATSIS LLP
ATTORNEYS AT LAW

4928-5824-7351

- 19 -

CASE NO. 8:26-CV-00393-MWC-JDE
REPLY ISO MOTION TO DISMISS