UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:26-cv-00393-MWC-JDE                          Date: July 9, 2026

Title:      Ameris Bank v. Patrick Byrne

Present:  The Honorable Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings: (IN CHAMBERS) THE COURT GRANTS IN PART AND DENIES IN PART DEFENDANT'S MOTION TO DISMISS (DKT. # [20])**

Before the Court is a motion to dismiss for failure to state a claim ("Motion") filed by Defendant Patrick Byrne ("Defendant" or "Byrne"). Dkt. # 20, 20-1 ("*Mot.*"). Plaintiff Ameris Bank ("Plaintiff" or "Ameris") opposed, Dkt # 30 ("*Opp.*"), and Defendant replied, Dkt. # 31. The Court finds this matter appropriate for decision without oral argument and **VACATES** the Motion hearing. See Fed. R. Civ. P. 78; L.R. 7–15. Having considered the papers, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion with leave to amend.

I.      Background

        A.      Factual Allegations

The Complaint alleges as follows:

Plaintiff Ameris is a bank incorporated and headquartered in Georgia. Dkt. # 1 (redacted), 15 ("*Compl.*") ¶¶ 6, 13. Defendant Byrne is a former Ameris employee residing in California. *Id.* ¶¶ 7, 20.

Prior to December 10, 2021, Balboa Capital Corporation ("Balboa") was an online provider of business lending solutions to small and mid-sized businesses nationwide for the purchase or lease of equipment. *Id.* ¶ 15. Byrne was the co-founder, CEO, and sole owner of Balboa. *Id.* ¶¶ 17-18. On December 10, 2021, Byrne, Balboa, and Ameris

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:26-cv-00393-MWC-JDE                    Date: July 9, 2026

Title:        Ameris Bank v. Patrick Byrne

entered into a Stock Purchase Agreement pursuant to which Ameris acquired Balboa, and Balboa became a division of Ameris. *Id.* ¶ 19.  In connection with the sale of Balboa to Ameris, Byrne was hired as an employee by Ameris, with the title of CEO of the Balboa division. *Id.* ¶ 20.  Byrne reported to James LaHaise, Ameris's Chief Strategy Officer. *Id.* ¶ 23.

In connection with his employment, Byrne signed an Employment Agreement, Acceptable Use Policy, and Confidential Information Agreement ("CI Agreement") with Ameris. *Id.* ¶¶ 21, 34, 39.  Byrne understood that he was required to maintain Ameris's confidential, proprietary and trade secret information in strict confidence. *Id.* ¶ 51.  In exchange for his agreement to comply with Ameris policies requiring the safeguarding of confidential, proprietary and trade secret information, Byrne received $187 Million in connection with the sale of Balboa, and millions more in employment compensation over the next two and a half years of his employment. *Id.* ¶ 44.

### **Employment Agreement**

Byrne's employment with Ameris was governed by an Employment Agreement dated December 10, 2021 ("Employment Agreement"). *Id.* ¶ 21.  The Employment Agreement was for a term of just over three years, ending on December 31, 2024, with the option to renew. *Id.*  Like all employees of Balboa, Byrne was subject to Ameris's policies and was not granted any permission or rights to misuse or misappropriate Ameris's documents. *Id.* ¶ 22, 49-50.

In connection with his job duties, Ameris provided Byrne with access to large amounts of highly valuable confidential, proprietary and trade secret information belonging to Ameris, including "Confidential Information" as defined in Byrne's Employment Agreement. *Id.* ¶ 26.[1]  This information included, but was not limited to, contractual agreements with Ameris customers; lists of past, present and prospective customers, customer files and/or customer correspondence, customer requirements and other customer data not generally available to the public, including customer information within the scope of the GLBA; Ameris financial and marketing information and projections, including, but not limited to, market surveys, marketing objectives and

---

[1] The Employment Agreement defines "confidential information" as "trade secrets, research and development activities, new or prospective lines of business, business plans . . . and other proprietary information" and explicitly excludes any information which is "generally available to the public." *Id.* at ¶ 26, n. 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:26-cv-00393-MWC-JDE                          Date: July 9, 2026

Title:        Ameris Bank v. Patrick Byrne

marketing strategies; Ameris products and services and pricing for same, information about costs, profits, sales and markets, Ameris internal legal metrics; and Ameris business methods and procedures, including, but not limited to, Ameris operations and/or processes. *Id.* Byrne also had access to substantial amounts of Confidential Information relating to Ameris employees in the Balboa division, including, but not limited to, contact information, information regarding wages, bonuses, incentives and tax withholding, 401(k) and Roth IRA contributions, insurance information, and information regarding employee leaves of absence and paid time off. *Id.* ¶ 27.

Ameris is highly protective of its confidential, proprietary and trade secret information and goes to great lengths to protect it from unauthorized use or disclosure. *Id.* ¶¶ 28, 45–49. Ameris invests millions of dollars every year in the systems, processes and employee training necessary to generate and secure the confidential, proprietary and trade secret information to which Byrne had access. *Id.* ¶¶ 29, 45–49. Much of the information to which Byrne had access would be highly valuable to a competitor and/or valuable to bad actors. *Id.* ¶ 30.

During and as a condition of his employment, Byrne was required to annually acknowledge and to comply with Ameris policies and procedures, including the confidentiality of Ameris's proprietary and trade secret information. *Id.* ¶ 32. For example, Byrne's Employment Agreement contains the following provision:

> Except as provided in this Section 4.14.1 or with the prior written consent of an authorized officer of the Company, Executive shall not (1) disclose any Confidential Information of the Company Group to any person, firm, corporation, association or other entity for any reason or purpose whatsoever, other than in the performance of Executive's duties pursuant to this Agreement and in accordance with any restrictions placed on its use or disclosure by the Company Group, or (2) make use of any such Confidential Information for Executive's own purposes or for the benefit of any person, firm, corporation, association or other entity, except the Company Group.

*Id.* ¶ 33.

### **Confidential Information ("CI") Agreement**

Byrne also signed a Confidential Information Agreement ("CI Agreement") which stated, in relevant part,

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:26-cv-00393-MWC-JDE                                      Date: July 9, 2026

Title:       Ameris Bank v. Patrick Byrne

- "except as required in the course of his/her employment by Ameris Bank, [Byrne] will not duplicate, remove, transfer, disclose or utilize, nor knowingly allow any other person to duplicate, remove, transfer, disclose or utilize" Ameris confidential information and/or trade secrets, " *id.* ¶ 34;
- Byrne is "to hold all such Confidential Information in strict confidence, and not publish or otherwise disclose any portion thereof during [Byrne's] employment and for a two (2) year period after termination except with prior written consent of the President of Ameris Bank," *id.* ¶ 35;
- Byrne may "make no use of any such Confidential Information except such use as is required in the performance of [Byrne's] duties for Ameris Bank or with prior written consent of the President of Ameris Bank," *id.* ¶ 36; and
- upon termination of his employment, Byrne is "to deliver to Ameris Bank, without copying or summarizing, all written materials and all models, mechanisms, documents, records, and tangible things and the like containing or relating to such Confidential Information, all of which shall be and remain the sole property of Ameris Bank," *id.* ¶ 37.

**Acceptable Use Policy**

Byrne also signed Ameris's Acceptable Use Policy relating to the acceptable use of Ameris's computer systems, networks, mobile devices, removeable media, internet, voice systems, and e-mail communications. *Id.* ¶ 39. To prevent Ameris employees from improperly disclosing Ameris and customer information, the Acceptable Use Policy prohibits employees from "[s]end[ing] customer information, such as account numbers, passwords, etc. by unencrypted email," among other requirements. *Id.* ¶¶ 40–41. Ameris further requires employees to report any information breach, including, but not limited to, the unauthorized sending or receiving of e-mails that contain attachments containing personally identifiable information ("PII") and intellectual property of Ameris. *Id.* ¶ 41. The Acceptable Use Policy prohibited Byrne from revealing or publicizing confidential or proprietary information. *Id.* ¶ 42. The Acceptable Use Policy provides that employees who violate its guidelines may be subject to disciplinary action, including written warnings, revocation of access privileges, and termination. *Id.* ¶ 43.

Ameris policy, as repeatedly emphasized to Byrne during employee training, prohibited him from taking and obtaining personal possession of any Confidential Information outside Ameris's physical locations, except on Ameris issued and owned computer devices, systems, servers, or networks, and then only in accordance with his

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:26-cv-00393-MWC-JDE                           Date: July 9, 2026

Title:      Ameris Bank v. Patrick Byrne

specific job requirements.  *Id.* ¶¶ 49, 50.  Byrne neither requested nor received any waiver of or exceptions to this policy.  *Id.*

On or about June 27, 2024, Ameris terminated Byrne's employment.  *Id.* ¶ 52. Byrne has refused to return his Ameris-owned laptop.  *Id.* ¶¶ 53–54, 58, 90-93.  Byrne has said he was not in possession of any Ameris property, and that he could not recall what happened to it.  *Id.* ¶¶ 58, 93.

On or about September 16, 2024, Byrne initiated a lawsuit against Ameris alleging wrongful termination, retaliation, failure to pay wages due at termination, and unfair competition (the "Prior Action") [2], which was assigned to this Court.  *Id.* ¶ 55; *see Patrick Byrne v. Ameris Bank*, No. 8:24-cv-01989-MWC (C.D. Cal.) ("*Byrne*"). The thrust of the Prior Action is that Ameris terminated Byrne due to his complaints about the calculation of his Long-Term Incentive Plan ("LTIP") compensation, and that Ameris failed to pay what it owed Byrne under the LTIP.  *Compl.* ¶ 56.  On November 15, 2024, Ameris filed an answer to the complaint without asserting counterclaims.  *Byrne*, 8:24-cv-01989-MWC, Dkt. No. 14.

In September 2025, Ameris commenced ESI review in the Prior Action.  *Id.* ¶ 60. Ameris's investigation revealed that on numerous dates throughout his employment, Byrne sent e-mails from his Ameris e-mail account to his personal e-mail account attaching hundreds of documents containing thousands of pages of highly sensitive confidential, proprietary, trade secret and attorney-client privileged information and communications relating to Ameris, its employees and its customers.  *Id.* ¶ 61.  This information included customer lease and account information, nonpublic information concerning Ameris and the Balboa division's financial statements, detailed business strategy slide decks, PII concerning Balboa division employees, and attorney-client privileged information.  *Id.* ¶¶ 62, 64–73.  In the Prior Action, Byrne produced over 1,000 Ameris documents in discovery that contained thousands of pages of confidential, proprietary, and trade secret information.  *Id.* ¶ 73, 102–103.  Byrne only produced documents related to the substance of the case (the LTIP calculation); he withheld other misappropriated documents and, initially, the emails forwarding the material.  *Id.* ¶ 74–77.  At deposition, Byrne acknowledged emailing documents to himself containing confidential Ameris information and testified that he understood he was prohibited from removing or transferring

---

[2] Byrne's briefing calls the prior action the "Main Action."  *See Mot.*  Since Ameris is the nonmovant, the Court adopts its nomenclature for the purposes of resolving the Motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.    8:26-cv-00393-MWC-JDE                           Date: July 9, 2026

Title:       Ameris Bank v. Patrick Byrne


confidential or trade secret information "except as required in the course of his . . . employment." *Id.* ¶¶ 77–87.  Many of the documents Byrne sent himself were not related to the Prior Action.  *Id.* ¶¶ 88–89.  In the course of litigating the Prior Action, Byrne and his counsel have refused to return Ameris's property, including the laptop and documents containing Ameris's confidential and proprietary information.  *Id.* ¶¶ 4, 94–101.

Byrne forwarding information to himself in an unencrypted email account, on his personal computer, and in his "cloud" account put Ameris at risk of a data breach.  *Id.* ¶¶ 104–105.  Byrne's conduct has caused Ameris substantial damages.  *Id.* ¶ 106.

   B.       Procedural History

Ameris filed the Complaint on February 20, 2026, asserting the following causes of action against Byrne: (1) Breach of Contract, (2) Trade Secret Misappropriation in Violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1832 et seq., (3) Trade Secret Misappropriation in Violation of Cal. Civ. Code §§ 3426 et seq. ("CUTSA"), (4) Violation of California Penal Code § 502, and (5) Conversion.  *See Compl.*

On May 18, 2026, Byrne moved to dismiss the Complaint.  *Mot.*  The same day, Byrne filed a Notice of Related Cases.  Dkt. # 23.  On May 29, 2026, the Court, finding this case sufficiently related to the Prior Action, transferred the case to its docket.  Dkt. # 24.

From June 2 to June 15, 2026, the Court held trial in the Prior Action.  *Byrne*, 8:24-cv-01989-MWC, Dkt. Nos. 194–230.  The jury found for Byrne on all claims and awarded punitive damages.  *Id.*, Dkt. Nos. 227, 237.  Among other findings, the jury found that Byrne engaged in protected activity by repeatedly complaining that Ameris was improperly withholding LTIP compensation owed to himself and other Balboa employees, *id.*, Dkt. No. 227 ¶ 6, and that Ameris failed to prove by clear and convincing evidence that it would have terminated Byrne anyway for legitimate, independent reasons, *id.*, Dkt. No. 227 ¶ 12.  The jury also found Byrne substantially performed his obligations under the Employment Agreement and LTIP.  *Id.*, Dkt. No. 227 ¶ 19; *see* Dkt. No. 246 ¶ 8.

On June 18, 2026, Ameris opposed the Motion.  *Opp.*  On June 26, 2026, Byrne replied.  *Reply*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.    8:26-cv-00393-MWC-JDE                        Date: July 9, 2026

Title:      Ameris Bank v. Patrick Byrne


On June 29, 2026, the Court issued Findings of Fact and Conclusions of Law in the Prior Action to resolve Byrne's equitable claim for a violation of California's Unfair Competition Law.  *Byrne*, 8:24-cv-01989-MWC, Dkt. No. 246.  In doing so, the Court adopted the relevant factual findings made by the jury.  *See id.*

II.     Request for Judicial Notice

Byrne requests the Court take judicial notice of several pleadings filed in *Byrne*, No. 8:24-cv-01989-MWC, including Byrne's complaint (*id.*, Dkt. No. 1), Ameris's Answer (*id.*, Dkt. No. 14), the Court's order denying Byrne's ex parte application for leave to amend the complaint (*id.*, Dkt. No. 87), the Court's order denying in part Ameris's motion for summary judgment (*id.*, Dkt. No. 121), Ameris's pretrial memorandum of contentions of fact and law (*id.*, Dkt. No. 134), and Ameris's pretrial statement of the case (*id.*, Dkt. No. 159).  Dkt. # 20-4.

A court may take judicial notice of facts that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  A court may take judicial notice of the filings on the docket in a case before that court.  *See United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) ("In particular, a court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases."); *Gerritsen v. Warner Bros Ent. Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015) ("It is well established that a court can take judicial notice of its own files and records under Rule 201 of the Federal Rules of Evidence.").

Since the materials at issue are public filings in a case before this Court, the Court **GRANTS** the request and takes judicial notice of the identified filings, though it is careful not to consider them for the truth of the matters asserted therein.

III.    Legal Standard

A motion brought under Rule 12(b)(6) tests a complaint for failure to state a claim for which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:26-cv-00393-MWC-JDE                          Date: July 9, 2026

Title:      Ameris Bank v. Patrick Byrne

inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6).

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013) (citing *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party" when ruling on a Rule 12(b)(6) motion to dismiss. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1995). However, conclusory allegations that simply recite the elements of a cause of action are not accepted as true and are excised from the complaint when judging its plausibility. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). The Court is also not required to accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" nor "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "Leave to amend should be freely granted unless it is clear the complaint could not be saved by any amendment." *Selane Products, Inc. v. Cont'l Cas. Co.*, 706 F. Supp. 3d 997, 1002 (C.D. Cal. 2020).

IV.    Discussion

       A.    Procedural Issues

Byrne raises procedural challenges to the action as a whole. First, Byrne argues Ameris's claims are compulsory counterclaims and, thus, were waived by Ameris's failure to bring them in the Prior Action. *Mot.* at 13–21. Byrne also argues Ameris's claims are barred by the claim-splitting doctrine. *Id.* at 21–23.

              i.    *Whether Ameris's Claims Are Compulsory Counterclaims and, thus, Waived*

Under the Federal Rules of Civil Procedure, "A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:26-cv-00393-MWC-JDE                    Date: July 9, 2026

Title:        Ameris Bank v. Patrick Byrne

opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P 13(a)(1). Only claims that a pleader has against the opposing party at the time of service of the pleading are compulsory counterclaims. *Id*.

> a.        *Arises out of the Transaction or Occurrence*

Byrne argues Ameris's claims arise from the same transactional nucleus of facts and are directly related to issues already litigated in the Prior Action. *Mot.* at 13. Specifically, Byrne argues Ameris's claims are identical to its affirmative defense of after-acquired evidence in the Prior Action and needed to be asserted in the Prior Action. *Id.* at 13-15 (arguing "Ameris's claims in this suit and its affirmative defense in the Main Action involve the ***identical*** set of factual allegations" (emphasis original)). Ameris argues its claims here do not arise from the same transaction or occurrence. *Id.* at 10–14.

To determine if two claims arise out of the same transaction or occurrence, the courts in this district apply the "logical relationship" test. *See Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987). The Ninth Circuit has stated that

> [a] logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant.

*In re Pegasus Gold Corp.*, 394 F.3d 1189, 1196 (9th Cir. 2005). The Ninth Circuit has also considered whether a party's "victory in the first action" would have a "collateral estoppel effect." *See Pochiro*, 827 F.2d 1251.

Byrne fails to establish that Ameris's claims arise from the same aggregate set of operative facts as the initial claim such that a logical relationship exists. In the Prior Action, the crux of Byrne's claims for wrongful termination, retaliation, failure to pay wages due at termination, and unfair competition, were his complaints concerning the calculation of the LTIP and reasons for his termination. *See Byrne*, 8:24-cv-01989-MWC, Dkt. 207 (FAC). Here, the core allegations concern Byrne's alleged transmission and retention of confidential, proprietary, and trade-secret information via email to his personal email

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:26-cv-00393-MWC-JDE                            Date: July 9, 2026

Title:        Ameris Bank v. Patrick Byrne

account, computer, and the cloud, as well as his refusal to return materials belonging to Ameris. *See generally Compl.* The Court finds the facts in this case are not the "same operative facts" as those in the related suit. *See Mattel, Inc v. MGA Entertainment, Inc.*, 705 F.3d 1108, 1110 (9th Cir. 2013) ("'[E]ven the most liberal construction of ['transaction'] cannot operate to make a counterclaim that arises out of an entirely different or independent transaction or occurrence compulsory under Rule 13(a).'") (quoting 6 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1410, at 52 (3d ed. 2010)).

Byrne's primary argument that the claims substantially overlap is that, in the Prior Action, Ameris raised the affirmative defense of "after-acquired evidence." Once wrongful termination is established, employers may raise the after-acquired evidence defense to limit remedies. *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 759 (9th Cir. 1996). To prove the defense, employers must prove (1) the employee committed some wrongdoing unknown to them, and (2) the wrongdoing was so severe that even though the employee was wrongfully terminated, the employer would have had grounds to lawfully terminate them at the time of their actual discharge. *See O'Day*, 79 F.3d at 759.

Although Byrne prevailed on his wrongful discharge claim, the jury did not squarely decide the issue of whether Byrne misappropriated trade secrets. *See, e.g.*, *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 657–58 (9th Cir. 2020) ("To succeed on a claim for misappropriation of trade secrets under the DTSA, a plaintiff must prove: (1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff."). Byrne's argument requires a logical inference—that misappropriation of trade secrets constitutes grounds to lawfully terminate the employee—inappropriate for resolution at the pleading stage.

The jury also found that Byrne substantially performed his obligations under the Employment Agreement and LTIP. *Byrne*, 8:24-cv-01989-MWC, Dkt. No. 227 ¶ 19. Although the jury's findings have not been entered in a final judgment, the Court has issued findings of fact adopting the relevant jury findings that are now binding on the parties. *See id.*, Dkt. No. 246 ¶ 8; *Nalle v. Oyster*, 230 U.S. 165, 180 (1913) ("The established rule is that if the parties. in the former action be the same as in the present, then every matter and question of fact and of law that was necessarily involved in the consideration and determination of the former issue shall be conclusive upon the present."). Nonetheless, since Ameris brings a breach of contract claim alleging breach of not only the Employment

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:26-cv-00393-MWC-JDE                          Date: July 9, 2026

Title:      Ameris Bank v. Patrick Byrne

Agreement but also the Confidential Information Agreement and Acceptable Use Policy, the breach of contract claim is not foreclosed by the jury's findings.

At this early stage, although the two cases share a common employment relationship and some factual background, the overlap is not so significant that "economy and fairness dictate that all the issues be resolved in one lawsuit." *See Pochiro*, 827 F.2d at 1249.

> b.    *Whether Ameris had its claims against Byrne at the time of service of the pleading*

Nor has Byrne demonstrated that Ameris could have asserted its claims at the time it served its Answer. Fed. R. Civ. P 13(a)(1).

"A question is fit for decision when it can be decided without considering 'contingent future events that may or may not occur as anticipated, or indeed may not occur at all.'" *Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174, 1179 (9th Cir. 2010) (quoting *Cardenas v. Anzai*, 311 F.3d 929, 934 (9th Cir. 2002)).

The Complaint alleges that Ameris first discovered evidence of Byrne's alleged transmission of confidential and trade-secret information to personal accounts during a September 2025 review of electronically stored information conducted in connection with discovery in the Prior Action. *Compl.* ¶ 60. The Complaint further alleges that Ameris's subsequent investigation and discovery in the Prior Action uncovered additional forwarding emails and documents that ultimately formed the basis of the claims asserted here. *Id.* ¶¶ 61–89. Taking the Complaint's allegations as true and construing them in the light most favorable to Ameris, Byrne does not establish Ameris possessed these claims when it filed its Answer nearly ten months earlier. *See Cahill*, 80 F.3d at 337–38 ("All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party" when ruling on a Rule 12(b)(6) motion to dismiss); *see, e.g.*, *Kuschner v. Nationwide Credit, Inc.*, 256 F.R.D. 684, 689-90 (E.D. Cal. 2009) (counterclaim did not mature until after the answer was filed where defendant discovered relevant information in deposition).

Neither allegations of Ameris's robust information security practices nor Ameris's routine preservation of the after-acquired-evidence defense in its Answer sufficiently demonstrates Ameris already possessed claims for trade-secret misappropriation, breach of contract, conversion, or violation of California Penal Code section 502 at the time it filed

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:26-cv-00393-MWC-JDE                          Date: July 9, 2026

Title:      Ameris Bank v. Patrick Byrne

its Answer.  This is an independent reason the Court does not find Ameris's claims were compulsory counterclaims in the Prior Action.

ii.      *Claim Splitting*

Byrne argues this action should be dismissed under the claim-splitting doctrine, because it purportedly involves the same controversy as the Prior Action.  *Mot.* at 21–23.

The claim splitting doctrine prevents plaintiffs from "maintain[ing] two separate actions involving the same subject matter at the same time in the same court and against the same defendant."  *Adams v. Cal. Dep't of Health Services*, 487 F.3d 684, 688 (9th Cir. 2007).  "[T]he bar of claim-splitting is applicable if the second suit involves (1) the same causes of action as the first; and (2) the same parties or their privies."  *See Mendoza v. Amalgamated Transit Union International*, 30 F.4th 879, 886 (9th Cir. 2022).

Courts consider four criteria when determining if the causes of action are the same in both suits:

(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Id.* at 887. "The 'most important' factor is 'whether the two suits arise out of the same transactional nucleus of facts.'"  *Id.* (quoting *Adams*, 487 F.3d at 689).

For the same reason Ameris's claims did not arise out of the same transaction or occurrence as the Prior Action, the Court concludes these two suits do not arise out of the same transactional nucleus of facts.  *See supra* Section IV.A.i.  Since this is the "most important" factor in determining whether the first element (same causes of action) is met, *see Mendoza*, 30 F.4th at 886, the doctrine of claim splitting does not apply.

The Court proceeds to consider whether the Complaint states the claims asserted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:26-cv-00393-MWC-JDE                    Date: July 9, 2026

Title:    Ameris Bank v. Patrick Byrne

---

B.    <u>Claim One: Breach of Contract</u>

Establishing breach of contract requires showing "'(1) the existence of the contract, (2) plaintiff's performance or excuse of nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff.'" *D'Arrigo Bros. of Cal. v. United Farmworkers of America*, 224 Cal. App. 4th 790, 800 (quoting *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)).  A complaint sufficiently establishes the existence of a contract if it pleads the terms or legal effect of a written contract.  *See McKell v. Wash. Mut. Inc.*, 142 Cal. App. 4th 1457, 1489 (2006).  A plaintiff sufficiently establishes their performance with general allegations that they have "duly performed all the conditions on [their] part." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1388–89 (1990).  Whether a breach is material is ordinarily a question of fact.  *See Boston LLC v. Juarez*, 245 Cal. App. 4th 75, 87 (2016).  General damages are a natural and probable consequence of the breach and can be pled without particularity.  *See Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 968 (Cal. 2004).

i.    *Existence of a Contract*

The Complaint sets out the terms of the three agreements at issue: the Employment Agreement, Confidential Information ("CI") Agreement, and Acceptable Use Policy. *Compl.* ¶¶ 109, 113; *see id.* ¶¶ 31-33 (employment agreement), 34-38 (CI agreement), 39-44 (Acceptable Use Policy agreement).  Thus, the Complaint alleges the existence of contracts entered into by the parties.

ii.    *Plaintiff's Performance*

The Complaint alleges Ameris performed all of its obligations under the above-referenced agreements.  *Id.* ¶ 111.

iii.    *Defendant's Material Breach*

The Complaint alleges Byrne materially breached all three of the above-referenced agreements.  *Id.* ¶ 113.

In the Prior Action, the Court has issued findings of fact and conclusions of law that adopted the jury's findings that Byrne "substantially performed his obligations under the

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:26-cv-00393-MWC-JDE                          Date: July 9, 2026

Title:        Ameris Bank v. Patrick Byrne

Employment Agreement." *Byrne*, 8:24-cv-01989-MWC, Dkt. No. 246 ¶ 8. This finding is binding on the parties. *See New York Life Ins. Co. v. Graham,* 92 F.2d 377, 382 (9th Cir. 1937) ("Where a right, question or fact is distinctly put in issue and directly determined by a court of competent jurisdiction in a former suit between the same parties or their privies, the former adjudication of that fact, right or question is binding on the parties or their privies in a subsequent suit, irrespective of whether the causes of action are the same."); *Nalle*, 230 U.S. at 180. Therefore, the breach of contract claim is foreclosed as to the Employment Agreement, and the motion to dismiss is **GRANTED IN PART** solely with respect to the Employment Agreement as a basis for the breach of contract claim.[3] The Court further finds amendment would be futile, so it does not grant leave to amend this claim.

As to the remaining two agreements, the Complaint alleges Byrne's use of Ameris' confidential information and refusal to return his company laptop violated the CI Agreement and Acceptable Use Policy. *See Compl.* ¶¶ 63–75, 90–93, 113. Unauthorized, personal use of confidential information goes to the root of a confidentiality agreement, so the breach alleged is material. *See Crofoot Lumber, Inc. v. Thompson*, 163 Cal. App. 2d 324, 333–34 (1958).

> ### iv.    Damages

The Complaint alleges damages flowing from Byrne's breach of the identified agreements. *Compl.* ¶ 115 ("Ameris has sustained, and will continue to sustain, damages, including, but not limited to, forensic data and legal costs, other costs related to ensuring legal and regulatory compliance, costs to address Byrne's data breach, and attorney's fees, in an amount to be determined at trial.").

For these reasons, the Complaint states a claim for breach of contract with regards to the CI Agreement and Acceptable Use Policy.

For the foregoing reasons, the Motion is **GRANTED IN PART** solely with respect to the Employment Agreement as a basis for the breach of contract claim. However, the

---

[3] Byrne's sole argument against the breach of contract claim is that the confidentiality clause in the employment agreement is void and unenforceable. *See Mot.* at 23-25. Since a breach of contract claim based on a breach of the Employment Agreement is foreclosed by the jury's findings in *Byrne*, the Court deems the argument **MOOT**.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.    8:26-cv-00393-MWC-JDE                    Date: July 9, 2026

Title:        Ameris Bank v. Patrick Byrne


Motion is **DENIED** with respect to the CI Agreement and Acceptable Use Policy, the breaches of which are adequately pled.

> C.    <u>Claims Two and Three: Misappropriation of Trade Secrets under DTSA and CUTSA</u>

Courts analyze Defense of Trade Secrets Act ("DTSA") and California Uniform Trade Secrets Act ("CUTSA") claims together because the elements are substantially similar.  *See InteliClear*, 978 F.3d at 657.  "To succeed on a claim for misappropriation of trade secrets under the DTSA, a plaintiff must prove: (1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff."  *Id.* at 657–58.

> i.    *Whether the Complaint alleges Plaintiff possessed a trade secret*

A trade secret is financial, scientific, business, economic, technical, or engineering information that (1) the owner has taken reasonable measures to keep secret, (2) derives independent economic value from not being generally known to or readily accessible by the public through proper means, and (3) is related to a product or service used in or intended for use in interstate or foreign commerce.  *See* 18 U.S.C. §§ 1836(b) and 1839(3). The plaintiff "'should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade.'"  *Imax Corp. v. Cinea Technologies, Inc.*, 152 F.3d 1161, 1164–65 (9th Cir. 1998).

> a.    *Whether Ameris took measures to keep the information secret*

The Complaint alleges Ameris' alleged trade secrets were protected by measures such as "providing unique usernames and passwords for logging in to the Ameris database, secured portal access, and utilizing encryption programs, among other security measures." *Compl.* ¶ 45-49, 121.  Additionally, the Complaint alleges Ameris trained Byrne on data security and confidentiality policies and procedures, and required him to sign the Confidential Information Agreement and Acceptable Use Policy to prevent the disclosure of trade secrets.  *Id.* ¶ 48, 121.  Thus, Ameris took reasonable measures to keep this information secret.  *See 7EDU Impact Academy Inc. v. You*, 760 F. Supp. 3d 981, 996 (N.D. Cal. 2024) (holding that plaintiff took reasonable steps to protect its trade secrets where it

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:26-cv-00393-MWC-JDE                      Date: July 9, 2026

Title:      Ameris Bank v. Patrick Byrne

kept them in a password-protected database and disseminated a policy regarding the company's trade secrets).

> *b.      Whether Ameris derives independent economic value from the information not being generally known to or readily accessible by the public through proper means*

Ameris' alleged trade secrets include

a. Information relating to customer leases and accounts, which included sensitive customer banking and financial information, including without limitation, dates of birth, addresses, credit scores, and social security numbers;

b. Detailed nonpublic financial information relating to Ameris and the Balboa division, including profit and loss statements, budget forecasts, income projections, strategic plans and risk assessments;

c. Non-public Ameris business strategy slide decks, meeting minutes and notes related to the slide decks;

d. Non-public financial information relating to the contemplated acquisitions of various entities;

e. Balboa division Income Statements and Balance Sheets from October 2022 - March 2024, and more.

*Compl.* ¶ 62.   The Complaint also alleges Byrne sent a confidential pricing model containing Ameris' non-public financial data to his assistant. *Id.* at ¶ 103.

"In California, customer lists may constitute trade secrets." *TEG Staffing, Inc. v. Platt*, No. 09-CV-0003 H (POR), 2009 WL 10725672, at \*5 (S.D. Cal. Feb. 5, 2009) (citing *Thompson v. Impaxx, Inc.*, 113 Cal. App. 4th 1425, 1429 (Cal. Ct. App. 2003)).  Financial statements, meeting minutes, and notes from business strategy meetings may also contain independent economic value by virtue of not being easily obtainable by others.  This information could be used by competitors to gain market share and competitive advantage through customer solicitation and strategic planning.  *See MAI Systems, Corp. v. Peak*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:26-cv-00393-MWC-JDE                                Date: July 9, 2026

Title:        Ameris Bank v. Patrick Byrne

*Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993) ("[Plaintiff's] Customer Database has potential economic value because it allows [competitors] to direct [their] sales efforts to those potential customers that are already using [plaintiff's] computer system."). And the Complaint "describe[s] the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade." *Imax Corp.*, 152 F.3d at 1164–65. Ultimately, whether these materials have independent economic value is a question of fact and determination would be premature.

> c.        *Whether the information is related to a product or service used in or intended for use in interstate or foreign commerce*

The Complaint alleges the trade secrets in question are related to Ameris engaging in interstate commerce. *Compl.* at ¶ 117–18. As a nationwide, publicly traded bank, *see id.* ¶ 1, 117, the allegation is plausible.

Thus, Ameris sufficiently pleads that the allegedly misappropriated information constitutes trade secrets.

> ii.        *Whether the Complaint alleges Defendant Misappropriated the Trade Secret*

Misappropriation involves either (1) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means or (2) disclosure or use of a trade secret of another without express or implied consent. *See* § 1839(5). Though courts can find that downloading information in violation of a company confidentiality policy by itself constitutes misappropriation, they usually require some concurrent illegitimate purpose. *See, e.g.*, *Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155, 1172 (finding plaintiff sufficiently pled misappropriation where employees e-mailed themselves trade secrets three months before resigning and used that information to solicit clients that actually left plaintiff's business); *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 848 (N.D. Cal. 2019) (finding misappropriation where, after deciding to leave his employer, employee downloaded files onto his personal computer in violation of a confidentiality agreement and deleted those same files from his company device); *eShares, Inc. v. Talton*, 727 F. Supp. 3d 482, 493 (S.D.N.Y. 2024) ("It cannot be that every employee who simply accesses documents containing alleged proprietary information on a personal device, perhaps in violation of a company directive,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:26-cv-00393-MWC-JDE                    Date: July 9, 2026

Title:        Ameris Bank v. Patrick Byrne

has now violated federal law."). Mere possession of trade secrets, even by a departing employee, is not enough. *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 989 (S.D. Cal. 2012); *see Cutera, Inc. v. Lutronic Aesthetics, Inc.*, 444 F. Supp. 3d 1198, 1207 (E.D. Cal. 2020) ("Mere possession of trade secrets by a departing employee is not sufficient to establish misappropriation or show injury.").

The Complaint alleges Byrne sent e-mails from his Ameris e-mail account to his personal email account and attached "documents containing Ameris's confidential, proprietary and trade secret information for his own personal benefit or for the benefit of others." *Compl.* ¶ 137. Nonetheless, this element is not sufficiently pled, because the Complaint fails to allege non-conclusory facts that Byrne used the trade secret for some concurrent illegitimate purpose beyond mere possession. *See Pellerin*, 877 F. Supp. 2d at 989. For example, the Complaint's allegation that, when producing documents in the Prior Action, Byrne "did everything he could following his termination to hide his misappropriation" of the e-mails forwarded from his Ameris e-mail account to his personal e-mail, is not persuasive, given that the Complaint also alleges the productions were expressly responsive to the LTIP calculation at issue in the Prior Action. *Compl.* ¶¶ 56, 74–75.[4]

Without nonconclusory factual allegations of an illegitimate purpose in acquiring the trade secrets, the Complaint does not plead misappropriation. Therefore, the motion is **GRANTED** with respect to both trade secret claims, with leave to amend.

D.        Claim Four: Violation of Cal. Penal Code § 502

Plaintiff brings a claim against Byrne for violation of Cal. Pen. Code § 502. California Penal Code "Section 502 is an anti-hacking statute," under the California Comprehensive Data and Fraud Act, "intended to prohibit the unauthorized use of any computer system for improper or illegitimate purpose." *Custom Packaging Supply, Inc. v. Phillips*, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015).

---

[4] The Complaint's allegations that Byrne's alleged misappropriations were "willful and malicious" is also conclusory and does not constitute factual support for a misappropriation claim. *See Compl.* at ¶ 128, 140; *Iqbal*, 556 U.S. at 681.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.    8:26-cv-00393-MWC-JDE                         Date: July 9, 2026

Title:        Ameris Bank v. Patrick Byrne


The Complaint alleges that Defendant violated Cal. Pen. Code § 502 in the following ways:

A. "Wrongfully using Ameris's computer network to obtain Ameris's confidential, proprietary, trade secret and attorney-client privileged information and communications;

B. Wrongfully taking and/or copying Ameris's confidential, proprietary, trade secret and/or attorney-client privileged information and communications;

C. Wrongfully using Ameris's confidential, proprietary, trade secret and attorney client privileged information and communications; and

D. Wrongfully using Ameris's computer equipment and network subsequent to the termination of his Ameris employment"

*Compl.* ¶¶ 141–47.

California Penal Code § 502(c) enumerates fourteen categories of offenses. Cal. Pen. Code § 502. However, Ameris fails to state the specific statutory basis for their § 502 action, and the correlation between the allegations and the statute's enumerated offenses is not readily apparent. "Plaintiffs' failure to specify the specific statutory basis for their § 502 action requires dismissal," because it is impossible for this Court to evaluate the claim, and because the allegations as pled do not give Byrne sufficient notice of the claims against him. *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1098 (N.D. Cal. 2015).

For these reasons, the claim is **DISMISSED** with leave to amend the Complaint and specify which category of offense or offenses Ameris alleges Byrne committed.

E.        <u>Claim Five: Conversion</u>

Under California law, the "'elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages.'" *Haas v. Travelex Ins. Services Inc.*, 555 F. Supp. 3d 970, 982 (C.D. Cal. 2021) (quoting *Hanover Ins. Co. v. Fremont Bank*, 68 F. Supp. 3d 1085, 1100 (N.D. Cal. 2014)). A plaintiff has a right to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:26-cv-00393-MWC-JDE                          Date: July 9, 2026

Title:       Ameris Bank v. Patrick Byrne

possess property where that property is meant to be turned over to them.  *See Mendoza v. Cont'l Sales Co.*, 140 Cal. App. 4th 1395, 1405 (2006).  A plaintiff can assert a conversion claim when access to some property they are entitled to possess is blocked by defendant.  *See Gruber v. Pac. States Sav. & Loan Co.*, 13 Cal. 2d 144, 148–49 (1939).  A plaintiff must plead damages for the court to sustain a conversion claim against a demurrer.  *See Baldwin v. Marina City Properties, Inc.*, 79 Cal. App. 3d 393, 411–12 (1978).

> i.      *CUTSA Preemption*

As a threshold matter, Byrne argues that Ameris' conversion claim is preempted by its CUTSA claim since the two claims are not materially distinct.  *Mot.* at 30.  The Court agrees in part.

CUTSA "'implicitly preempts alternative civil remedies based on trade secret misappropriation.'"  *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 985 (C.D. Cal. 2011) (quoting *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 954 (2009)).  "'CUTSA serves to preempt all claims premised on the wrongful taking and use of confidential business and proprietary information, even if that information does not meet the statutory definition of a trade secret.'"  *ChromaDex, Inc. v. Elysium Health, Inc.*, 369 F. Supp. 3d 983, 989 (C.D. Cal. 2019).  However, a claim can escape preemption if it is "based on more than 'the same nucleus of facts as the misappropriation of trade secrets claim for relief.'"  *Id.*

Ameris' misappropriation claim arises from allegations that Byrne downloaded and sent confidential information from his Ameris e-mail account to his personal e-mail account throughout the course of his employment.  *Compl.* ¶ 61.  In contrast, Ameris' conversion claim concerning its company laptop derives from Byrne's refusal to return the laptop after termination.  *Id.* ¶¶ 53–54, 58, 152.  This is not the same constellation of facts that support the misappropriation claims.  Therefore, these two claims are materially distinct.

However, Plaintiff also relies on facts underlying its misappropriation claim to allege conversion of Plaintiff's employee and customer PII.  Plaintiff provides no new facts distinct from those supporting its misappropriation claim when asserting its conversion claims.  *See Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010) (finding a conversion claim was preempted by a CUTSA claim where the plaintiff failed to meaningfully distinguish its conversion claim from its CUTSA claim).  Indeed, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:26-cv-00393-MWC-JDE                              Date: July 9, 2026

Title:        Ameris Bank v. Patrick Byrne

Complaint explicitly alleges the conversion of trade secret information, which supports a finding that the conversion claim is not materially distinct from the misappropriation claims. *Compl.* ¶ 151 ("Byrne . . . [took] possession of Ameris's documents containing confidential, proprietary, trade secret and attorney-client privileged information and communications, including information relating to Ameris's customers and employees.").

For the foregoing reasons, the conversion claim relating to the "confidential, proprietary, trade secret and attorney-client privileged information and communications, including information relating to Ameris's customers and employees," is preempted, and the Court **GRANTS** the motion to dismiss the conversion claim as to trade secrets. Because amendment will not necessarily be futile, the Court grants leave to amend.

However, Plaintiff's conversion claim for its computer equipment is not preempted by CUTSA. The Court proceeds to analyze the conversion claim only as to the computer equipment.

> ii.    *Conversion of Computer Equipment*
>
> a.    *Plaintiff's ownership or right to possession of the property*

The Complaint alleges Ameris loaned its laptop to Byrne for his work. *Compl.* ¶ 90. The Complaint also alleges, once Ameris terminated Byrne, Ameris was entitled to repossess the laptop from Byrne. *Id.* at ¶ 58, 90. Thus, the Complaint pleads that Ameris has a right to possess the laptop at the heart of their conversion claim.

> b.    *Defendant's conversion by a wrongful act or disposition of property rights*

The Complaint alleges Byrne refused to return the laptop to Ameris after being terminated. *Id.* ¶ 150. Thus, the Complaint alleges Byrne has interfered with or dispossessed Ameris' access to property it had a right to possess.

> c.    *Damages*

The Complaint attributes to the conversion the costs of "forensic data and legal costs," as well as "other costs relating to ensuring legal and regulatory compliance, costs to address Byrne's data breach, and attorney's fees." *Compl.* ¶ 154. The Complaint also

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.    8:26-cv-00393-MWC-JDE                         Date: July 9, 2026

Title:     Ameris Bank v. Patrick Byrne


asserts punitive damages are available.  For these reasons, Plaintiff has properly pled damages.

With all elements of conversion pled as to the computer equipment, the Complaint states a claim for conversion concerning the Ameris-owned laptop.  The Motion is **GRANTED IN PART** as to a  claim for conversion of trade secrets, with leave to amend, and **DENIED IN PART** as to a claim for conversion of the laptop.

V.      Conclusion

For the foregoing reasons, the Motion is **GRANTED IN PART WITH LEAVE TO AMEND** with respect to the Claims Two and Three for trade secret misappropriation; Claim Four for violation of California Penal Code § 502; and Claim Five for conversion of customer and employee PII.

The Motion is **GRANTED IN PART WITHOUT LEAVE TO AMEND** as to the breach of contract claim with respect to the Employment Agreement

The Motion is **DENIED** in all other respects.

If Ameris chooses to file an Amended Complaint to cure the deficiencies identified herein, it must do so within **21** days of this Order.  No new claims or parties may be added without the Court's prior approval or Defendant's written stipulation.  Fed. R. Civ. P. 15.


**IT IS SO ORDERED.**



                                                                                    :

                                          **Initials of Preparer**   TJ