ALLEN MATKINS LECK GAMBLE
   MALLORY & NATSIS LLP
MATTHEW T. SESSIONS (BAR NO. 307098)
CATRIONA M. LAVERY (BAR NO. 310546)
STACEY A. VILLAGOMEZ (BAR NO. 317081)
2010 Main Street, 8th Floor
Irvine, California 92614-7214
Phone:  (949) 553-1313
Fax:  (949) 553-8354
E-Mail:  msessions@allenmatkins.com
         clavery@allenmatkins.com
         svillagomez@allenmatkins.com

Attorneys for Defendant
PATRICK BYRNE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERIS BANK, a Georgia corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PATRICK BYRNE, an individual,<br><br>　　　　　Defendant. | Case No. 8:26-cv-00393-MWC-JDE<br><br>ASSIGNED FOR ALL PURPOSES TO:<br>Hon. Michelle Williams Court<br><br>**DEFENDANT PATRICK BYRNE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date:　　Sept. 11, 2026<br>Time:　　1:30 p.m.<br>Ctrm:　　6A |

ALLEN MATKINS LECK
GAMBLE MALLORY &
NATSIS LLP
ATTORNEYS AT LAW

4901-0265-0565

CASE NO. 8:26-CV-00393-MWC-JDE
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................6

II.    BACKGROUND ................................................................................................7

    A.    The Parties and Prior Action ................................................................7

    B.    Ameris Files This Separate Action ......................................................8

    C.    Initial Motion to Dismiss and Amendment ..........................................8

III.   LEGAL STANDARD .......................................................................................9

IV.    AMERIS'S FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR COUNTS II, III, AND IV. ..................................10

    A.    Trade Secret Claims – Ameris Still Fails to Allege Misappropriation Under the DTSA or CUTSA. ............................10

        1.    The FAC Fails to Allege Sufficient Facts to Plausibly State a Claim of Improper Acquisition. ...................11

        2.    The FAC Fails to Sufficiently Allege Improper Use or Disclosure. ..........................................................14

            (a)    The FAC Does Not Plausibly Allege Improper Use. ...........................................................14

            (b)    The FAC Does Not Plausibly Allege Actionable Disclosure. .............................................17

    B.    Section 502 Claim – Ameris's Penal Code § 502 Claim Still Fails. .........................................................................18

        1.    Section 502(h) Bars Ameris's Claim Based on the FAC's Own Allegations. ........................................19

        2.    The FAC Independently Fails to Plead Violations of Penal Code Section 502(c)(1), (2), (3), and (7). .................21

V.     PLAINTIFF'S COUNTS II THROUGH IV SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND. .......................................23

VI.    CONCLUSION ................................................................................................23

CERTIFICATE OF COMPLIANCE...............................................................24

ALLEN MATKINS LECK
GAMBLE MALLORY &
NATSIS LLP
ATTORNEYS AT LAW

4901-0265-0565

CASE NO. 8:26-CV-00393-MWC–JDE
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AccuImage Diagnostics Corp v. Terarecon, Inc.*,
260 F. Supp. 2d 941 (N.D. Cal. 2003)......................................................15, 16

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*,
28 Cal. App. 5th 923 (2018) .................................................................... 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................9, 10, 20, 22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................9, 10, 20

*Chrisman v. City of Los Angeles*,
155 Cal. App. 4th 29 (2007) .........................................................18, 20, 21

*Columbia Sportswear Co. v. Ferreira*,
809 F. Supp. 3d 1163 (D. Or. 2025).......................................................12, 13

*Cypress Semiconductor Corp. v. Maxim Integrated Prods.*, Inc.,
236 Cal. App. 4th 243 (2015) ...................................................................15

*eShares, Inc. v. Talton*,
727 F. Supp. 3d 482 (S.D.N.Y. 2024) .......................................................12, 13

*Finton Constr., Inc. v. Bidna & Keys, APLC*,
238 Cal. App. 4th 200 (2015) .............................................................14, 17, 20

*Gibson-Homans Co. v. Wall-Tite, Inc.*,
No. 92 2750 JGD, 1992 WL 512411 (C.D. Cal. Oct. 27, 1992) ..................14, 17

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
978 F.3d 653 (9th Cir. 2020) ...................................................................10

*JustMed, Inc. v. Byce*,
600 F.3d 1118 (9th Cir. 2010) .............................................................14, 16, 17

*LVRC Holdings LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009) ...................................................................21

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ...................................................................9

*OEGG, Inc. v. Pierce Egg Co.*,
No. 5:26-cv-02725-CAS-DTBx, 2026 WL 1823015 (C.D. Cal. June 24, 2026) ...........................................................................12

*Pellerin v. Honeywell Intern., Inc.*,
877 F. Supp. 2d 983 (S.D. Cal. 2012) .......................................................11, 12, 13, 14

ALLEN MATKINS LECK
GAMBLE MALLORY &
NATSIS LLP
ATTORNEYS AT LAW

4901-0265-0565

- 3 -

CASE NO. 8:26-CV-00393-MWC-JDE
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

**Page(s)**

*People v. Gentry,*
234 Cal. App. 3d 131 (Ct. App. 1991) ................................................................18

*Rivera v. Peri & Sons Farms, Inc.,*
735 F.3d 892 (9th Cir. 2013) .............................................................................19

*Rodriguez v. Google LLC,*
772 F. Supp. 3d 1093 (N.D. Cal. 2025) ...........................................................22

*S. California Inst. of L. v. TCS Educ. Sys.,*
No. CV 10-8026 PSG AJWX, 2011 WL 1296602 (C.D. Cal.
Apr. 5, 2011) .......................................................................................................12

*Sprewell v. Golden State Warriors,*
266 F.3d 979 (9th Cir. 2001) ........................................................................ 10, 20

*Steckman v. Hart Brewing, Inc.,*
143 F.3d 1293 (9th Cir. 1998) ...........................................................................23

*U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.,*
931 F.3d 966 (9th Cir. 2019) .............................................................................19

*United States v. Nosal,*
676 F.3d 854 (9th Cir. 2012) .............................................................................22

*United States v. Sanmina Corp.,*
968 F.3d 1107 (9th Cir. 2020) ...........................................................................17

*Veronica Foods Co. v. Ecklin,*
2017 WL 2806706 (N.D. Cal. June 29, 2017) ...................................................16

*York County on Behalf of County of York Retirement Fund v.
HP, Inc.,*
65 F.4th 459 (9th Cir. 2023) ...............................................................................19

*Zucco Partners, LLC v. Digimarc Corp.,*
552 F.3d 981 (9th Cir. 2009), *as amended* (Feb. 10, 2009) ..............................23

**Statutes**

18 U.S.C. § 1832.......................................................................................................6

18 U.S.C. § 1833(b)(2) .......................................................................................14, 17

18 U.S.C. § 1836(b)(1) ...........................................................................................10

18 U.S.C. § 1839(5).................................................................................................10

18 U.S.C. § 1839(6)(A) ...........................................................................................11

18 U.S.C. § 1839(6)(B).............................................................................................11

ALLEN MATKINS LECK
GAMBLE MALLORY &
NATSIS LLP
ATTORNEYS AT LAW

4901-0265-0565

- 4 -

CASE NO. 8:26-CV-00393-MWC-JDE
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

**Page(s)**

Cal. Civ. Code § 3426........................................................................................... 6

Cal. Civ. Code § 3426.1(a) ................................................................................. 11

Cal. Civ. Code § 3426.1(b) ................................................................................. 10

Cal. Penal Code § 502 .................................................................................passim

Cal. Penal Code § 502(a) .................................................................................... 18

Cal. Penal Code § 502(b)(1) ............................................................................... 18

Cal. Penal Code § 502(c) ............................................................................... 18, 19

Cal. Penal Code §§ 502(c)(1), (2), (3), and (7) ............................................9, 19, 21

Cal. Penal Code § 502(h)............................................................................7, 18, 19, 20

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................... 6, 9

ALLEN MATKINS LECK
GAMBLE MALLORY &
NATSIS LLP
ATTORNEYS AT LAW

4901-0265-0565

CASE NO. 8:26-CV-00393-MWC-JDE
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

## I. INTRODUCTION

Ameris has already had one opportunity to plead the claims at issue in this Motion, but its revised pleading still does not allege the facts necessary to make them viable.

In this action,[1] on February 20, 2026, Ameris brought suit for (1) Breach of Contract, (2) Trade Secret Misappropriation in Violation of the Defend Trade Secrets Act, 18 U.S.C. Section 1832, *et seq*. ("DTSA"), (3) Trade Secret Misappropriation in Violation of California Civil Code Section 3426 ("CUTSA"), (4) Violation of California Penal Code Section 502, and (5) Conversion. (*Id*.) Byrne moved to dismiss Ameris's original Complaint under Rule 12(b)(6). (Dkt. 20.) The Court granted that motion in part, including, as relevant here, dismissal of Ameris's trade-secret claims, with leave to amend, on the grounds that Ameris failed to plead "nonconclusory factual allegations of an illegitimate purpose in acquiring the trade secrets." (Dkt. 33, at 18.) The Court further dismissed Ameris's Penal Code § 502 claim, also with leave to amend, stating that Ameris's Complaint "failed to state the specific statutory basis for [the] § 502 action." (Dkt. 33, at 19.) Ameris filed its First Amended Complaint ("FAC") on July 27, 2025. (Dkt. 37, 41.) But the FAC does not cure the deficiencies underlying the trade secrets and Penal Code § 502 claims.

First, the FAC still does not plead sufficient facts to state a plausible claim for misappropriation of trade secrets, because Ameris's own allegations establish that Byrne had authorized access to the information at issue as part of his employment,

---

[1] In a separate action, on September 16, 2024, Patrick Byrne sued Ameris for wrongful termination and other counts. *Patrick Byrne v. Ameris Bank,* No. 8:24-cv-01989-MWC (C.D. Cal.) ("Prior Action"); Request for Judicial Notice ("RJN"), Dkt. 20, Ex. B (Prior Complaint). The case proceeded to trial in June 2026, and a jury awarded Byrne nearly $80 million dollars in compensatory and punitive damages. Judgment has since been entered in Byrne's favor. (*See* Prior Action, Dkt. 253.) While the Prior Action was still pending, Ameris filed this separate action against Byrne, Ameris sued Byrne in a separate action on February 20, 2026, just eight days after Byrne had substantially prevailed on Ameris's Motion for Summary Judgment and less than three weeks before the parties' private mediation in the Prior Action. (Dkt. 1.)

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
ATTORNEYS AT LAW

4901-0265-0565

CASE NO. 8:26-CV-00393-MWC–JDE
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

while failing to plausibly allege that he acquired it through "improper means." Furthermore, Ameris still does not plausibly allege actionable use or disclosure; its allegations amount largely to mere possession, internal communications, and the use of documents in litigation against Ameris—none of which are actionable facts, even if treated as true.

Second, although Ameris has now identified specific subsections of Penal Code § 502 that Byrne allegedly violated, the entire claim fits squarely into the statute's exception for conduct performed within the scope of lawful employment because the FAC alleges that Byrne was authorized to access Ameris's systems and information in performing his job—the very conduct Section 502(h) excludes from liability. *See* Cal. Penal Code § 502(h).

For each of these reasons, and because Ameris has already been afforded an opportunity to amend these claims, the Court should dismiss Counts II, III, and IV without leave to amend.

## II.    BACKGROUND

### A.    The Parties and Prior Action

Patrick Byrne founded Balboa Capital in 1988 and served as its Chief Executive Officer for more than three decades. FAC ¶¶ 1, 21, and 22. In December 2021, Ameris acquired Balboa for approximately $187 million. *Id.*, ¶ 1. Byrne agreed to remain with Ameris as Chief Executive Officer of the Balboa Division, and, at closing, entered into a written Employment Agreement governing his post-acquisition role and compensation. *Id.* ¶¶ 24–25. In that role, Byrne had broad access to Ameris information. Indeed, the FAC alleges that, "[b]y reason of his employment and high-level position with Ameris," Byrne had access to Ameris's trade secrets.

In June 2024, Ameris terminated Byrne's employment. FAC ¶ 64. Byrne thereafter filed the Prior Action in September 2024, asserting claims arising from his termination and Ameris's failure to pay compensation allegedly owed to him. (Dkt. 33 at 7; Dkt. 20, RJN, Ex. B.) The Prior Action proceeded to trial in June 2026, where

ALLEN MATKINS LECK
GAMBLE MALLORY &
NATSIS LLP
ATTORNEYS AT LAW

4901-0265-0565

- 7 -

CASE NO. 8:26-CV-00393-MWC-JDE
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

a jury returned a verdict in Byrne's favor and awarded him nearly $80 million in compensatory and punitive damages. (*See* Prior Action, Dkt. 253.)

### B.    Ameris Files This Separate Action

While the Prior Action was pending, Ameris filed this separate action against Byrne on February 20, 2026, only eight days after the Court denied most of Ameris's Motion for Summary Judgment and less than three weeks before the parties' private mediation session. (Dkt. 1.) Ameris asserted claims for breach of contract, trade-secret misappropriation under the Defend Trade Secrets Act ("DTSA") and California Uniform Trade Secrets Act ("CUTSA"), violation of California Penal Code § 502, and conversion. (*Id.*) Byrne moved to dismiss. (Dkt. 20.) The Court granted that motion in part, including dismissal of Ameris's trade-secret and Section 502 claims with leave to amend. (Dkt. 33.) Ameris thereafter filed the FAC. (Dkt. 37.)

### C.    Initial Motion to Dismiss and Amendment

On May 18, 2026, Byrne brought his initial motion to dismiss as to the original Complaint. With respect to the trade secrets claims, Byrne argued, in relevant part, that the Complaint failed to plead sufficient factual allegations because it did not identify any improper access, use, or disclosure of the alleged trade secrets. (Dkt. 20 at 25–30.) Similarly, as to the Section 502 claim, Byrne argued that Ameris failed to allege facts sufficient to support the cause of action. (*Id.* at 31–32.)

On July 9, 2026, the Court granted the motion in part, with leave to amend the DTSA and CUTSA claims for failing to adequately plead misappropriation and the Section 502 claim for failing to state a specific statutory basis for the cause of action. (Dkt. 33.) On July 30, 2026, Ameris filed its FAC. (Dkt. 37.)

The FAC alleges that Byrne violated Ameris's confidentiality and information-security policies—and thereby violated the DTSA and CUTSA—by, among other things, transmitting company information to personal email accounts, using unapproved devices and third-party systems, copying and retaining Ameris

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
ATTORNEYS AT LAW

4901-0265-0565

- 8 -

CASE NO. 8:26-CV-00393-MWC-JDE
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

files, and failing to report alleged information-security breaches. *See* FAC ¶¶ 161–62, 165–66, 184–85, 188–89. At the same time, the FAC alleges that Byrne routinely used his personal computer for work, quoting his testimony in the Prior Action that "it was pretty common knowledge that I would use my personal computer . . . to work at home." *Id*. ¶ 93. The FAC further alleges that Byrne retained certain information for use in the Prior Action and involved his attorney, Esperanza Anderson, and his employee, Jacquie Emert, in transmitting documents in connection with that litigation, including by having Emert provide Ameris documents to Byrne's retained expert witness. *See id*. ¶¶ 101, 109, 122–23. Ameris also alleges that Byrne used Ameris trade secrets to solicit certain Ameris employees for another business venture. *Id*. ¶¶ 131, 160, 165, 183, 188, 199. Based on these allegations, Ameris reasserts its DTSA and CUTSA claims, alleging that Byrne improperly acquired, retained, used, and disclosed Ameris trade secrets. *Id*. ¶¶ 155–166, 178–89. Ameris also now identifies four provisions of Penal Code § 502 that Byrne allegedly violated—Sections 502(c)(1), (2), (3), and (7))—and alleges that his conduct was "without permission" and outside the scope of his lawful employment. *Id*. ¶¶ 196–202.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires that a claim be dismissed if its allegations fail to set forth a set of facts that, if true, would entitle the complainant to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. On a motion to dismiss, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008). Courts are not required to accept as true legal conclusions

ALLEN MATKINS LECK
GAMBLE MALLORY &
NATSIS LLP
ATTORNEYS AT LAW

4901-0265-0565

- 9 -

CASE NO. 8:26-CV-00393-MWC-JDE
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

presented as factual allegations, nor must they credit conclusory allegations that merely recite the elements of a cause of action; such allegations are disregarded when assessing whether a complaint plausibly states a claim for relief. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Likewise, Courts are also not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## IV. AMERIS'S FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR COUNTS II, III, AND IV.

Ameris's amendments do not cure the pleading deficiencies in its trade-secret and Penal Code § 502 claims. Counts II, III, and IV should therefore be dismissed.

### A. Trade Secret Claims – Ameris Still Fails to Allege Misappropriation Under the DTSA or CUTSA.

The elements of a DTSA claim are (1) the existence of a trade secret, (2) **misappropriation** of the trade secret by another, and (3) the trade secret's relation to a good or service used or intended for use in interstate or foreign commerce. *See* 18 U.S.C. § 1836(b)(1). The DTSA defines "misappropriation" as "**acquisition** of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means," or "**disclosure** or **use** of a trade secret of another without express or implied consent" by a person who "used improper means to acquire knowledge of the trade secret," among other circumstances. 18 U.S.C. § 1839(5) (emphasis added). The CUTSA imposes substantially similar requirements, and courts therefore analyze claims under the two statutes together. *See InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657–58 (9th Cir. 2020). Both statutes require "misappropriation," which may occur through improper acquisition or unauthorized use or disclosure. *See* 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b).

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
ATTORNEYS AT LAW

4901-0265-0565

- 10 -

CASE NO. 8:26-CV-00393-MWC-JDE
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

In its July 9, 2026 Order, the Court held that Ameris inadequately pled misappropriation without nonconclusory allegations, failing to allege that Byrne used trade secrets for some illegitimate purpose beyond mere possession. (*See* Dkt. 33 at 18.) Despite Ameris's amendment, the FAC still fails to plausibly allege misappropriation. Specifically, the FAC does not allege facts showing that Byrne improperly acquired information he was authorized to access during his employment, nor does it plausibly allege that he later used or disclosed that information in any manner actionable under the DTSA or CUTSA.

### 1.    The FAC Fails to Allege Sufficient Facts to Plausibly State a Claim of Improper Acquisition.

As an initial matter, the FAC fails to allege that Byrne "improperly acquired" the alleged trade secret materials.

Both DTSA and CUTSA make acquisition actionable only if it occurred through "improper means," which both statutes define as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6)(A); Cal. Civ. Code. § 3426.1(a). By contrast, the statutes expressly exclude "reverse engineering, independent derivation, or any other lawful means of acquisition." 18 U.S.C. § 1839(6)(B); *see* Cal. Civ. Code. § 3426.1(a).

Critically for this motion, information obtained in the ordinary course of an employee's duties is not improper acquisition, and therefore not misappropriation. Rather, courts have explained that the transfer of confidential information must be rooted in circumstances showing an improper or illegitimate purpose. For example, in *Pellerin v. Honeywell Intern., Inc.*, a court held that the plaintiff did "not allege[] sufficient facts to establish misappropriation" because its allegations that defendant "acquired [plaintiff]'s trade secret information" by virtue of his employment were insufficient to establish improper acquisition. *Pellerin v. Honeywell Intern., Inc.,* 877 F. Supp. 2d 983, 989 (S.D. Cal. 2012). The court explained that "'[a]lleging mere

possession of trade secrets is not enough." *Id*. (internal citations omitted); *see* Dkt. 33 at 18 ("Mere possession of trade secrets, even by a departing employee, is not enough" (citing cases)); *S. California Inst. of L. v. TCS Educ. Sys.*, No. CV 10-8026 PSG AJWX, 2011 WL 1296602, at *7 (C.D. Cal. Apr. 5, 2011) (stating that alleging "[m]ere possession of trade secrets" is "not enough" to state a claim for misappropriation); *Columbia Sportswear Co. v. Ferreira*, 809 F. Supp. 3d 1163, 1179-80 (D. Or. 2025) (explaining that an employee merely downloading documents is unlikely to constitute improper acquisition unless coupled with "unusual circumstances indicating an improper or illegitimate purpose," such as pursuing employment with a competitor); *eShares, Inc. v. Talton*, 727 F. Supp. 3d 482, 493 (S.D.N.Y. 2024) ("[I]t cannot be that every employee who simply accesses documents containing alleged proprietary information on a personal device, perhaps in violation of a company directive, has now violated federal law.").[2]

As explained directly below, Ameris's FAC does not allege facts sufficient to establish improper acquisition under this standard.

As an initial matter, the FAC concedes that Byrne was authorized to access the challenged information, stating: "By reason of his employment and high-level position with Ameris, Byrne had access to Ameris's trade secrets." FAC ¶ 178; *see also* FAC ¶¶ 30–31, 156 ("During the course of his employment relationship, Byrne was given access to Ameris's trade secrets . . . ."). It also alleges that during the Prior Action, Byrne testified that "it was pretty common knowledge that I would use my personal computer . . . to work at home." FAC ¶ 93. Where the FAC's own allegations establish access in the ordinary-course, alleged noncompliance with an internal policy does not, without more, transform lawful access into "improper acquisition"

---

[2] The FAC's citation to *OEGG, Inc. v. Pierce Egg Co.*, No. 5:26-cv-02725-CAS-DTBx, 2026 WL 1823015, at *14 (C.D. Cal. June 24, 2026), does not alter the analysis. *See* FAC ¶ 163. In OEGG, plaintiff alleged that defendants had acquired the alleged trade secrets under false pretenses, "under the guise of partnership and collaboration, while not revealing their development of a competing product until after [a] confidential meeting had occurred." *Id.* (internal quotation omitted).

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
ATTORNEYS AT LAW

4901-0265-0565

- 12 -

CASE NO. 8:26-CV-00393-MWC-JDE
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

under the DTSA or CUTSA. *See, e.g.*, *eShares, Inc.*, 727 F. Supp. 3d at 493 (stating that the DTSA "requires a level of impropriety that [an employee] merely accessing or downloading documents onto a personal device does not implicate," even if "in violation of a company directive"); Dkt. 33 at 17–18 (quoting *eShares, Inc.*). Information obtained in the ordinary course of an employee's duties is not misappropriation absent "unusual circumstances indicating an improper or illegitimate purpose," such as pursuing employment with a competitor. *Columbia Sportswear Co.*, 809 F. Supp. 3d at 1179–80.

Consistent with these admissions, Ameris does not otherwise plead a concrete instance of improper acquisition. Instead, it attempts to repackage Byrne's alleged violations of internal policies as improper acquisition—alleging, among other things, that he used personal email accounts and unapproved devices, copied company files, and transmitted information through third-party systems without IT authorization. *See* FAC ¶¶ 161–62, 184–85. But those allegations concern how Byrne **handled** information he was already authorized to access; they do not plausibly allege that he **acquired** that information through improper means in the first instance. *See Columbia Sportswear* Co., 809 F. Supp. 3d at 1179–80 (stating that an employee "[m]erely downloading" documents to a personal device where employee used the device for both personal and business purposes "likely does not give rise to a violation of federal or state law.").

Lastly, the FAC's allegations that Byrne "retained" information after his employment ended also fail to plead improper acquisition. Once again, continued possession of materials, without showing methods of wrongful means **at the time of acquisition**, does not plausibly plead misappropriation. *See Pellerin*, 877 F. Supp. 2d at 989; *see also* Dkt. 33 at 18 ("Mere possession of trade secrets, even by a departing employee, is not enough" (citing cases)). All Ameris pleads is that Byrne had **authorized** access to company information during his employment and allegedly violated Ameris's policies in the manner in which he retained or transmitted **after his**

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
ATTORNEYS AT LAW
4901-0265-0565

- 13 -

CASE NO. 8:26-CV-00393-MWC-JDE
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

*employment ended*. That is not enough to plausibly allege improper acquisition under DTSA or CUTSA. *See Pellerin*, 877 F. Supp. 2d at 989.

And although Ameris alleges that Byrne violated the DTSA and CUTSA by failing to report his own "information breaches"—including sharing information with himself that he knew "could expose Ameris to litigation," due to his alleged purpose of using it in his own lawsuit against Ameris—such facts, even if true, would not constitute an improper purpose. FAC ¶¶ 162, 185. Courts have made clear that litigation-related transmission of allegedly confidential information does not, without more, establish actionable misappropriation. *See Finton Constr., Inc. v. Bidna & Keys, APLC*, 238 Cal. App. 4th 200, 212 (2015) (holding transmission of alleged trade secrets to attorneys for evaluation in connection with litigation protected by litigation privilege); *accord* 18 U.S.C. § 1833(b)(2) ("An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual -- (A) files any document containing the trade secret under seal; and (B) does not disclose the trade secret, except pursuant to court order."). Furthermore, such facts, even if true, do not allege unauthorized access at any point in time. *See Pellerin*, 877 F. Supp. 2d at 989.

Because the FAC fails to plead nonconclusory facts showing Byrne wrongfully obtained alleged trade secrets, the misappropriation claims should be dismissed.

> **2.     The FAC Fails to Sufficiently Allege Improper Use or Disclosure.**
>
> **(a)     The FAC Does Not Plausibly Allege Improper Use.**

The FAC also fails to plead improper use. "The term 'use' in the context of misappropriation of a trade secret generally contemplates some type of use that reduces the value of the trade secret to the trade secret owner." *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1130 (9th Cir. 2010); *see Gibson-Homans Co. v. Wall-Tite, Inc.*, No. 92 2750 JGD, 1992 WL 512411, at *4 (C.D. Cal. Oct. 27, 1992) ("Since [former

ALLEN MATKINS LECK
GAMBLE MALLORY &
NATSIS LLP
ATTORNEYS AT LAW

4901-0265-0565

- 14 -

CASE NO. 8:26-CV-00393-MWC-JDE
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

employees] have not used the formulas or otherwise impaired their commercial benefit to plaintiff, no misappropriation has occurred."). Further, in "determining what constitutes 'use' and 'disclosure' of trade secrets in the context of misappropriation, courts have held," as with improper acquisitions, "that mere possession of trade secrets is not sufficient to satisfy this element of the cause of action." *AccuImage Diagnostics Corp v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 951 n.5 (N.D. Cal. 2003).

Here, the FAC does not identify any concrete instance in which Byrne actually used an alleged trade secret to Ameris's detriment. Instead, Ameris again points to the manner in which Byrne allegedly accessed, transmitted, or retained information—alleging that he used personal email, connected unapproved devices, copied files, forwarded emails through third-party systems, and intended to retain information permanently. *See* FAC ¶¶ 162, 185. Those allegations concern access, transmission, and possession, not improper use. *See, e.g., AccuImage Diagnostics Corp.*, 260 F. Supp. 2d at 951 n.5 ("[M]ere possession of trade secrets is not sufficient" to allege improper use).

In an attempt to cure the deficiencies noted in the Court's first motion to dismiss Order, Ameris added to its FAC vague allegations that Byrne used trade secrets to recruit Ameris employees. *See* FAC ¶¶ 165, 188. This does not suffice for several reasons. First, courts have held that the mere identity of a competitor's employees is not considered a "trade secret" that can be misappropriated, especially when their identity is already known to the alleged misappropriator or can easily be obtained elsewhere. *See AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 944–45 (2018) (holding identity of travel nurses was not trade secrets because competitor already knew of certain nurses and identity of certain nurses was publicly available in a Facebook group); *Cypress Semiconductor Corp. v. Maxim Integrated Prods.*, Inc., 236 Cal. App. 4th 243, 250–51, 255 (2015) (confirming no

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
ATTORNEYS AT LAW

4901-0265-0565

- 15 -

CASE NO. 8:26-CV-00393-MWC-JDE
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

arguable secret information where employee's information was easily accessible on LinkedIn).

Second, even accepting Ameris's recruitment allegations as true, Ameris still has to allege that Byrne used the trade secrets to engage in some form of competing venture that negatively impacted Ameris's business. It does not. *See* FAC ¶¶ 160, 165–66, 183, 188–98 (offering vague assertions that Byrne sought to benefit his business endeavors without alleging competition in the same field). In fact, while the FAC alleges that Byrne has a vaguely identified business venture, nowhere in the FAC does it allege the nature of that business or that the business is competing with Ameris in any way. *See generally* FAC. And Ameris pleads no facts—rather, just bare conclusions—suggesting that Byrne used trade secrets to hire the employees or that the employees are in any way competing with Ameris.[3] *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1130 (9th Cir. 2010) (stating that the improper "use" of trade secrets required for a misappropriation claim generally requires the owner's trade secret be exploited in a way that diminished its value to the owner).

Further, the FAC again seeks to allege Byrne has "permanent access" to the alleged trade secrets, but again, without any pleading of use beyond mere ***possession***, there is no improper use actually alleged. *See* FAC ¶¶ 161, 189; *AccuImage*

---

[3] Specifically, Ameris only alleges, ***in conclusory fashion***, without any specific facts of misuse: "129. Byrne has also intentionally used Ameris's confidential, proprietary and trade secret information to compile a personal archive of Ameris data for personal purposes unrelated to Ameris's business, including his own business endeavors. 130. On information and belief, Byrne is in the early stages of developing another business enterprise. 131. Based on the foregoing allegations, Byrne has access to confidential Ameris employee contact information, salary information and other HR related data that he has used, and may continue to use, to recruit Ameris employees to join his business, and to otherwise develop his business. For example, on information and belief, Byrne has already relied on Ameris information to recruit two former Ameris employees, Maddie Lucas and Nic Olmedo, both of whom were previously Loan Operations managers for Ameris, to join his new business." FAC ¶¶ 129–31; *see Veronica Foods Co. v. Ecklin*, 2017 WL 2806706, at *14 (N.D. Cal. June 29, 2017) (dismissing trade-secret claims where plaintiff alleged, in largely conclusory "everything-but-the-kitchen-sink" fashion, that Defendants made "improper and unauthorized use" of broad categories of information, such as customer lists, supplier lists, and "confidential business information", without specific factual allegations of misuse).

ALLEN MATKINS LECK
GAMBLE MALLORY &
NATSIS LLP
ATTORNEYS AT LAW

4901-0265-0565

- 16 -

CASE NO. 8:26-CV-00393-MWC-JDE
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

*Diagnostics Corp*, 260 F. Supp. 2d at 951 n.5 (mere possession of trade secrets is not enough satisfy the "use" or "disclosure" element of misappropriation); *JustMed*, 600 F.3d at 1130; *Gibson-Homans Co.*, 1992 WL 512411, at *4 (no misappropriation occurred because the trade secret's commercial value to the plaintiff remained unimpaired).

### (b)    The FAC Does Not Plausibly Allege Actionable Disclosure.

Ameris's improper "disclosure" theory is similarly deficient. The Court's Order for the first motion to dismiss held that the Complaint failed to plead misappropriation by not alleging any nonconclusory factual allegations of an illegitimate purpose. *See* Dkt. 33 at 18. Now, the FAC repeats the allegations that Byrne provided information to his attorney, Ms. Anderson, and his executive assistant, Ms. Emert, for purposes of the Prior Action. *See* FAC ¶¶ 101, 109, 122–23.

But even accepting these allegations as true, it is legally insufficient. As explained above, courts have made clear that litigation-related transmission of allegedly confidential information does not, without more, establish actionable misappropriation. *See Finton*, 238 Cal. App. 4th at 212 (holding transmission of alleged trade secrets to attorneys for evaluation in connection with litigation protected by litigation privilege); 18 U.S.C. § 1833(b)(2) (creating DTSA exception for "[u]se of trade secret information in anti-retaliation lawsuit"); *see also United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (recognizing attorney-client privilege may extend to communications with third-party agents of the client).

At most, the FAC alleges Byrne accessed information in the course of his employment, used certain materials to demonstrate Ameris's liability in connection with the Prior Action, and recruited former colleagues to come work for him. It identifies no instance in which Byrne improperly used any purported trade secret for a competitive purpose or to Ameris's detriment. That is not misappropriation. Accordingly, because the FAC fails to plead any plausible wrongful use or

ALLEN MATKINS LECK
GAMBLE MALLORY &
NATSIS LLP
ATTORNEYS AT LAW

4901-0265-0565

- 17 -

CASE NO. 8:26-CV-00393-MWC-JDE
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

disclosure, Ameris has not cured the existing pleading defects, and Ameris's misappropriation claims should be dismissed.

**B.     Section 502 Claim – Ameris's Penal Code § 502 Claim Still Fails.**

Section 502 prohibits the "tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." Cal. Penal Code § 502(a). Section 502 subdivision (h) contains a carve out that excludes conduct performed within the scope of lawful employment:

> (h) (1) Subdivision (c) does not apply to punish any acts which are committed by a person within the scope of lawful employment. For purposes of this section, a person acts within the scope of employment when the person performs acts which are reasonably necessary to the performance of their work assignment.

Section 502 therefore does not apply when the alleged conduct was undertaken as part of, or reasonably necessary to, an employee's job duties. Thus, conduct reasonably necessary to an employee's work assignment falls outside Section 502(c).

Section 502(h), construes the scope of employment broadly. *Chrisman v. City of Los Angeles*, 155 Cal. App. 4th 29, 36–37 (2007). Critically, an employee does not necessarily act outside the scope of employment merely because the employer disapproves of the manner in which the employee performs otherwise authorized work. *See id.* ("an employer's disapproval of an employee's conduct does not cast the conduct outside the scope of employment."). The statute also distinguishes "access" from ordinary "use" by defining "access" in terms that suggest hacking or unauthorized entry into a computer system, as opposed to merely using a computer for its intended purposes. Cal. Penal Code § 502(b)(1); *Chrisman*, 155 Cal. App. 4th at 34. Indeed, the legislative purpose of Section 502 is to deter and punish *unauthorized access*, such as hacking by unauthorized individuals. *Chrisman*, 155 Cal. App. 4th at 34 (citing *People v. Gentry*, 234 Cal. App. 3d 131, 141 n.8 (Ct. App. 1991)).

ALLEN MATKINS LECK
GAMBLE MALLORY &
NATSIS LLP
ATTORNEYS AT LAW

4901-0265-0565

- 18 -

CASE NO. 8:26-CV-00393-MWC-JDE
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

In dismissing the original Section 502 claim in the Complaint, the Court found that it was "impossible to evaluate" the claim because Plaintiff failed to specify which of the fourteen enumerated categories of offenses under Section 502(c) it wished to plead. *See* Dkt. 33, ¶ 19. Now Ameris has pointed to subsections 502(c)(1), (2), (3), and (7) of Section 502 , but does not sufficiently plead those allegations or overcome the explicit employee exemption provision (h). *See* FAC ¶¶ 198–201.

### 1. Section 502(h) Bars Ameris's Claim Based on the FAC's Own Allegations.

Regardless of whether Ameris adequately pleads the elements of Sections 502(c)(1), (2), (3), or (7), Section 502(h) independently bars the claim based on the facts alleged in the FAC.

Section 502(h) may be resolved at the pleading stage where, as here, the complaint itself establishes the statutory bar. As the Ninth Circuit has explained, dismissal is appropriate where "there is some obvious bar to securing relief on the face of the complaint." *York County on Behalf of County of York Retirement Fund v. HP, Inc.*, 65 F.4th 459, 446 (9th Cir. 2023) (quoting *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972–73 (9th Cir. 2019). "In other words, dismissal based on an affirmative defense is permitted when *the complaint* establishes the defense." *Id.*; *see also Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) (noting that "when an affirmative defense is obvious on the face of a complaint, however, a defendant can raise that defense in a motion to dismiss.").

Here, Ameris's own allegations bring the conduct squarely within Section 502's exception. The FAC clearly concedes that Byrne was an employee of Ameris and had legitimate business reasons for accessing the documents he emailed to his personal account. *See* FAC ¶¶ 1–2, 25, 30. For example, Ameris concedes that, in Byrne's role as CEO, he "had access to large amounts of highly valuable confidential, proprietary and trade secret information." FAC ¶ 30. Yet the FAC does not allege

that Byrne hacked into Ameris's systems, circumvented access restrictions, or otherwise obtained access to systems or information he was not permitted to access. To the contrary, Ameris also alleges that Byrne testified it was "pretty common knowledge that I would use my personal computer . . . to work at home." FAC ¶ 93. Taken together, these allegations confirm that Byrne's alleged computer use occurred in connection with performing his job duties, not in furtherance of any unauthorized or external activity.

Ameris tries to plead away the exception under subdivision (h) with another conclusory statement: "Byrne's actions that constitute violations of California Penal Code § 502 were not committed within the scope of his lawful employment at Ameris and were not reasonably necessary to the performance of his job duties at Ameris." FAC ¶ 202. Yet Ameris bolsters this allegation with no facts. *See generally* FAC; *Twombly,* 550 U.S. at 555 (holding that a pleading must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). This is precisely the type of legal conclusion the Court need not accept as true, particularly where the FAC's factual allegations point the other way. *See Iqbal*, 556 U.S. at 678; *Sprewell,* 266 F.3d at 988. Ameris cannot avoid Section 502(h) simply by reciting its inverse.

To the extent Ameris argues that subdivision (h) does not apply because Byrne allegedly used Ameris documents and data "to bolster his personal litigation against Ameris," there is no reason to think that subsection (h) is so narrow as to exclude such conduct. Subdivision (h) is read broadly, and particularly when coupled with California law recognizing the importance of litigation privilege, does not allow claims against employees to go forward absent unauthorized access, which is not present here. *See Chrisman*, 155 Cal. App. 4th at 37 (interpreting subdivision (h) broadly to protect employee activity); *Finton*, 238 Cal. App. 4th at 212 (holding transmission of alleged trade secrets to attorneys for evaluation in connection with litigation protected by litigation privilege).

ALLEN MATKINS LECK
GAMBLE MALLORY &
NATSIS LLP
ATTORNEYS AT LAW

4901-0265-0565

- 20 -

CASE NO. 8:26-CV-00393-MWC-JDE
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

Because the face of the FAC confirms that the challenged access occurred within the scope of Byrne's lawful employment, Ameris's FAC fails to state a claim under Section 502.

### 2. The FAC Independently Fails to Plead Violations of Penal Code Section 502(c)(1), (2), (3), and (7).

The FAC also fails to plead a viable claim under Penal Code Sections 502(c)(1), (2), (3), and (7) because each of these provisions requires the same missing element: that the challenged access or conduct be "without permission." *See* FAC ¶ 196. Ameris does not plausibly allege that Byrne accessed Ameris's computers, systems, or data "without permission," as required by the provisions on which its claim depends.

Courts have distinguished unauthorized access from an employee's misuse of information the employee was otherwise permitted to access. In *Chrisman*, the court determined that an employee's misuse of computer information that he was entitled to access did not violate Section 502 because he had job-related authorization to access the information, even if he accessed it for nonlegitimate or non-work-related purposes. 155 Cal. App. 4th 29, 34–35. The court cautioned that if employer disapproval were the standard under Section 502, then "virtually any misstep, mistake, or misconduct by an employee involving an employer's computer would . . . be criminal." *Id*. at 37.

In *LVRC Holdings LLC v. Brekka*, the Ninth Circuit held that an employee who emailed company documents to himself and his wife while still employed did not act "without authorization" under the CFAA because he had permission to use the employer's computer as a necessary part of his job. *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009). The Court explained that "when an employer authorizes an employee to use a company computer subject to certain limitations, the employee *remains authorized* to use the computer even if the employee violates those limitations" *Id*. (emphasis added); *see also Rodriguez v. Google LLC*, 772 F. Supp.

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
ATTORNEYS AT LAW

4901-0265-0565

- 21 -

CASE NO. 8:26-CV-00393-MWC-JDE
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

3d 1093, 1107 (N.D. Cal. 2025) (Section 502 claims generally "rise or fall with" CFAA claims because the necessary elements do not materially differ); *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012) (holding "that the phrase 'exceeds authorized access' in the CFAA does not extend to violations of use restrictions.").

Measured against these standards, the FAC's conclusory assertions that Byrne acted "without permission" are inadequately pled. *See* FAC ¶¶ 198–201. The FAC does not plead facts identifying what permission Byrne lacked, who revoked it or limited it, when such revocation occurred, what specific systems or data he was prohibited from accessing, or how any particular access exceeded the scope of his authority at CEO. *Id*. Nor does the FAC allege facts to support even an *inference* that Byrne circumvented technical restrictions, used another employee's credentials, accessed the systems after termination, or otherwise engaged in conduct that could plausibly suggest access "without permission," as opposed to his allowed access necessary to his daily job functions as CEO. *Id*. These conclusory factual allegations are again insufficient. *See Iqbal*, 556 U.S. at 678.

Additionally, the FAC is inconsistent regarding Byrne's permission, namely, by expressly alleging that Byrne "had access to large amounts of highly valuable confidential, proprietary and trade secret information" as part of his role as CEO. *See* FAC ¶ 30. This allegation is materially inconsistent with the FAC's conclusory contention that Byrne accessed the same information "without permission." FAC ¶¶ 198–201. On the one hand, the FAC expressly pleads that Byrne's position as CEO gave him unfettered access to a plethora of trade secrets as part of his normal job duties, in attempts to bolster its plausibility narrative regarding access, but fails to acknowledge how this cuts against Ameris's unauthorized access theory. *See* FAC ¶ 30. It further alleges that it was "pretty common knowledge" that Byrne used his personal computer to work from home. FAC ¶ 93. Against those specific allegations of authorized access, Ameris only offers the conclusory assertion that Byrne accessed these documents "without permission," despite being part of his role of head of the

division. FAC ¶¶ 198–201. Accepting both of these allegations as true presents a material inconsistency, and does not demonstrate a plausible claim for relief.

Because the FAC does not plead a plausible lack of permission and relies on inconsistent allegations, the Section 502 claim should be dismissed.

## V.    PLAINTIFF'S COUNTS II THROUGH IV SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND.

A court need not grant leave to amend if doing so would be an "exercise in futility" or "where the amended complaint would also be subject to dismissal." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998). Leave to amend is properly denied where the plaintiff has repeatedly failed to cure deficiencies previously identified. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009), *as amended* (Feb. 10, 2009) ("A district court . . . may in its discretion deny leave to amend due to . . . repeated failure to cure deficiencies by amendments previously allowed . . . ."). Here, another amendment would be futile for claims two through four because Ameris is unable to cure the defects in its FAC because it cannot in good-faith allege additional facts to remedy the identified pleading deficiencies. Ameris has now failed twice to allege facts sufficient to support misappropriation and a Section 502 claim because the facts don't exist.

## VI.    CONCLUSION

For these reasons, Byrne respectfully requests that the Court dismiss the second, third, and fourth claim in the FAC without leave to amend.

Dated:  August 13, 2026

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
MATTHEW T. SESSIONS


By:  */s/ Matthew T. Sessions*
MATTHEW T. SESSIONS
Attorneys for Defendant
PATRICK BYRNE

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that this brief complies with the 25-page limit set by court order dated May 31, 2026.

Dated:  August 13, 2026

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
MATTHEW T. SESSIONS


By:  */s/ Matthew T. Sessions*
MATTHEW T. SESSIONS
Attorneys for Defendant
PATRICK BYRNE

ALLEN MATKINS LECK
GAMBLE MALLORY &
NATSIS LLP
ATTORNEYS AT LAW

4901-0265-0565

- 24 -

CASE NO. 8:26-CV-00393-MWC-JDE
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT