Kirsten McCaw Grossman, Esq.
kgrossman@nfclegal.com
*Admitted Pro hac vice*
Moira Heiges-Goepfert, Esq. (SBN 326861)
mgoepfert@nfclegal.com
Stacy L. Fode, Esq. (SBN 199883)
sfode@nfclegal.com
NUKK-FREEMAN & CERRA, P.C.
550 West C Street, Suite 910
San Diego, California 92101
Telephone: 619.292.0515
Facsimile: 619.566.4741

*Attorneys for Plaintiff*
AMERIS BANK

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMERIS BANK, a Georgia corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PATRICK BYRNE, an individual,<br><br>Defendant. | Case No. 8:26-cv-00393-MWC (JDE)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**Date: September 25, 2026**<br>**Time: 1:30 p.m.**<br>**Courtroom: 6A**<br>**District Judge: Michelle Williams Court** |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iv

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. FACTUAL/PROCEDURAL BACKGROUND ..... 2

A. Byrne's Confidentiality Obligations with Ameris ..... 2

B. Defendant's Prior Lawsuit ..... 3

C. The Current Action ..... 4

III. LEGAL STANDARD ..... 4

IV. ARGUMENT ..... 5

A. The FAC Establishes Misappropriation Under Both the DTSA and CUTSA ..... 5

1. Ameris Plausibly Alleges Improper Acquisition Under the DTSA and CUTSA ..... 6

a. The Statutory Definition of Acquisition by "Improper Means" Controls ..... 6

b. Initial Authorized Access Does Not Disprove Misappropriation ..... 9

c. The FAC Alleges Intentional, Improper Acquisition for Unauthorized Purposes, Not Mere Possession in the Ordinary Course ..... 11

2. Ameris Plausibly Alleges Unauthorized Use and/or Disclosure Under the DTSA and CUTSA ..... 15

a. Ameris Need Not Establish "Concrete Instances" of Actual Use to Establish Unauthorized Use or Disclosure at the Pleading Stage ..... 15

b. Neither *JustMed* Nor *Gibson-Homans* Require Plaintiffs to Allege Use That Reduces the Value of the Trade Secret at the Pleading Stage ........ 17

c. Removal of Trade Secret Documents for Personal Litigation Constitutes Unauthorized Use ........ 18

d. Byrne's Use of Trade Secret Documents to Establish Another Business and Poach Employees Is an Unauthorized Use ........ 20

e. Byrne's Provision of Trade Secret Documents to Emert Establishes Unauthorized Disclosure ........ 21

3. Ameris Plausibly Alleges Violations of Section 502(c)(1), (2), (3) and (7) ........ 22

a. Authorized Access Does Not Negate Section 502 Liability ........ 23

b. Byrne's Actions Were Not "Reasonably Necessary to the Performance of [His] Work" as Required Under § 502(h) ........ 24

V. CONCLUSION ........ 25

# TABLE OF AUTHORITIES

**Cases**

*1-800 Remodel, Inc. v. Bodor*,
No. CV 18-472, 2018 WL 6340759 (C.D. Cal. Oct. 17, 2018)....................15

*1nteger, LLC v. Almeida*,
No. CV 25-7669, 2026 WL 974283 (C.D. Cal. Mar. 3, 2026)....................16

*Albarghouti v. LA Gateway Partners, LLC*,
119 Cal. App. 5th 870 (2026)....................10

*Albert's Organics, Inc. v. Holzman*,
445 F. Supp. 3d 463 (N.D. Cal. 2020)....................20, 22

*Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868 (N.D. Cal. 2018)....................5

*Am. Career Coll., Inc. v. Medina*,
No. CV 21-698, 2021 WL 5263858 (C.D. Cal. Sept. 28, 2021)....................22

*Applied Med. Distribution Corp. v. Jarrells*,
100 Cal. App. 5th 556 (Cal. Ct. App. 2024)....................5

*Arthur J. Gallagher & Co. v. Tarantino*,
498 F. Supp. 3d 1155 (N.D. Cal. 2020)....................11

*AUA Priv. Equity Partners LLC. v. Soto*,
No. 1:17-CV-8035, 2018 WL 1684339 (S.D.N.Y. Apr. 5, 2018)....................10

*Autodesk, Inc. v. ZWCAD Software Co.*,
No. 5:14-CV-01409, 2015 WL 2265479 (N.D. Cal. May 13, 2015)....................16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................4

*Beluca Ventures LLC v. Einride Aktiebolag*,
660 F. Supp. 3d 898 (N.D. Cal. 2023)....................21

*Biden v. Ziegler*,
737 F. Supp. 3d 958 (C.D. Cal. 2024)....................24

*Cafasso ex rel. United States v. General Dynamics C4 Systems, Inc.*,
637 F.3d 1047 (9th Cir. 2011)....................18

**Cases (cont)**

*Chrisman v. City of Los Angeles*,
155 Cal. App. 4th 29 (2007) .......... 23

*Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*,
710 F.3d 946 (9th Cir. 2013) .......... 9

*Coast Hematology-Oncology Associates Medical Group, Inc. v. Long Beach Memorial Medical Center*,
58 Cal. App. 5th 748 (Cal. Ct. App. 2020) .......... 21

*Colautti v. Franklin*,
439 U.S. 379 (1979) .......... 7

*Columbia Sportswear Co. v. Ferreira*,
809 F. Supp. 3d 1163 (D. Or. 2025) .......... 11

*Comet Techs. United States of Am. Inc. v. Beuerman*,
No. 18-CV-01441-LHK, 2018 WL 1990226 (N.D. Cal. Mar. 15, 2018) .......... 14

*Custom Packaging Supply, Inc. v. Phillips*,
No. 215CV04584, 2015 WL 8334793 (C.D. Cal. Dec. 7, 2015) .......... 24

*Dairy, LLC v. Milk Moovement, Inc.*,
No. 2:21-CV-02233, 2022 WL 1103822 (E.D. Cal. Apr. 13, 2022) .......... 17

*Davies v. Broadcom Corp.*,
130 F. Supp. 3d 1343 (C.D. Cal. 2015) .......... 7

*Early Warning Services, LLC v. Brandon O'Loughlin, P.A.Z.E. LLC*,
No. 24-7315, 2025 WL 1895313 (9th Cir. July 9, 2025) .......... 13

*Erhart v. Bofl Holding, Inc.*, 387 F. Supp. 3d 1046 (S.D. Cal. 2019) .......... 20, 23, 25

*eShares v. Talton*,
727 F. Supp. 3d 482 (S.D.N.Y. 2024) .......... 11, 14, 9

*Finton Constr., Inc. v. Bidna & Keys, APLC*, 238 Cal. App. 4th 200 (Cal. Ct. App. 2015) .......... 19

*Gibson-Homans Co. v. Wall-Tite, Inc.*,
No. 92 2750, 1992 WL 512411 (C.D. Cal. Oct. 27, 1992) .......... 17

*Implicit Conversions, Inc. v. Stine*,
No. 24-CV-03744, 2024 WL 4112335 (N.D. Cal. Sept. 6, 2024) .......... 13

**Cases (cont)**

*In re Hokulani Square, Inc.*,
460 B.R. 763 (B.A.P. 9th Cir. 2011), *aff'd,* 776 F.3d 1083 (9th Cir. 2015) ................7

*InteliClear, LLC v. ETC Global Holdings, Inc.*,
978 F.3d 653 (9th Cir. 2020) ..........................................................................5

*JustMed, Inc. v. Byce*,
600 F.3d 1118 (9th Cir. 2010) .................................................................17, 20

*KVC Grp., LLC v. Reliable Cap. Sols. LLC*,
No. 8:24-CV-01208, 2025 WL 2377038 (C.D. Cal. Aug. 8, 2025)...........................16

*LVRC Holdings LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009) ........................................................................24

*M S Int'l, Inc. v. Patel*,
No. SACV1800152, 2018 WL 11350041 (C.D. Cal. Nov. 26, 2018)........................25

*Masimo Corp. v. Apple Inc.*,
No. SACV2048, 2021 WL 925885 (C.D. Cal. Jan. 6, 2021) ......................................5

*Nicholls v. Tapis Corp.*,
No. EDCV 25-870 JGB (SPX), 2026 WL 1182195 (C.D. Cal. Apr. 23, 2026) ........13

*O'Day v. McDonnell Douglas Helicopter Co.*,
79 F.3d 756 (9th Cir. 1996) ............................................................................19

*Oei v. N. Star Cap. Acquisitions, LLC*,
486 F. Supp. 2d 1089 (C.D. Cal. 2006)...........................................................19

*Pardi v. Kaiser Found. Hosps.*,
389 F.3d 840 (9th Cir. 2004) ..........................................................................19

*Pellerin v. Honeywell Intern., Inc.*,
877 F. Supp. 2d 983 (S.D. Cal. 2012) ..............................................................14

*Peralta v. United States*,
475 F. Supp. 3d 1086 (C.D. Cal. 2020).............................................................25

*Pillsbury, Madison & Sutro v. Schectman*,
55 Cal. App. 4th 1279 (Cal. Ct. App. 1997)......................................................18

*Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*,
149 F.4th 1081 (9th Cir. 2025) .........................................................................5

**Cases (cont)**

*Rockwell Collins, Inc. v. Wallace*,
No. SACV1701369, 2017 WL 5502775 .......... 13, 10

*Rodriguez v. Google LLC*,
772 F. Supp. 3d 1093 (N.D. Cal. 2025) .......... 24

*S. California Inst. of L. v. TCS Educ. Sys.*,
No. CV 10-8026, 2011 WL 1296602 (C.D. Cal. Apr. 5, 2011) .......... 14

*Santa Clara Vally Water Dist. v. Eisenberg*,
117 Cal. App. 5th 714 (Cal. Ct. App. 2025) .......... 18

*Shrink Packaging Sys. Corp. v. Kist*,
No. 22-CV-04967, 2023 WL 5664733 (D.N.J. Sept. 1, 2023) .......... 11, 14

*Soo Park v. Thompson*,
851 F.3d 910 (9th Cir. Mar. 14, 2017) .......... 17

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) .......... 11

*Steffes v. Stepan Co.*,
144 F.3d 1070 (7th Cir. 1998) .......... 19

*Thrasio LLC v. Boosted Commerce Inc.*,
No. 21CV01337, 2022 WL 2284564 (C.D. Cal. Apr. 20, 2022) .......... 16

*UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*,
617 F. Supp. 2d 938 (N.D. Cal. 2007) .......... 5

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) .......... 23, 24

*United States v. Landof*,
591 F.2d 36 (9th Cir. 1978) .......... 21

*United States v. Nosal*,
676 F.3d 854 (9th Cir. 2012) .......... 24

*United States v. Olgado*,
2022 WL 2356996 (N.D. Cal. June 30, 2022), *aff'd,* No. 22-10305, 2024 WL 62951 (9th Cir. Jan. 5, 2024) .......... 6

**Cases (cont)**

*United States v. Sanmina Corp.*,
968 F.3d 1107 (9th Cir. 2020) .......... 21

*Upstrem, Inc. v. BHFO, Inc.*,
No. 20-CV-2160, 2021 WL 2038324 (S.D. Cal. May 21, 2021) .......... 16

*Usher v. City of Los Angeles*,
828 F.2d 556 (9th Cir. 1987) .......... 4

*Versata Software, Inc. v. Configit A/S*,
No. LACV2009019, 2021 WL 5536287 (C.D. Cal. Sept. 10, 2021) .......... 16

*VibrantCare Rehab., Inc. v. Deol*,
No. 2:20-CV-00791, 2021 WL 1614692 (E.D. Cal. Apr. 26, 2021) .......... 14

*Walker Prods., Inc. v. Geoffrey A. Wilsey et al.*,
No. 5:25-CV-02940, 2026 WL 2140035 (C.D. Cal. July 16, 2026) .......... 16, 17

*West v. Ronquillo-Morgan*,
526 F. Supp. 3d 737 (C.D. Cal. 2020) .......... 22, 24

*Zitan Techs., LLC v. Liang Yu*,
No. 318CV00395, 2019 WL 95779 (D. Nev. Jan. 3, 2019) .......... 14

**Statutes**

18 U.S.C. § 1030(a)(2) .......... 24

18 U.S.C. § 1833(b) .......... 15. 19

18 U.S.C. § 1836 .......... 1

18 U.S.C. § 1839 .......... 1, 5, 6, 7, 9, 10, 12, 15,

Cal. Civ. Code § 47 .......... 19

Cal. Civ. Code § 3426.1 .......... 1. 5, 6, 7, 9, 12, 10, 15

Cal. Pen. Code § 502 .......... 1, 2, 3. 22, 24, 25

**Rules**

Fed. R. Civ. P. 12(b)(6) .......... 4

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In his Motion to Dismiss ("Motion") the First Amended Complaint ("FAC") filed by Plaintiff Ameris Bank ("Ameris" or "Plaintiff"), Defendant Patrick Byrne ("Byrne" or "Defendant") presents the novel, unsupported argument that an employee can intentionally, knowingly, and systematically breach his confidentiality agreements and employer security policies to steal vast amounts of trade secret data for personal use, including for business development efforts and anticipated personal and collective litigation against his employer, without facing liability for misappropriation under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, 1839 ("DTSA") and California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 ("CUTSA"), or for data misuse under California Penal Code § 502 ("Section 502").

Both the DTSA and CUTSA provide two independent bases for trade secret misappropriation: (1) improper acquisition, defined as acquisition of trade secrets in "breach of a duty to maintain secrecy," and (2) unauthorized use or disclosure. Ameris has more than adequately alleged both in pleading that Byrne took, saved, and kept trade secret information in violation of his contractual confidentiality duties with the specific intent to use it for personal gain, and then actually used and disclosed such information (including to non-attorneys) without Ameris's authorization. Byrne's self-serving belief that such conduct is perfectly legitimate is irrelevant where, as here, the Court must interpret the alleged facts in the light most favorable to Ameris, and where Ameris has plausibly pled improper acquisition ***and*** unauthorized use and/or disclosure far beyond mere "access" or passive "possession."

Ameris has also plausibly alleged Section 502 violations by pleading detailed allegations regarding Byrne's taking, copying, or other use of confidential Ameris information "without permission" (and outside the scope of his employment) in clear violation of § 502(c)(1), (2), (3) and (7). Accordingly, Byrne's Motion to Dismiss should be denied in its entirety.

## II. FACTUAL/PROCEDURAL BACKGROUND

### A. Byrne's Confidentiality Obligations with Ameris

On or around December 10, 2021, Ameris hired Byrne as CEO of the Balboa Division. First Amended Complaint ("FAC") ¶ 21-24. As CEO, Byrne had access to large amounts of valuable confidential, proprietary, and trade secret information belonging to Ameris ("Confidential Information"), including customer and employee personally identifying information ("PII"), such as names, addresses, dates of birth and social security numbers, and detailed trade secret information regarding Ameris's customers and their loans. *Id.* ¶¶ 30-31. Byrne's access and use of such Confidential Information was, however, at all times strictly limited by his confidentiality agreements with Ameris as well as by Ameris policies designed to protect and secure Confidential Information, as required under federal and state laws regulating financial institutions. *Id.* ¶¶ 27-29, 32-63.

Byrne's agreements with Ameris included a Confidential Information Agreement ("CI Agreement") and Acceptable Use Policy. *Id.* ¶¶ 37-50. In these two agreements, Byrne promised that he would (a) not "duplicate, remove, transfer, disclose or utilize" Ameris Confidential Information and Trade Secrets, including by not using Ameris networks to "access[] personal email" and not "[s]ending or forwarding email[]s" in violation of Ameris's security policies; (b) not make any use of Confidential Information except as required by his job; (c) return to Ameris all devices and materials containing Confidential Information upon termination; and (d) use Ameris's computer systems, networks and e-mail only as authorized by Ameris in order to "maintain the secrecy and integrity of its confidential, proprietary, and trade secret information." *Id.*

Ameris never authorized Byrne to violate any of these policies and agreements. Byrne was never authorized to use his personal laptop for work, to send Ameris's Confidential Information to his personal email address, to copy and keep it on his personal devices and accounts, to use such information for personal benefit in litigation or business endeavors beyond the scope of his Ameris employment, or to personally retain Ameris information and documents for his own use after termination. *Id.* ¶¶ 56, 62, 94.

**B. Defendant's Prior Lawsuit**

After his employment was terminated, Byrne filed a lawsuit alleging, inter alia, wrongful termination against Ameris. *Id.* ¶¶ 64-65. During discovery, Ameris found that Byrne had sent hundreds of documents containing thousands of pages of highly sensitive Confidential Information, including attorney-client privileged communications and customer and employee PII to his personal e-mail account. *Id.* ¶¶ 67-81. Byrne sent these documents to himself to bolster his wrongful termination lawsuit, to support litigation on behalf of other Ameris employees, and to create an unauthorized archive of Ameris information for personal use, including in future business endeavors. *Id.* ¶¶ 70-86, 89-92, 99-101, 121-133. This violated Ameris's policies as none of the documents were taken with consent or within the scope of his employment. *Id.*

To support his prior lawsuit, Byrne produced several thousand pages of Ameris's Confidential Information, while withholding many more, including documents regarding Ameris's business, privileged communications and employee PII. *Id.* ¶¶ 85-86, 99-101. Byrne refused, however, to produce the emails he used to forward himself Ameris documents (and further refused to return his Ameris laptop) in order to conceal the means and extent to which he acquired Ameris's Confidential Information. *Id.* ¶¶ 8, 87-88. Byrne later testified to taking Ameris's Confidential Information for personal use, including to "prove [his] point" in litigation, while knowing this violated his confidentiality duties, ***and acknowledging that he lacked "specific permission" to do so***. *Id.* ¶¶ 89-92, 94-96, 99-103.

Byrne understood that he was required by policy to return Ameris's devices and Confidential Information upon termination. *Id.* ¶¶ 92-98, 104-20. Despite Ameris's many requests (at least ***10 requests*** from June 2024 through July 2026), Byrne has ***never returned his Ameris laptop or Ameris information***. *Id.* During his trial, Byrne testified that he "do[es]n't want [Ameris's] information" and is "absolutely" willing "to give it back." *Id.* ¶ 116. Yet, even after trial, Byrne has continuously and adamantly refused to return any of Ameris's information and property, evidencing continued use and control. *Id.* ¶¶ 117-20, 133.

During expert discovery, Ameris learned that Byrne had also disclosed documents containing Confidential Information to his assistant, Jacqueline Emert, which she later transmitted to his expert. *Id.* ¶¶ 121-123, 166. Based on Byrne's sworn testimony that he took Ameris documents to support litigation by "other" Ameris employees, which Byrne's counsel is now actively pursuing on behalf of Emert and others, Ameris also plausibly alleges that Byrne has shared Ameris's Confidential Information with Emert (and potentially others) to support related litigation against Ameris. *Id.* ¶¶ 100, 124-28. With Emert's assistance, Byrne is also using Ameris's Confidential Information to recruit former Ameris Loan Operations managers (including Maddie Lucas and Nic Olmedo) to join his new business. *Id.* ¶¶ 129-32.

### C. The Current Action

On Byrne's prior Motion to Dismiss the original Complaint, the Court entered an Order granting in part, and denying in part, the motion. ECF No. 33 ("Order"). The Court denied the motion as to Ameris's breach of contract claim relating to the CI Agreement and Acceptable Use Policy, and its claim for Byrne's laptop conversion. *Id.* at 14. The Court also found that Ameris plausibly alleged protected trade secrets, but dismissed its DTSA and CUTSA claims with leave to amend for failure to sufficiently allege misappropriation. *Id.* at 15-18. As to Ameris's Section 502 claim, the Court dismissed with leave to amend to identify the category of offense(s) alleged. *Id.* at 19.

## III. LEGAL STANDARD

A complaint survives Federal Rule of Civil Procedure 12(b)(6) if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing a Rule 12(b)(6) motion, "the court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

In trade secret cases, courts have recognized that "[m]isappropriation and misuse can rarely be proved by convincing direct evidence," making "circumstantial evidence []

particularly appropriate" ***especially at the pleading stage prior to discovery***. *UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*, 617 F. Supp. 2d 938, 944 (N.D. Cal. 2007) (quotation omitted). In such cases, courts "must consider the entire sequence of events in context, and not the individual allegations in isolation" to determine whether plaintiffs have plausibly alleged a claim. *Masimo Corp. v. Apple Inc.*, No. SACV2048, 2021 WL 925885, at *7 (C.D. Cal. Jan. 6, 2021).

## IV. ARGUMENT

### A. The FAC Establishes Misappropriation Under Both the DTSA and CUTSA

"Under both the DTSA and the CUTSA, 'misappropriation' means ***either*** (1) the [a]cquisition of a trade secret by a[] person who knows or has reason to know that the trade secret was acquired by improper means; ***or*** (2) the [d]isclosure or use of a trade secret of another without express or implied consent." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) (quoting 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b)) (internal quotations omitted). DTSA and CUTSA claims generally require: (1) plaintiff's possession of a trade secret; (2) misappropriation by defendant; and (3) that misappropriation caused or threatened damage to the plaintiff. *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1087 (9th Cir. 2025).[1]

In its prior Order, the Court held that Ameris sufficiently pled that the information allegedly misappropriated by Byrne constitutes trade secrets. Order at 15-17. The FAC also plausibly alleges both threatened and actual damages, which Byrne's Motion does not dispute. As to Byrne's DTSA and CUTSA claims, the only issue remaining is ***whether Ameris has plausibly alleged that Byrne either (1) knowingly acquired trade secrets by "improper means" or (2) disclosed or used Ameris's improperly acquired trade secrets without consent***. 18 U.S.C. § 1839(5)-(6); Cal. Civ. Code § 3426.1.

[1] CUTSA claims lack the third element (damages), *Applied Med. Distribution Corp. v. Jarrells,* 100 Cal. App. 5th 556, 570 (Cal. Ct. App. 2024), but courts often analyze DTSA and CUTSA claims together because the elements are "substantially similar." *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020).

### 1. Ameris Plausibly Alleges Improper Acquisition Under the DTSA and CUTSA

Both the DTSA and CUTSA state in clear, defined terms that ***the knowing acquisition of trade secrets in "breach of a duty to maintain secrecy" constitutes an unconditional and unqualified per se violation.*** *Id.* Nothing further is required, and the Court should not read in additional pleading requirements that effectively negate the Legislatures' intent expressed in the statutes' plain language.

Even if, however, the Court were to accept Byrne's invitation to import additional requirements of other unusual or illegitimate conduct (which Congress never imposed), the FAC far exceeds even that heightened standard. Specifically, the FAC alleges in detail how Byrne: knowingly and systematically breached his confidentiality obligations to download trade secrets to his personal accounts and devices with the specific intent to gain permanent control over such information for personal use in business and litigation (and to Ameris's detriment), including by: taking an increasing volume of Confidential Information in the days preceding his termination; disclosing and using the information for unauthorized litigation and business purposes; concealing the scope of his misappropriation, and repeatedly refusing to return such information despite his own testimony that he would do so. Byrne's conduct is qualitatively different from the routine, job-related access that courts have found insufficient. These intentional, affirmative acts of exfiltration, acquisition and control through illicit, improper means—as opposed to mere access or passive possession—constitute acquisition by "improper means" under the DTSA and CUTSA. 18 U.S.C. § 1839(5)-(6)(A); Cal. Civ. Code § 3426.1(a).

#### a. The Statutory Definition of Acquisition by "Improper Means" Controls

As Byrne acknowledges, the "acquisition" of trade secrets by "improper means" constitutes an independent DTSA and CUTSA violation based *solely on the means of acquisition*, without requiring *any showing* of unauthorized or otherwise improper "use." *Id.*; Mot. at 11 (misappropriation "may occur through ***improper acquisition <u>or</u> unauthorized use*** or disclosure") (emphasis added); *see also United States v. Olgado*, 2022

WL 2356996, at *9 (N.D. Cal. June 30, 2022), *aff'd,* No. 22-10305, 2024 WL 62951 (9th Cir. Jan. 5, 2024) (distinguishing misappropriation by improper "acquisition" under § 1839(5)(A) as "***a distinct definition of misappropriation" that does "not require use or disclosure . . . and instead merely involve[s] the means of acquiring the trade secrets.***").

Byrne doesn't dispute that he "acquired"[2] Ameris's trade secrets when he transmitted vast amounts of Confidential Information to his personal accounts and devices, refused to return such information upon termination, and continued to use such information for personal gain. Instead, Byrne argues that his acquisition was not "improper." Mot. at 12. But the Court need not (and should not) take Byrne's word for it, because the statutes explicitly define that term. Specifically, both the DTSA and CUTSA define acquisition by "improper" means as the acquisition of trade secrets by means of, inter alia, "…a breach of a duty to maintain secrecy." 18 USC § 1839(6); Cal. Civ. Code 3426.1(a). In other words, both Congress and the California Legislature have stated that ***when a person knowingly acquires a trade secret by virtue of breaching their "duty to maintain secrecy," they have engaged in actionable misappropriation,*** regardless of their subjective intent or later use of such information. *Id.* The statutes are unambiguous, and they cannot be read to hold that an individual who "acquires" trade secrets by means of breaching their "duty to maintain [their] secrecy" is *not* liable for misappropriation, especially at the pleading stage. As binding precedent makes clear, "[w]here a term is defined within the statute, that definition controls its interpretation." *In re Hokulani Square, Inc.*, 460 B.R. 763, 770 (B.A.P. 9th Cir. 2011), *aff'd,* 776 F.3d 1083 (9th Cir. 2015) (citing *Colautti v. Franklin*, 439 U.S. 379, 392 (1979)).[3]

Ameris's FAC described numerous ways in which Byrne knowingly acquired its trade secrets by means of breaching his "duty to maintain their secrecy," including under

---

[2] Black's Law Dictionary defines "acquisition" as the "gaining of possession or control over something," *e.g.*, the "acquisition of the target company's assets." ACQUISITION, Black's Law Dictionary (12th ed. 2024).

[3] *See also Davies v. Broadcom Corp.*, 130 F. Supp. 3d 1343, 1350 (C.D. Cal. 2015) (same).

the CI Agreement and Acceptable Use Policy. Specifically, Ameris alleges that both agreements imposed on Byrne a "duty to maintain [the] secrecy" of confidential information, including trade secrets. FAC ¶¶ 37-56, 156, 160-62, 164, 166, 183-85. For example, the CI Agreement obligated Byrne to maintain secrecy by, inter alia, strictly prohibiting him from "duplicat[ing], remov[ing], transfer[ring], disclos[ing] or utilize[ing]" Confidential Information (including trade secrets), and further requiring him to "hold all such Confidential Information in strict confidence." *Id.* ¶¶ 37-41. The Acceptable Use Policy likewise stated: "It is your duty under law to safeguard this [Confidential] information," and "protect its privacy," including by using "extreme caution" when emailing, as "all email messages sent outside of Ameris [] become the property of the receiver." *Id.* ¶¶ 43-45. The Acceptable Use Policy specifically prohibited Byrne from, inter alia, (1) sending private customer information by unencrypted email; (2) using Ameris networks or devices to access personal email accounts; (3) connecting non-approved personal laptops to the Ameris network; (4) using Ameris equipment, resources or email for unauthorized purposes; (5) copying Ameris files; and (6) sending email communications to third party systems with the intent of circumnavigating Ameris policies. *Id.* ¶¶ 46-48, 162, 185.

The FAC plausibly alleges that Byrne breached his confidentiality duties, and acquired Ameris's trade secrets by "improper means," when he obtained them through each of the prohibited acts above (e.g., using Ameris networks to send Confidential Information to his personal email, and copying and downloading such information on his personal laptop without authorization, knowing this violated Ameris policies). *Id.* ¶¶ 91-100, 160-62, 183-85. Byrne further "improperly acquired" Ameris's trade secrets when he obtained permanent possession over them by failing to immediately report his own information security breaches, and to return Ameris's information, in further violation of his confidentiality duties. *Id.* ¶¶ 48, 92, 98, 108, 104-20, 162, 185.

In its Order, the Court found Ameris's breach of contract claims to be well-pled as to Byrne's breach of his confidentiality obligations, which Byrne's Motion does not

dispute. Order at 14 (finding Byrne's alleged breaches to be "material" because "[u]nauthorized, personal use of confidential information goes to the root of a confidentiality agreement"). The only question is whether Ameris has plausibly alleged that Byrne "acquired" its trade secrets in breach of his duty to maintain confidentiality. Given Ameris's allegations of Byrne's unauthorized emailing, downloading, saving and retention of trade secrets in violation of his confidentiality obligations, there can be no dispute that Ameris has done so. Because Ameris has adequately alleged improper acquisition as defined under 18 U.S.C. § 1839(5)-(6) and Cal. Civ. Code § 3426.1(b), its DTSA and CUTSA claims are well-pled and the Court's analysis should end there.[4]

**b. Initial Authorized Access Does Not Disprove Misappropriation**

Byrne claims that an employee's job-related *access* to trade secret information gives him an unlimited license to breach his confidentiality duties by exfiltrating, copying, saving and transmitting that information for unauthorized personal gain, in direct contradiction of the DTSA, CUTSA and interpreting authority. Mot. at 11. Byrne's argument conflates two distinct concepts: an employee' initial authorized "access" to information for the limited purpose of performing required work, and the "acquisition" of separate, personally controlled copies of that information through "improper means" in violation of a duty to maintain secrecy. Byrne's "access" argument fails for several reasons.

First, to accept Byrne's argument, the Court would have to disregard the statutes' definition of "misappropriation" to include acquisition in breach of a duty of confidentiality. It is a "well-established" rule of statutory construction that "courts should not interpret statutes in a way that renders a[ny] provision superfluous." *See Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 966 (9th Cir. 2013) (citing Supreme Court

---

[4] Byrne relies on *eShares, Inc. v. Talton*, an out-of-circuit, *New York* district court case, but this case simply notes, *in dicta*, that merely "accessing" confidential information in potential "violation of a company directive" may be insufficient. 727 F. Supp. 3d 482, 493 (S.D.N.Y. 2024). *Eshares* did not hold that knowingly "acquiring" such information via a clear "breach of duty to maintain secrecy" is insufficient to state a DTSA claim (nor can it be read to contradict the DTSA's clear definition of "improper means"). *Id.*

precedent); *see also Albarghouti v. LA Gateway Partners, LLC*, 119 Cal. App. 5th 870, 890 (2026), *review denied* (June 24, 2026) (substantively same). Here, Byrne points to no language in the DTSA or CUTSA suggesting that employees with "access" to trade secrets are immunized from liability; to the contrary, the statutory definition of "improper means" expressly includes acquisition by "breach . . . of a duty to maintain secrecy." 18 U.S.C. § 1839(6)(A); Cal. Civ. Code § 3426.1(a)-(b). This language necessarily applies to executives and other insiders entrusted with "access" to confidential information who are subject to "secrecy" obligations. If initial access defeated improper acquisition as a matter of law, the statutory reference to acquisition by "breach of a duty to maintain secrecy" would be meaningless, because the only persons who owe such duties are those who have been entrusted with access to trade secrets in the first place.

Second, multiple courts have expressly rejected Byrne's argument, holding that ***an employee's initial "access" to trade secrets does not immunize them from liability*** for later "improper acquisition." In *United States v. Olgado*, No. 17-CR-00603, 2022 WL 2356996, at *8-9 (N.D. Cal. June 30, 2022), *aff'd*, No. 22-10305, 2024 WL 62951 (9th Cir. Jan. 5, 2024), the court found that an employee's authorized access *did not* insulate him from liability for acquisition in violation of the employer's confidentiality policies, and specifically distinguished cases where, unlike here, there was "no indication" that the employee had "evaded any restrictions" on downloading the information at issue. *See also, AUA Priv. Equity Partners LLC. v. Soto*, No. 1:17-CV-8035, 2018 WL 1684339, at *5-7 (S.D.N.Y. Apr. 5, 2018) (rejecting defense based on authorized "access" after extensively surveying case law, finding that limited "access" did not give employees free license to personally "acquire" trade secrets, and further finding plausible allegations of acquisition by "improper means," *i.e.*, "breach of [a] duty to maintain secrecy" where employee uploaded trade secrets "to her personal cloud-based storage" in violation of her confidentiality agreements).[5]

[5] *See also Rockwell Collins, Inc. v. Wallace*, 2017 WL 5502775, at *1-3 (C.D. Cal. Nov.

Third, none of Byrne's cited cases support his extreme position that initial access sanctions later improper acquisition, which would effectively immunize all forms of misappropriation except those involving hacking or other forms of trespass. To the contrary, *eShares* supports Ameris's position: there, the court *upheld plaintiff's DTSA claim* based on allegations that defendant downloaded proprietary documents in breach of his confidentiality obligations "before his systems access was removed" (thus, ***finding plausible DTSA claims despite defendant's initial authorized "access"***). 727 F. Supp. 3d 482, 488 (S.D.N.Y. 2024). Likewise, in *Columbia Sportswear Co. v. Ferreira*, 809 F. Supp. 3d 1163, 1179-80 (D. Or. 2025), the court *denied summary judgment* where an executive who *previously had access* to proprietary information improperly downloaded files in violation of his confidentiality obligations. Here, Ameris's improper acquisition claim is not based on Byrne's authorized access to trade secret information in the ordinary course of employment; rather, it is arises from his *abuse of that access* in acquiring copies of such information for personal use *in breach of his duty to maintain secrecy*.

**c. The FAC Alleges Intentional, Improper Acquisition for Unauthorized Purposes, Not Mere Possession in the Ordinary Course**

Byrne's acquisition of Ameris trade secrets in violation his duty to maintain secrecy constitutes "improper means" as defined under the plain language of the DTSA and

---

10, 2017) (denying dismissal of DTSA and CUTSA claims where employee downloaded thousands of documents to a personal computer in violation of company policies, even though policies permitted limited use of personal computers); *Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155 (N.D. Cal. 2020) (same, where employees emailed confidential documents to their personal emails, and rejecting defendant's offer of an innocent explanation based on their authorized access) (citing *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[i]f there are two alternative explanations," plaintiff's complaint "may be dismissed only when defendant's plausible alternative explanation is so convincing" so as to make plaintiff's explanation "implausible"); *Shrink Packaging Sys. Corp. v. Kist*, No. 22-CV-04967, 2023 WL 5664733, at *7 (D.N.J. Sept. 1, 2023) (same, fact that defendant was "privy to" trade secret information was "inconsequential" where he "exceeded his authority" by sending trade secrets "to his personal email" in violation of his confidentiality agreements, i.e., by "improper means").

CUTSA, so no further showing is required. 18 U.S.C. § 1839(5)-(6) and Cal. Civ. Code § 3426.1(b). Even if the Court were to require additional allegations of other "unusual circumstances" or "improper or illegitimate purpose," the FAC pleads such allegations. This is not a case where Byrne innocently retained a few documents on a device used in the scope of employment. Ameris alleges a knowing, systematic, course of misconduct in taking, copying, using, disclosing and refusing to return thousands of pages of trade secrets in breach of Ameris policies. FAC ¶¶ 37-56, 68-70, 82, 89-91, 99-103, 159-66, 181-89.

The FAC further alleges facts establishing that Byrne's acquisition was ***intentional and improper, not innocent or authorized activity in the ordinary course of business***. Byrne admitted that he took documents because "it was pretty clear" he was going to use them in litigation against Ameris, "for the benefit of [himself]" and for the benefit of "150 other people" he believed had claims against Ameris. *Id.* ¶¶ 99-100. Ameris also alleges that Byrne increased the volume of his transfers in the final days of his employment as he rushed to gather documents for later use in litigation and personal business, and further refused to return his Ameris laptop (falsely claiming he couldn't recall what happened to it) in order to delay Ameris's discovery of his misconduct. *Id.* ¶¶ 8, 82, 105-08. Ameris further alleges that, during his prior litigation, Byrne produced only a subset of the misappropriated documents, secretly withholding other Ameris documents containing customer loan information and PII (which he kept for personal business use), and failed to timely produce the forwarding emails showing *how* he obtained such documents. *Id.* ¶¶ 85-89. The FAC further alleges that Byrne intentionally and wrongfully disclosed Ameris's Confidential Information to Emert (for use in his litigation, her anticipated litigation, in recruiting former Ameris employees, and otherwise growing his new business). *Id.* ¶¶ 122-133. These facts plausibly allege "unusual" exfiltration, concealment, and control for unauthorized, "improper purposes" outside the ordinary course of business.

Finally, Byrne's ***continued refusal*** to return Ameris's Confidential Information reinforces the plausibility of Ameris's misappropriation allegations. Byrne testified at trial that he did not need Ameris's confidential information and was ***"absolutely"*** willing to

return or destroy it. *Id.* ¶ 116. However, before and after the trial, Byrne has repeatedly refused Ameris's demands to return its documents and enter into a reasonable forensic protocol. *Id.* ¶¶ 104-20, 133. Byrne should not be permitted to use his "absolute" willingness to return misappropriated information as a shield supporting the absence of any misconduct in his prior litigation, while simultaneously arguing that his *refusal to return* such information has no legal significance here. Byrne's conduct plausibly supports the inference that he continues to exercise unauthorized dominion over Ameris's trade secrets and intends to continue to use and/or disclose them. These allegations create a reasonable inference of "improper purpose" that is sufficient at the pleading stage.

Under well-established precedent, both within and beyond the Ninth Circuit, this type of acquisition of information, under circumstances suggesting an improper or unauthorized purpose, is more than sufficient to state a claim, even absent allegations of hacking or immediate competitive disclosure or use. For example, in *Early Warning Services, LLC v. Brandon O'Loughlin, P.A.Z.E. LLC*, the Ninth Circuit affirmed a preliminary injunction on a showing that a former employee emailed trade secrets to his personal Gmail account. No. 24-7315, 2025 WL 1895313, at *1-2 (9th Cir. July 9, 2025). In *Rockwell Collins*, the Central District refused to dismiss misappropriation claims where the employer alleged unauthorized downloads to a personal computer and refusal to return trade secrets in violation of company policy, without any additional allegations of disclosure or misuse. No. SACV1701369, 2017 WL 5502775, at *2-3. In *Implicit Conversions, Inc. v. Stine*, No. 24-CV-03744, 2024 WL 4112335, at *9 (N.D. Cal. Sept. 6, 2024), the court granted a preliminary injunction where a former executive downloaded proprietary materials without authorization in connection with his termination and refused to return such information in violation of his confidentiality agreements, finding such allegations "more than sufficient" to establish misappropriation.[6]

---

[6] *See also Nicholls v. Tapis Corp.,* No. EDCV 25-870 JGB (SPX), 2026 WL 1182195, at *5 (C.D. Cal. Apr. 23, 2026) (finding plausible improper acquisition claim based on defendant's unusual pattern of downloading confidential information to personal devices

Byrne's Motion relies heavily on *eShares*, but that case, too, supports Ameris's position. Specifically, *eShares* confirms that acquisition by "improper means" constitutes an independent violation under the DTSA, including acquisition via a "breach of a duty to maintain secrecy." 727 F. Supp. 3d at 493. It further holds that the acquisition of trade secrets in violation of company policies for an "improper or illegitimate purpose" supports plausible DTSA claims. *Id.* The *eShares* court ultimately *denied a motion to dismiss*, where, as here, the defendant downloaded confidential information shortly before termination, in violation of the employer's data policy, which forbid employees from "sending or transferring restricted data outside" the company. *Id.* at 494-95.[7]

---

prior to departure, without specific allegations of competitive misuse); *VibrantCare Rehab., Inc. v. Deol,* No. 2:20-CV-00791, 2021 WL 1614692, at *4 (E.D. Cal. Apr. 26, 2021) (same, where defendant emailed herself trade secrets in violation of confidentiality duties; only allegation relating to competitive use was that defendant sought to solicit other workers to join her future employer, which Ameris also alleges here, FAC ¶ 131); *Zitan Techs., LLC v. Liang Yu*, No. 318CV00395, 2019 WL 95779, at *3-4 (D. Nev. Jan. 3, 2019) (finding likelihood of succeed on DTSA claim based on defendant's breach of confidentiality in acquiring trade secrets by downloading them from plaintiff's servers and later destroying or discarding his personal laptop's hard drive); *Comet Techs. United States of Am. Inc. v. Beuerman*, No. 18-CV-01441-LHK, 2018 WL 1990226, at *1, *4 (N.D. Cal. Mar. 15, 2018) (same, where "[d]efendant knew or had reason to know that downloading and removing" trade secrets breached his confidentiality duties; only allegation of competitive use were facts suggesting that defendant was interested in recruiting former employees); *1-800 Remodel, Inc. v. Bodor*, No. CV 18-472, 2018 WL 6340759, at *5–6 (C.D. Cal. Oct. 17, 2018) (finding plausible improper acquisition claim where employee forwarded proprietary information to her personal email; allegations supporting a breach of duty to maintain secrecy were sufficient); *Shrink Packaging*, 2023 WL 5664733, at *3 (same); *AUA Private Equity*, 2018 WL 1684339, at *3, *5-7 (same).

[7] Byrne's remaining authorities are distinguishable because they involve allegations based on mere possession of information obtained in the ordinary course, without evidence of a knowing breach of confidentiality and intent to use for personal gain. *See Pellerin v. Honeywell Intern., Inc.,* 877 F. Supp. 2d 983, 989 (S.D. Cal. 2012) ("mere possession of trade secrets" is insufficient where employer failed to allege "any facts" showing acquisition, use or disclosure); *S. California Inst. of L. v. TCS Educ. Sys.,* No. CV 10-8026, 2011 WL 1296602, at *8 (C.D. Cal. Apr. 5, 2011) (dismissing CUTSA claim based on

Finally, the Court should decline Byrne's invitation to discredit Ameris's well-pled allegations based on his self-serving and legally unsupported view that self-help removal of trade secret documents for use in litigation and personal business ventures is perfectly legitimate. Mot. at 14. As described in detail *infra*, the FAC does not allege a narrow, confidential disclosure of selected trade secrets to counsel, or via sealed court filing or court order sufficient to invoke statutory whistleblower protections pursuant to 18 U.S.C. § 1833(b) or California's litigation privilege (which does not apply to DTSA, and in any event, only protects litigation-related *communications* from derivative tort claims like defamation, without excusing the underlying misconduct). Rather, the FAC alleges that Byrne selectively disclosed Ameris trade secrets to non-attorneys, and otherwise used Ameris trade secrets for personal business reasons unrelated to litigation (which actions cannot conceivably be protected by any immunity or litigation privilege). FAC ¶¶ 68-90, 99-103, 109-20, 121-33. Because the FAC alleges knowing and intentional acquisition by improper means, for unauthorized purposes, in violation of contractual secrecy obligations, it more than adequately pleads misappropriation under both the DTSA and CUTSA.

**2. Ameris Plausibly Alleges Unauthorized Use and/or Disclosure Under the DTSA and CUTSA**

Because Ameris has adequately pled improper ***acquisition*** of trade secrets, it need not also allege unauthorized use and/or disclosure to state a claim for misappropriation under DTSA and CUTSA. *See, e.g.*, 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b); *see also Alta Devices,* 343 F. Supp.3dat 877. Although DTSA and CUTSA do not require additional evidence beyond improper acquisition, the FAC plausibly alleges unauthorized use and/or disclosure.

**a. Ameris Need Not Establish "Concrete Instances" of Actual Use to Establish Unauthorized Use or Disclosure at the Pleading Stage**

---

unauthorized use or disclosure where plaintiff only alleged a conclusory "inten[tion] to disclose").

Byrne insists that in order to state a claim for misappropriation via unauthorized use, Ameris must identify a "concrete instance in which Byrne actually used an alleged trade secret to Ameris's detriment" – ***at the pleading stage***. Mot. 15. Not so. Neither of the cases Byrne cites for this point involved a pleading-stage motion. To the contrary, California courts – including in the Central District – evaluating motions at the pleadings stage have repeatedly held that detailed factual allegations regarding use are ***not required***, as such information is generally within the ***exclusive knowledge of the defendant*** prior to discovery. *See, e.g.*, *Integer, LLC v. Almeida*, No. CV 25-7669, 2026 WL 974283, at *4 (C.D. Cal. Mar. 3, 2026) (denying motion to dismiss where plaintiff sufficiently alleged that defendant "may have had access to, acquired, and used" plaintiff's trade secrets); *KVC Grp., LLC v. Reliable Cap. Sols. LLC*, No. 8:24-CV-01208, 2025 WL 2377038, at *5 (C.D. Cal. Aug. 8, 2025) (same, noting that "there is no requirement that [plaintiff] plead exactly how Defendants improperly obtained [or used] the alleged trade secret"); *Autodesk, Inc. v. ZWCAD Software Co.*, No. 5:14-CV-01409, 2015 WL 2265479, at *6 (N.D. Cal. May 13, 2015) (same, reasoning that "it would be unreasonable to require a plaintiff to demonstrate the precise ways in which Defendants may have used [their] trade secrets" prior to discovery); *Thrasio LLC v. Boosted Commerce Inc.*, No. 21CV01337, 2022 WL 2284564, at *3 (C.D. Cal. Apr. 20, 2022) (circumstantial evidence is sufficient; plaintiff is not required to plead exactly how defendant improperly used the trade secret); *Upstrem, Inc. v. BHFO, Inc.*, No. 20-CV-2160, 2021 WL 2038324, at *6 (S.D. Cal. May 21, 2021) (same); *Versata Software, Inc. v. Configit A/S*, No. LACV2009019, 2021 WL 5536287, at *10 (C.D. Cal. Sept. 10, 2021) (allegations that defendant had access to the alleged trade secret and used it for defendant's benefit sufficient to establish unauthorized use under the DTSA).

Finally, contrary to Byrne's argument that allegations pled on information and belief should be disregarded, Mot. at 16, numerous California district courts have held that facts pled on information and belief are sufficient, particularly where the facts are within the possession and control of the defendant at the pleadings stage. *See, e.g.*, *Walker Prods., Inc. v. Geoffrey A. Wilsey et al.*, No. 5:25-CV-02940, 2026 WL 2140035, at *8 (C.D. Cal.

July 16, 2026) (pleading facts upon information and belief is appropriate "where the facts are peculiarly within the possession of the defendant or where the belief is based on factual information that makes the inference of culpability plausible") (citing *Soo Park v. Thompson*, 851 F.3d 910 (9th Cir. Mar. 14, 2017)); *Dairy, LLC v. Milk Moovement, Inc.*, No. 2:21-CV-02233, 2022 WL 1103822, at *4 (E.D. Cal. Apr. 13, 2022) (same).

**b. Neither *JustMed* Nor *Gibson-Homans* Require Plaintiffs to Allege Use That Reduces the Value of the Trade Secret at the Pleading Stage**

Byrne further argues that Ameris must plead facts establishing "some type of use that reduces the value of the trade secret to the trade secret owner." Mot. 14 (citing *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1130 (9th Cir. 2010) and *Gibson-Homans Co. v. Wall-Tite, Inc.*, No. 92 2750, 1992 WL 512411, at *4 (C.D. Cal. Oct. 27, 1992)). However, neither case imposes such a burden at the ***pleading*** stage.

*JustMed* involved a ***post-trial*** appeal of a case asserting claims under the Copyright Act and the Idaho Trade Secrets Act, where the trial court held that defendant had not improperly disclosed the trade secret at issue (a computer program code) by sharing a portion of it with the Copyright Office. *Id.* at 1128, 1130. The Ninth Circuit did not hold that a plaintiff asserting trade secret claims must demonstrate precisely how the defendant reduced the value of the trade secret at the pleading stage. Likewise, *Gibson-Homans Co. v. Wall-Tite, Inc.* involved the court's evaluation of a ***summary judgment*** motion. 1992 WL 512411, at *4. As in *JustMed*, the court's comments in *Gibson-Homans* were made with the benefit of discovery. Byrne's cherry-picked quotations regarding post-discovery evidence of trade secret use for commercial benefit, Mot. 14-15, do not establish Ameris's pleading standard. *See, e.g.*, *Walker Prods.,*2026 WL 2140035, at *8.[8]

---

[8] Finally, to the extent Ameris is required to prove "use" that confers an unfair trade advantage or that harms Ameris's commercial interests at a *later stage of litigation*, Ameris has alleged unfair use of Ameris's trade secrets (and harm to Ameris's interests) through Byrne's conduct in poaching former Ameris loan officers and building a related business, which will be further developed with discovery.

**c. Removal of Trade Secret Documents for Personal Litigation Constitutes Unauthorized Use**

Byrne testified under oath that he sent Ameris documents to his personal e-mail for use in his lawsuit. FAC ¶ 99. In his Motion, Byrne argues that taking trade secret documents for use in litigation is protected by DTSA whistleblower immunity or the litigation privilege. Mot. 14. However, "self-help" behavior in systematically removing thousands of pages of trade secrets is not protected activity. It is ***textbook*** unauthorized use.

California courts have long condemned "self-help evidence gathering by employees for use in contemplated litigation against their soon-to-be former employers." *Pillsbury, Madison & Sutro v. Schectman*, 55 Cal. App. 4th 1279, 1287 (Cal. Ct. App. 1997). In *Pillsbury*, the court found that a former employee's behavior in acquiring confidential personnel documents without permission "disregard[s] the very nature of modern discovery and distort[s] the meaning of . . . trade secrets, conversion, and privilege." *Id.* at 1288. The court further held that "[a]ny litigant or potential litigant who converts, interdicts or otherwise purloins documents in the pursuit of litigation outside the legal process does so without the general protections afforded by the laws of discovery and risks being found to have violated protected rights" and held that the documents at issue should be returned. *Id.* at 1289; *see also Santa Clara Vally Water Dist. v. Eisenberg*, 117 Cal. App. 5th 714, 740-41 (Cal. Ct. App. 2025) (following *Pillsbury* and ordering the return of documents when defendants "engaged in self-help to possess documents to which they had no claim.").

The Ninth Circuit has also rejected the notion that litigation self-help absolves liability for breaches of confidentiality. The same reasoning applies to misappropriation. In *Cafasso ex rel. United States v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1061-62 (9th Cir. 2011), an employee copied thousands of pages of company information, believing she needed it for a False Claims Act case. The Ninth Circuit affirmed judgment enforcing the confidentiality agreement, and held that any limited public-policy exception would not protect "vast and indiscriminate appropriation." *Id.* The court explained that a claimant invoking whistleblower protection would have to justify why removal of

particular documents was reasonably necessary to pursue the claim, and that litigation does not justify the "wholesale stripping" of an employer's confidential documents.

In *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763-64 (9th Cir. 1996), an employee copied confidential personnel documents located in his supervisor's office and shared them with a co-worker, arguing that he was preserving evidence of age discrimination. The Ninth Circuit held this was not protected activity, recognizing the employer's strong interest in preventing employees from copying and sharing confidential records, and stating that the asserted interest in preserving evidence did not justify the manner and breadth of the conduct. Both *Cafasso* and *O'Day* are binding Ninth Circuit authority rejecting Byrne's proposition that his anticipated employment litigation authorized self-help acquisition and dissemination of confidential employer records.

Byrne cites to *Finton Constr., Inc. v. Bidna & Keys, APLC*, 238 Cal. App. 4th 200 (Cal. Ct. App. 2015) for the proposition that transmitting stolen documents to attorneys for litigation is protected by the litigation privilege under California Civil Code § 47. However, this state-law privilege *does not apply to federal claims* (including the DTSA). *See, e.g.*, *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 851 (9th Cir. 2004) ("wrongful" conduct under federal law "cannot be immunized by state law" (citing with approval *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998) (state litigation privilege "cannot defeat a federal cause of action")); *Oei v. N. Star Cap. Acquisitions, LLC*, 486 F. Supp. 2d 1089, 1098 (C.D. Cal. 2006) (privilege "does not apply to federal" claims). Moreover, *Finton* involved the liability of ***attorneys*** who received documents from their clients, not the original takers. *Id.* at 212. The court's holding that litigation-related transmission does not constitute ***misappropriation by the receiving attorneys*** does not support Byrne's self-help defense because the privilege only protects litigation-based ***communications***; it does not retroactively shield parties from liability for prior wrongful acts.

Byrne's related appeal to the DTSA's narrow carve-out for whistleblower immunity under 18 U.S.C. § 1833(b)(2) is also ill-founded. Mot. 17. That section states that "[a]n individual who files a lawsuit for retaliation by an employer for reporting a suspected

violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual -- (A) files any document containing the trade secret under seal; and (B) does not disclose the trade secret, except pursuant to court order." Byrne cannot satisfy either requirement. First, Byrne did not file each trade secret document under seal (but instead produced only *a portion* of the misappropriated documents, without even labeling them "Confidential"). FAC ¶¶ 85-86. Second, apart from his attorneys, Byrne disclosed trade secrets to—at a minimum—Emert, without a court order. *Id.* ¶¶ 121-123. More fundamentally, Byrne's litigation privilege and whistleblower arguments raise questions of fact that cannot be resolved against Ameris at the pleading stage. *See Erhart v. Bofl Holding, Inc.*, 387 F. Supp. 3d 1046, 1059 (S.D. Cal. 2019) (holding a pleadings motion is "not the appropriate venue to resolve" factual disputes over alleged whistleblower protections).

**d. Byrne's Use of Trade Secret Documents to Establish Another Business and Poach Employees Is an Unauthorized Use**

Byrne's argument that Ameris must "allege that Byrne used the trade secrets to engage in some form of competing venture that negatively impacted Ameris's business" at the pleading stage is likewise unsupported and unfounded. Mot. at 16. Byrne cites no authority for this proposition, but even if he had, Ameris has alleged that Byrne utilized the trade secrets to poach two identified employees and establish another business enterprise. FAC ¶¶ 129-132. That is more than sufficient to establish unauthorized use at the pleadings stage.[9] *See, e.g., Albert's Organics, Inc. v. Holzman*, 445 F. Supp. 3d 463, 474 (N.D. Cal. 2020) (allegations that defendant stole the names of key employees and information regarding their annual sales contributions were sufficient to plead misappropriation). California federal courts have also held that compilations of employee information qualify as a trade secret. *See, e.g., ReadyLink Healthcare v. Cotton*, 126 Cal. App. 4th 1006, 1018

[9] Byrne again cites to *JustMed*, but that case does not address the sufficiency of allegations at the pleading stage. 600 F.3d at 1130.

(Cal. Ct. App. 2005) (databases with compilations of employee compensation, employment preferences, contact information, employee application and tests, and benefit information were trade secret information); *Coast Hematology-Oncology Associates Medical Group, Inc. v. Long Beach Memorial Medical Center*, 58 Cal. App. 5th 748, 763 (Cal. Ct. App. 2020) (database with productivity data for employees qualifies for trade secret protection).

**e. Byrne's Provision of Trade Secret Documents to Emert Establishes Unauthorized Disclosure**

As set forth in the FAC, Byrne provided at least some of the documents containing Ameris trade secrets to Emert. FAC ¶¶ 121-123. Byrne claims that this conduct is covered by a "litigation privilege" because Emert purportedly provided it to Byrne's expert. Mot. at 17. But that privilege doesn't apply at all under DTSA, and in any event, Byrne provides no legal support for the proposition that trade secret documents provided to a ***non-attorney, non-party*** are covered by the privilege. Byrne also claims, without evidence, that Emert is a third-party "agent" to whom his attorney-client communications extend. *Id.* (citing *United States v. Sanmina Corp.*, 968 F.3d 1107 (9th Cir. 2020)). However, *Sanmina* is a tax case about the attorney-client privilege that has nothing to do with trade secrets, *id.* at 1116, and in any event, Byrne bears the ultimate burden of establishing an agency relationship, *United States v. Landof*, 591 F.2d 36, 39 (9th Cir. 1978), which he cannot do at this stage.

Based on the FAC's well-pled allegations, ***Byrne had no need or justification to disclose Ameris's Confidential Information to Emert in his prior litigation.*** She is not an attorney, and does not work for Byrne's attorneys. Byrne provides no reason why he was allowed to give her documents containing Ameris's trade secrets based on the FAC. Mot. at 9. Therefore, Ameris's FAC pleads sufficient facts to support a claim for misappropriation based on unauthorized disclosure, particularly where, as here, the FAC further alleges that Byrne made additional unauthorized disclosures to Emert in connection with her own anticipated litigation and in assisting Byrne to recruit former Ameris employees and otherwise develop his new business. FAC ¶¶ 124-28. *See, e.g.*, *Beluca Ventures LLC v. Einride Aktiebolag*, 660 F. Supp. 3d 898, 904, 910-11 (N.D. Cal. 2023)

(sharing of a confidential report containing market position and growth opportunities to colleagues at another company was unauthorized disclosure); *Holzman*, 445 F. Supp. 3d at 473-74 (inclusion of trade secret information in correspondence to customers established unauthorized disclosure).

**3. Ameris Plausibly Alleges Violations of Section 502(c)(1), (2), (3) and (7)**

In its Order, the Court granted Ameris leave to amend to identify the specific statutory bases for its § 502 claim from among the fourteen enumerated categories of offenses listed thereunder. Order at 19. Section 502 provides that:

> (c) Except as provided in subdivision (h), any person who commits any of the following acts is guilty of a public offense: (1) *Knowingly accesses and without permission … uses any data,* computer, computer system, or computer network in order to … *wrongfully control or obtain ... data.* (2) *Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network….* (3) *Knowingly and without permission uses or causes to be used computer services*. . . . (7) *Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.* (Emphasis added).

In the FAC, Ameris identifies the specific statutory basis for Byrne's violations (namely § 502(c)(1), (2), (3) and (7)) and describes the factual predicates for each, including taking, copying, or other use "without permission." FAC ¶¶ 194-202.

While Byrne challenges Ameris's allegations as to "permission," the FAC includes ***detailed allegations***, including quotations from Byrne's agreements and sworn testimony, demonstrating that Byrne's transmitting, taking, copying, saving, controlling, using, and disclosing Ameris's confidential information for personal use violated Ameris policies and agreements and was done **"*without permission*.**" *Id.* ¶¶ 26, 35-63, 91-94.[10] The FAC

---

[10] Ameris need not allege that Byrne "circumvent[ed] technical barriers" to plead use "without permission" under Section 502. *West v. Ronquillo-Morgan*, 526 F. Supp. 3d 737,746; *Am. Career Coll., Inc. v. Medina*, No. CV 21-698, 2021 WL 5263858, at *3 (C.D. Cal. Sept. 28, 2021) (allegations that defendants transferred information from plaintiff's databases "without permission" are sufficient at pleading stage). Finally, Byrne's citation to his own testimony that he "worked from home" on a personal laptop does not disprove

provides ample notice and factual support establishing a plausible Section 502 claim.

**a. Authorized Access Does Not Negate Section 502 Liability**

Just as Byrne's initial access to Ameris's trade secrets did not authorize him to take them for personal use under the DTSA ***and*** CUTSA (as discussed in Section A(1)(b) above), Byrne's authorized access to Ameris's networks did not give him free license to "use," "control," "take" or "copy" Ameris's confidential data without permission and in violation of his contractual duties. Byrne's "access" argument fails under Section 502 for the same reasons that it fails under the DTSA and CUTSA; it contradicts the plain text of the statute, and binding case law expressly rejects it.

First, the plain text of Section 502 imposes liability for unauthorized actions taken pursuant to authorized, *knowing access* to another's computer systems. *See United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015) (interpreting the "plain language of" Section 502 in holding that "the term 'access' . . . includes logging into a database with a valid password and subsequently taking, copying, or using the information . . . improperly"); *see also id.* ("What makes that *access* unlawful is that the person 'without permission takes, copies, or makes use of' data"); *see also Erhart,* 387 F.Supp.3d at 1057 (Section 502 "punishes a person who '[k]nowingly accesses' a computer system for a specified unauthorized use").

Second, the Ninth Circuit has expressly rejected Byrne's argument that authorized "access" precludes liability under Section 502. Byrne anchors his argument in *Chrisman v. City of Los Angeles*, 155 Cal. App. 4th 29 (2007), but the Ninth Circuit expressly rejected *Chrisman* in support of other California Court of Appeal decisions "point[ing] to a different conclusion." *Christensen*, 828 F.3d at 789 (citing, with approval, appellate decisions finding Section 502 liability predicated on *authorized access*, holding: "If access were by

---

Ameris's allegations of use "without permission." The FAC alleges that Byrne was "***never authorized***" to, inter alia "use his personal laptop for Ameris work, to send Ameris information … to his personal email address" or to use, disclose or retain such information for his own personal benefit. FAC ¶ 56; *see also id.* ¶¶ 37-54, 62, 94.

definition unauthorized, there would be no need to exempt employees acting within the scope of their lawful employment" under subsection (h)).

Byrne further errs in relying on cases interpreting the federal Computer Fraud and Abuse Act ("CFAA"), including *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009) and *United States v. Nosal*, 676 F.3d 854, 858 (9th Cir. 2012). Again, the Ninth Circuit has emphatically rejected this comparison, holding that "The [federal and state] statutes are different. In contrast to the CFAA, **[Section 502] does not require *unauthorized* access. It merely requires *knowing* access**." *Christensen*, 828 F.3d at 789 (comparing 18 U.S.C. § 1030(a)(2) with Cal. Penal Code § 502(c)(2)); *see also Biden v. Ziegler*, 737 F. Supp. 3d 958, 975 (C.D. Cal. 2024) (The "CCDAFA [Section 502] is broader than CFAA in many respects, and the Court finds that Plaintiff has plead[ed] a viable CCDAFA claim."); *West v. Ronquillo-Morgan*, 526 F. Supp. 3d 737, 745 (C.D. Cal. 2020) (citing *Christensen*, 828 F.3d at 789) (rejecting argument that access negates Section 502 liability).[11]

**b. Byrne's Actions Were Not "Reasonably Necessary to the Performance of [His] Work" as Required Under § 502(h)**

Accepting Ameris's well-pled allegations as true and drawing all inferences in its favor, Byrne cannot establish that his actions were "reasonably necessary to the performance of his work" at Ameris.[12] Indeed, Byrne doesn't seriously contend that his actions—*in taking, saving, copying, using and disclosing confidential Ameris information*

---

[11] To the extent the Court relies on *Custom Packaging Supply, Inc. v. Phillips*, No. 215CV04584, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015), that decision does not address or reflect *Christensen's* binding holding that Section 502 imposes broader liability than the CFAA, and does *not* require unauthorized access. Byrne's further reliance on *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1107 (N.D. Cal. 2025) for the proposition that Section 502 claims generally "rise or fall" with CFAA claims" is irrelevant as *Rodriguez* focused on permission, not access, and, again, did not address *Christensen*.

[12] Section 502(h) exempts from liability acts undertaken within the scope of an employee's employment, defined as "acts which are reasonably necessary to the performance of their work assignment." Cal. Pen. Code § 502(h).

*for personal litigation and business use*—were "reasonably necessary" to his duties as Balboa's CEO, nor could he given, inter alia, his sworn testimony that he took Ameris information to "prove [a] point" in litigation. FAC ¶ 103. Because Ameris's allegations are more than sufficient at this stage, Byrne's Motion should be denied as to Ameris's Section 502 claim. *See M S Int'l, Inc. v. Patel*, No. SACV1800152, 2018 WL 11350041, at *7-8 (C.D. Cal. Nov. 26, 2018) (affirming § 502(c)(1) and (c)(2) claim where defendants accessed plaintiff's systems to email trade secret information to personal accounts, and finding such conduct to be "outside the scope" of employment). Moreover, Byrne's challenge as to what conduct arises in the scope of his employment cannot be resolved against Ameris at the pleadings stage. *See Erhart*, 387 F. Supp. 3d at 1057-1158 (dispute over scope of employment cannot be resolved at pleading stage); *Peralta v. United States*, 475 F. Supp. 3d 1086, 1094 (C.D. Cal. 2020) (whether an employee is acting within the scope of employment is ordinarily question of fact for jury).

## V. <u>CONCLUSION</u>

Ameris respectfully requests that the Court deny Byrne's Motion in its entirety. Alternatively, Ameris requests leave to amend to address any potential factual deficiencies.

Dated: September 4, 2026 **NUKK-FREEMAN & CERRA, P.C.**

By: *s/ Kirsten McCaw Grossman*

Kirsten McCaw Grossman, Esq.
*Admitted pro hac vice*
Moira Heiges-Goepfert, Esq.
Stacy L. Fode, Esq.
*Attorneys for Plaintiff*
AMERIS BANK