ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
MATTHEW T. SESSIONS (BAR NO. 307098)
CATRIONA M. LAVERY (BAR NO. 310546)
STACEY A. VILLAGOMEZ (BAR NO. 317081)
2010 Main Street, 8th Floor
Irvine, California 92614-7214
Phone: (949) 553-1313
Fax: (949) 553-8354
E-Mail: msessions@allenmatkins.com
clavery@allenmatkins.com
svillagomez@allenmatkins.com

Attorneys for Defendant
PATRICK BYRNE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMERIS BANK, a Georgia corporation,<br><br>Plaintiff,<br><br>v.<br><br>PATRICK BYRNE, an individual,<br><br>Defendant. | Case No. 8:26-cv-00393-MWC-JDE<br><br>ASSIGNED FOR ALL PURPOSES TO: Hon. Michelle Williams Court<br><br>**DEFENDANT PATRICK BYRNE'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date: Sept. 25, 2026<br>Time: 1:30 p.m.<br>Ctrm: 6A |

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 7

II. THE FAC FAILS TO STATE A CLAIM FOR MISAPPROPRIATION. .......... 7

- A. The FAC fails to allege improper acquisition. .......... 7
  - 1. Ameris's statutory interpretation arguments are unavailing. .......... 7
  - 2. Information obtained in the ordinary course of an employee's job duties is not improper acquisition. .......... 8
  - 3. The FAC's allegations of an improper purpose are conclusory and/or encompass protected activity. .......... 9
- B. The FAC fails to allege improper use or disclosure. .......... 11
  - 1. Ameris's own authorities require allegations suggesting improper use or disclosure, which the FAC lacks. .......... 11
  - 2. *JustMed* and *Gibson-Homans* define "use"—that definition applies at every stage. .......... 12
  - 3. The alleged litigation-related use or disclosure, including disclosure to Emert, is not actionable. .......... 13
  - 4. The poaching and "new business" allegations are conclusory. .......... 14

III. THE FAC FAILS TO STATE A CLAIM UNDER PENAL CODE § 502. .......... 16

- A. The FAC fails to allege Byrne acted "without permission." .......... 16
- B. Ameris's opposition fails to contend with subdivision (h) .......... 18

IV. CONCLUSION .......... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1-800 Remodel, Inc. v. Bodor*,
2018 WL 6340759 (C.D. Cal. Oct. 17, 2018) .......... 10

*1Integer, LLC v. Almeida*,
2026 WL 974283 (C.D. Cal. Mar. 3, 2026).......... 11

*AccuImage Diagnostics Corp. v. Terarecon, Inc.*,
260 F. Supp. 2d 941 (N.D. Cal. 2003).......... 13

*Agency Solutions.Com, LLC v. TriZetto Group, Inc.*,
819 F. Supp. 2d 1001 (E.D. Cal. 2011) .......... 13

*Albert's Organics, Inc. v. Holzman*,
445 F. Supp. 3d 463 (N.D. Cal. 2020).......... 15

*AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.*,
28 Cal. App. 5th 923 (2018) .......... 10, 15

*AUA Priv. Equity Partners LLC v. Soto*,
2018 WL 1684339 (S.D.N.Y. Apr. 5, 2018) .......... 9, 10

*Autodesk, Inc. v. ZWCAD Software Co.*,
2015 WL 2265479 (N.D. Cal. May 13, 2015).......... 12

*Beluca Ventures LLC v. Einride Aktiebolag*,
660 F. Supp. 3d 898 (N.D. Cal. 2023).......... 12

*Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*,
637 F.3d 1047 (9th Cir. 2011) .......... 14

*Colombo v. Palo Alto Unified Sch. Dist.*,
2024 WL 6840046 (N.D. Cal. Sept. 16, 2024).......... 13

*Columbia Sportswear Co. v. Ferreira*,
809 F. Supp. 3d 1163 (D. Or. 2025) .......... 9

*Comet Techs. United States of Am. Inc. v. Beuerman*,
2018 WL 1990226 (N.D. Cal. Mar. 15, 2018) .......... 10

*Cypress Semiconductor Corp. v. Maxim Integrated Products, Inc.*,
236 Cal. App. 4th 243 (2015) .......... 15

*Early Warning Servs., LLC v. O'Loughlin*,
2025 WL 1895313 (9th Cir. July 9, 2025) .......... 10

**Page(s)**

*Erhart v. Bofl Holding, Inc.*, 387 F. Supp. 3d 1046 (S.D. Cal. 2019) .......... 18

*eShares, Inc. v. Talton*, 727 F. Supp. 3d 482 (S.D.N.Y. 2024) .......... 8, 9

*Finton Constr., Inc. v. Bidna & Keys, APLC*, 238 Cal. App. 4th 200 (2015) .......... 13

*Gibson-Homans Co. v. Wall-Tite, Inc.*, 1992 WL 512411 (C.D. Cal. Oct. 27, 1992) .......... 12

*Hoiles v. Superior Ct.*, 157 Cal. App. 3d 1192 (1984) .......... 14

*Implicit Conversions, Inc. v. Stine*, 2024 WL 4112335 (N.D. Cal. Sept. 6, 2024) .......... 10

*J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155 (N.D. Cal. 2020) .......... 9

*JustMed, Inc. v. Byce*, 600 F.3d 1118 (9th Cir. 2010) .......... 12, 13

*KVC Group, LLC v. Reliable Capital Solutions LLC*, 2025 WL 2377038 (C.D. Cal. Aug. 8, 2025) .......... 11

*M S Int'l, Inc. v. Patel*, 2018 WL 11350041 (C.D. Cal. Nov. 26, 2018) .......... 18

*Masimo Corp. v. Apple Inc.*, 2021 WL 925885 (C.D. Cal. Jan. 6, 2021) .......... 12

*Nevada Resort Ass'n v. JB Viva Vegas, LP*, 163 F.4th 1240 (9th Cir. 2026) .......... 8

*Nicholls v. Tapis Corp.*, 2026 WL 1182195 (C.D. Cal. Apr. 23, 2026) .......... 10

*O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756 (9th Cir. 1996) .......... 14

*Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983 (S.D. Cal. 2012) .......... 8, 13

*People v. Broussard*, 5 Cal. 4th 1067 (1993) .......... 8

*People v. Multani*, 106 Cal. App. 5th 1334 (2024) .......... 8

*Peralta v. United States*, 475 F. Supp. 3d 1086 (C.D. Cal. 2020) .......... 18

**Page(s)**

*Pillsbury, Madison & Sutro v. Schectman*,
55 Cal. App. 4th 1279 (1997) .......... 13

*Rockwell Collins, Inc. v. Wallace*,
2017 WL 5502775 (C.D. Cal. Nov. 10, 2017) .......... 9, 11

*S. California Inst. of L. v. TCS Educ. Sys.*,
2011 WL 1296602 (C.D. Cal. Apr. 5, 2011) .......... 10

*Santa Clara Valley Water District v. Eisenberg*,
117 Cal. App. 5th 714 (2025) .......... 13

*Shrink Packaging Sys. Corp. v. Kist*,
2023 WL 5664733 (D.N.J. Sept. 1, 2023) .......... 9, 10

*Thrasio LLC v. Boosted Commerce Inc.*,
2022 WL 2284564 (C.D. Cal. Apr. 20, 2022) .......... 12

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) .......... 17

*United States v. Landof*,
591 F.2d 36 (9th Cir. 1978) .......... 14

*United States v. Olgado*,
2022 WL 2356996 (N.D. Cal. June 30, 2022), *aff'd*, 2024 WL 62951 (9th Cir. 2024) .......... 9

*United States v. Sanmina Corp.*,
968 F.3d 1107 (9th Cir. 2020) .......... 14

*Upstrem, Inc. v. BHFO, Inc.*,
2021 WL 2038324 (S.D. Cal. May 21, 2021) .......... 12

*Veronica Foods Co. v. Ecklin*,
2017 WL 2806706 (N.D. Cal. June 29, 2017) .......... 16

*Versata Software, Inc. v. Configit A/S*,
2021 WL 5536287 (C.D. Cal. Sept. 10, 2021) .......... 12

*VibrantCare Rehab., Inc. v. Deol*,
2021 WL 1614692 (E.D. Cal. Apr. 26, 2021) .......... 10

*Walker Products, Inc. v. Wilsey*,
2026 WL 2140035 (C.D. Cal. July 16, 2026) .......... 11

*Yates v. United States*,
574 U.S. 528 (2015) .......... 8

*Zitan Techs., LLC v. Liang Yu*,
2019 WL 95779 (D. Nev. Jan. 3, 2019) .......... 10

**Page(s)**

**Statutes**

18 U.S.C. § 1833(b)(2) .......... 11, 13, 14

18 U.S.C. § 1833(b)(2)(A) .......... 14

18 U.S.C. § 1839(6)(A) .......... 7, 8

Cal. Civ. Code § 3426.1(a) .......... 7, 8

**Treatises**

Restatement (Third) of Unfair Competition § 40 (1995) .......... 12

# I. INTRODUCTION

Ameris's FAC suffers from the same deficiencies this Court identified in the original Complaint: it fails to plead non-conclusory facts establishing that Defendant Byrne improperly acquired, used, or disclosed trade secrets, and it fails to plead that he acted without permission or beyond the scope of his job duties in violation of Penal Code § 502. The FAC continues to rest on the untenable theory that an employee's technical noncompliance with internal confidentiality policies—while accessing information he was authorized to use in the ordinary course of his duties—constitutes misappropriation under the DTSA and CUTSA. As explained below, the FAC does not allege that Byrne circumvented any security controls, accessed systems beyond his authorization, or exploited any trade secret for competitive advantage. Rather, Ameris's own allegations confirm that Byrne accessed information for legitimate work purposes and in connection with protected litigation activity.

# II. THE FAC FAILS TO STATE A CLAIM FOR MISAPPROPRIATION.

The FAC does not plausibly allege that Byrne improperly acquired information he was unauthorized to access during his employment, nor does it plausibly allege that he later used or disclosed that information in any illegal manner.

## A. The FAC fails to allege improper acquisition.

Ameris's theory of improper acquisition would turn every technical breach of an employer's confidentiality policies into a trade secrets case. That is not the law.

### 1. Ameris's statutory interpretation arguments are unavailing.

Ameris argues that a breach of an employer's internal confidentiality policies, standing alone, is sufficient to constitute "improper means" as defined in the DTSA and CUTSA. Opp. at 6–9. Both define "improper means" to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6)(A); Cal. Civ. Code § 3426.1(a). Ameris asserts the phrase "breach … of a duty to maintain secrecy" means *any* violation of a confidentiality policy is *per se* "improper means." *See* Opp.

at 10:4–5. But tools of statutory interpretation support the opposite conclusion.

The statutes' other listed means of improper acquisition—theft, bribery, misrepresentation, espionage—all involve affirmative wrongful acts of obtaining information to which the actor had no authority access. 18 U.S.C. § 1839(6)(A); Cal. Civ. Code § 3426.1(a). A "breach … of a duty to maintain secrecy" contemplates conduct akin to those enumerated wrongs, not mere noncompliance with an IT policy. *See Yates v. United States*, 574 U.S. 528, 543 (2015) (citing the principle of *noscitur a sociis*—"a word is known by the company it keeps"—to avoid ascribing to one word a meaning so broad that it is inconsistent with accompanying words); *People v. Multani*, 106 Cal. App. 5th 1334, 1348 (2024) ("[C]ourt[s] will adopt a restrictive meaning of a listed item if … acceptance of a more expansive meaning would make … the item markedly dissimilar to the other items in the list.").

Ameris's contrary reading would also produce absurd results. If every internal policy violation were "improper means," then every departing employee who retained a single confidential document in violation of a company policy would be liable for misappropriation. *See Nevada Resort Ass'n v. JB Viva Vegas, LP*, 163 F.4th 1240, 1246 (9th Cir. 2026) (statutory interpretation should "avoid creating absurd results"); *People v. Broussard*, 5 Cal. 4th 1067, 1071 (1993) (same).[1]

**2. Information obtained in the ordinary course of an employee's job duties is not improper acquisition.**

This Court and others have explained that something more than incidental breach of confidentiality policies is required for a misappropriation claim—specifically, "unusual circumstances indicating an improper or illegitimate purpose." *eShares, Inc. v. Talton*, 727 F. Supp. 3d 482, 493 (S.D.N.Y. 2024); *Columbia*

---

[1] And as *Pellerin* explained, interpreting "improper acquisition" to include "mere possession" of trade secrets by a departing employee would conflict with California's rejection of the "inevitable disclosure doctrine," meaning a former employer cannot prove trade secret misappropriation merely by demonstrating that a former employee's new job will inevitably lead him to use the former employer's trade secrets. *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 989 (S.D. Cal. 2012).

*Sportswear Co. v. Ferreira*, 809 F. Supp. 3d 1163, 1180 (D. Or. 2025) (employee merely downloading documents to personal device "likely does not give rise to a violation of federal or state law"); Dkt. 33 at 17–18.[2]

The FAC does not allege that Byrne hacked systems, circumvented controls, or accessed information outside the scope of his authorization. Instead, the FAC's allegations concern how Byrne handled information he was already authorized to access. *See* FAC ¶¶ 30–31, 156, 178. In other words, those allegations go to how Byrne allegedly used the information, not how he acquired it in the first instance.

The cases Ameris cites do not support the broad proposition that authorized access can nonetheless be "improper acquisition" and involved significantly different circumstances. *See* Opp. at 10:12–26 & n.5. In *United States v. Olgado*, the defendant circumvented security restrictions. 2022 WL 2356996, at *7 (N.D. Cal. June 30, 2022), *aff'd*, 2024 WL 62951 (9th Cir. 2024). In *AUA Priv. Equity Ptrs. LLC v. Soto*, the defendant wiped her work laptop and continued to represent herself as an AUA employee post-termination. 2018 WL 1684339, at *1–3 (S.D.N.Y. Apr. 5, 2018).[3] Nothing in the FAC alleges that Byrne circumvented controls or deleted Ameris data.

**3. The FAC's allegations of an improper purpose are conclusory and/or encompass protected activity.**

Ameris argues two grounds for its assertion that an improper purpose animated Byrne's acquisition of trade secrets: (1) that he planned to use them for a new

[2] Ameris contends that the Court should disregard *eShares* and *Columbia* because the courts ultimately allowed claims of misappropriation to proceed. Opp. at 11:1–11. But both involved *additional allegations* beyond policy violations. In *eShares*, 727 F. Supp. 3d at 488, the defendant "wiped" company laptops, deleting his user activity on those devices. In *Columbia*, 809 F. Supp. 3d at 1180, the defendant began downloaded company files to a hard drive he had not used in nearly two years immediately after interviewing with a competitor.

[3] *See also J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155 (N.D. Cal. 2020) (defendants used trade secrets to "woo" clients away from plaintiff); *Shrink Packaging Sys. Corp. v. Kist*, 2023 WL 5664733, at *7 (D.N.J. Sept. 1, 2023) (breach of confidentiality policies alleged to be part of conspiracy to freeze out dissenting shareholder). The analysis in *Rockwell Collins, Inc. v. Wallace* focused on whether plaintiff had sufficiently defined its alleged trade secrets and analyzed acquisition in one sentence. 2017 WL 5502775, at *1 (C.D. Cal. Nov. 10, 2017).

business, and (2) that he intended to use documents in his retaliation suit. The first ground is conclusory and the second is premised on protected activity.

Merely reciting a belief that Byrne "intends to disclose [or use] information without any facts plausibly suggesting 'words or conduct' that would indicate imminent misuse falls well short of what is required" to plead misappropriation. *S. California Inst. of L. v. TCS Educ. Sys.*, 2011 WL 1296602, at *8 (C.D. Cal. Apr. 5, 2011). Because Ameris pleads only conclusory allegations that Byrne intends to use trade secrets in a new business, the FAC fails to allege that Byrne acquired trade secrets for an improper purpose. Allegations that Byrne is soliciting employees to join a new business makes no difference. Employees' identities are not protected secrets when already known or easily obtainable. *See* Section II.B.4, *infra*.

In the cases Ameris cites, the allegations included specific circumstances—not present here—which supported an inference of an improper (and not protected) purpose for the alleged acquisition of trade secrets. *See* Opp. at 13:13–25 & n.6; *Early Warning Servs., LLC v. O'Loughlin*, 2025 WL 1895313, at *2 (9th Cir. July 9, 2025) (defendant "repeatedly published" the trade secrets); *Implicit Conversions, Inc. v. Stine*, 2024 WL 4112335, at *2 (N.D. Cal. Sept. 6, 2024) ("[A]fter his access to [company] systems had been terminated, [defendant] 'unlawfully accessed and tampered with'" the computer systems.).[4]

[4] *See also Nicholls v. Tapis Corp.*, 2026 WL 1182195, at *5 (C.D. Cal. Apr. 23, 2026) (employee downloaded files soon before departure from company in a pattern that did not follow his "regular practice" during employment, including accessing files from new devices); *VibrantCare Rehab., Inc. v. Deol*, 2021 WL 1614692, at *1–2 (E.D. Cal. Apr. 26, 2021) (defendant was plaintiff's former director of recruiting and contacted job candidates in highly competitive industry to discourage them from accepting employment with plaintiff); *Zitan Techs., LLC v. Liang Yu*, 2019 WL 95779, at *4 (D. Nev. Jan. 3, 2019) (analysis hinged on adverse inference resulting from defendant's destruction of hard drive); *Comet Techs. United States of Am. Inc. v. Beuerman*, 2018 WL 1990226, at *4 (N.D. Cal. Mar. 15, 2018) (defendant made false representations to plaintiff, including denying that he was leaving to work for a competitor); *1-800 Remodel, Inc. v. Bodor*, 2018 WL 6340759, at *3, *5–7 (C.D. Cal. Oct. 17, 2018) (defendant deleted files from company laptop and sent others to personal email address after "wrestl[ing] the laptop away" from company's principal); *Shrink Packaging*, 2023 WL 5664733, at *5, *7 (breach of confidentiality policies alleged to be part of a conspiracy to freeze out dissenting shareholder); *AUA Priv. Equity Ptrs.*, 2018 WL 1684339, at *1–3 (defendant wiped work laptop). And

Ameris's second theory of Mr. Byrne's alleged improper purpose is protected by litigation privilege and 18 U.S.C. § 1833(b)(2). *See* Section II.B.3, *infra*. To credit Ameris's allegations would render litigation privilege and § 1833(b)(2) meaningless.

**B. The FAC fails to allege improper use or disclosure.**

Ameris's improper use or disclosure allegations repeat the same deficiency this Court already identified. Dkt. 33 at 17–18 ("[T]he Complaint fails to allege non-conclusory facts that Byrne used the trade secret for some concurrent illegitimate purpose beyond mere possession.").

**1. Ameris's own authorities require allegations suggesting improper use or disclosure, which the FAC lacks.**

Ameris's own authorities demonstrate that a plaintiff must plead nonconclusory facts suggesting improper use or disclosure actually occurred.

In *Walker Products, Inc. v. Wilsey*, 2026 WL 2140035, at *9 (C.D. Cal. July 16, 2026), the plaintiff alleged that a defendant-former employee met with a competitor while still employed by plaintiff and then joined the competitor, which launched a product with "alarming similarities" to plaintiff's on an infeasible time line. Here, the FAC alleges no comparable facts from which the Court could infer that Byrne progressed from merely possessing Ameris's documents to actually using the trade-secret information they allegedly contained.

The same pattern holds across Ameris's remaining authorities. *See* Opp. at 16:8–23. In *Integer, LLC v. Almeida*, 2026 WL 974283, at *4 (C.D. Cal. Mar. 3, 2026), the defendant secretly co-founded a competitor while still employed and built a platform with "nearly identical functionality." In *KVC Group, LLC v. Reliable Capital Solutions LLC*, 2025 WL 2377038, at *5 (C.D. Cal. Aug. 8, 2025), former employees took a client list, formed a competitor, and solicited clients with underbid deals informed by trade secret information. And in *Autodesk, Inc. v. ZWCAD*

---

in *Rockwell Collins, Inc. v. Wallace*, 2017 WL 5502775, at *2–3 (C.D. Cal. Nov. 10, 2017), the analysis focused on whether plaintiff had alleged trade secrets; the court analyzed acquisition in one sentence.

*Software Co.*, 2015 WL 2265479, at *1 (N.D. Cal. May 13, 2015), the plaintiff alleged wholesale copying of its source code and displayed comparisons of "identical idiosyncrasies and bugs" that supported the inference that the code had been copied.[5]

Unlike Ameris's cases, the FAC alleges no competing product, no solicited Ameris customer, no incorporation into any business offering, no exploitation of any kind. Ameris's conclusory, information-and-belief assertions that Byrne "used" trade secrets cannot fill that gap. *See Masimo Corp. v. Apple Inc.*, 2021 WL 925885, at *8 (C.D. Cal. Jan. 6, 2021) ("[A] conclusory allegation based on information and belief remains insufficient under *Iqbal*/*Twombly*.").

**2. *JustMed* and *Gibson-Homans* define "use"—that definition applies at every stage.**

Ameris argues that the Court should disregard *JustMed* and *Gibson-Homans* because of their procedural posture. Opp. at 17:13–19. But their procedural posture does not limit the definition of "use" they apply. "Use" requires conduct that "reduces the value of the trade secret to the … owner" or gives the defendant an "unfair trade advantage." *JustMed*, 600 F.3d 1118, 1130 (9th Cir. 2010) (discussing Restatement (Third) of Unfair Comp. § 40, cmt. c (1995)). *Gibson-Homans* applies the same principle, holding that no misappropriation occurred where the defendant had "not used the formulas or otherwise impaired their commercial benefit." 1992 WL 512411, at *4 (C.D. Cal. Oct. 27, 1992).

Courts routinely apply that definition at the pleading stage. Ameris ignores *AccuImage Diagnostics Corp. v. Terarecon, Inc.*, where the court, on a motion to

[5] *See Thrasio LLC v. Boosted Commerce Inc.*, 2022 WL 2284564, at *3 (C.D. Cal. Apr. 20, 2022) (defendant accessed plaintiff's dataroom multiple times and then used plaintiff's proprietary due diligence process to form a company providing due diligence services); *Upstrem, Inc. v. BHFO, Inc.*, 2021 WL 2038324, at *6 (S.D. Cal. May 21, 2021) (defendant-former executive used trade secrets in his new role at competitor, including specific information regarding acquisition targets); *Versata Software, Inc. v. Configit A/S*, 2021 WL 5536287, at *10 (C.D. Cal. Sept. 10, 2021) (defendant incorporated plaintiff's trade secrets into patents and marketed competing software); *Beluca Ventures LLC v. Einride Aktiebolag*, 660 F. Supp. 3d 898, 910 (N.D. Cal. 2023) (market report shared with competitor).

dismiss, concluded that the plaintiff failed to plead unauthorized or nonconsensual disclosure or use of trade secrets. 260 F. Supp. 2d 941, 951 & n.5 (N.D. Cal. 2003); *accord Pellerin*, 877 F. Supp. 2d at 989 (dismissing trade secret claims where the plaintiff alleged no facts showing use or disclosure); *Agency Solutions.Com, LLC v. TriZetto Group, Inc.*, 819 F. Supp. 2d 1001, 1028 (E.D. Cal. 2011) (applying *JustMed*'s definition for motion for preliminary injunction). Thus, the FAC must allege facts plausibly showing that Byrne diminished the value of or obtained an unfair advantage from trade secrets. The FAC does not do so.[6]

**3. The alleged litigation-related use or disclosure, including disclosure to Emert, is not actionable.**

Ameris contends that Byrne sending documents to his personal email "for use in his lawsuit" (FAC ¶ 99) constitutes "textbook unauthorized use." Opp. at 18:7. But Ameris alleges no facts to suggest that Byrne's use of documents in litigation exploited the trade secret's competitive value or conferred an unfair trade advantage on Byrne in any commercial sense. *See JustMed*, 600 F.3d at 1130.

Ameris's litigation-related allegations fail to plead actionable use or disclosure for the independent reason that the alleged activities are protected by litigation privilege and the DTSA whistleblower immunity. *See Finton Constr., Inc. v. Bidna & Keys, APLC*, 238 Cal. App. 4th 200, 212 (2015); 18 U.S.C. § 1833(b)(2). Ameris's "self-help" authorities do not establish otherwise. *See* Opp. at 18:8–19:11. *None* of the self-help cases cited involved alleged misappropriation of trade secrets. *See Pillsbury, Madison & Sutro v. Schectman*, 55 Cal. App. 4th 1279, 1287–89 (1997) (noting documents were not alleged trade secrets); *Santa Clara Valley Water District v. Eisenberg*, 117 Cal. App. 5th 714 (2025) (not involving trade secrets).[7]

[6] Ameris now appears to allege that Byrne is building a "related business" (Opp. at 17 n.8), but the FAC does not allege a "related" business venture. The Court can only consider what the FAC itself alleges, not allegations raised for the first time in opposition to a motion to dismiss. *Colombo v. Palo Alto Unified Sch. Dist.*, 2024 WL 6840046, at *6 (N.D. Cal. Sept. 16, 2024) ("[T]he Court can only consider allegations in the complaint, not those in Plaintiff's opposition to the motion to dismiss.")

[7] Moreover, Ameris's remaining self-help cases recognize the benefit of public policy

And Ameris's tortured interpretation of 18 U.S.C. § 1833(b)(2) is not persuasive. Ameris appears to argue that the statute requires the employee to "file each trade secret document under seal," Opp. at 20:4–5, but the statute imposes no such requirement. The statute says that the employee must file "any document containing the trade secret under seal," simply meaning that the trade secrets should not be publicly disclosed in court filings. 18 U.S.C. § 1833(b)(2)(A).[8]

Ameris continues to argue that any litigation or whistleblower protection does not apply to communication with Emert, asserting that she is not Byrne's agent. Opp. at 21:13–14. But the FAC confirms the agency relationship. *See generally United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (recognizing privilege may extend to communications with agents of client).[9] The FAC concedes that Emert was Byrne's employee, that she emailed documents to Byrne's expert, and that the "*only* logical explanation (or at a minimum, a very plausible explanation)" to draw from these actions is that Byrne's disclosure to her was "in connection with his litigation against Ameris." FAC ¶¶ 102–03, 122–23 (emphasis added).[10]

**4. The poaching and "new business" allegations are conclusory.**

Ameris asserts that Byrne "utilized trade secrets to poach two identified

---

exceptions to strict applications of confidentiality restrictions. *See Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1061–62 (9th Cir. 2011) (noting in *dicta* there may be "some merit in" reading a "public policy exception" into employer's confidentiality agreement); *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763–64 (9th Cir. 1996) (analyzing protected activity under the ADEA, i.e., whether accessing and disclosing confidential documents constitutes "reasonable attempts to contest an employer's discriminatory practices").

[8] Ameris also argues that Byrne disclosed the trade secret, in violation of subsection (b)(2)(B), but the statute explicitly allows the employee to "disclose the trade secret to [his] attorney." 18 U.S.C. § 1833(b)(2).

[9] Ameris argues that *Sanmina* is a tax case but that is irrelevant; that attorney-client privilege may extend to a client's agents is well established. *See, e.g.*, *United States v. Landof*, 591 F.2d 36, 39 (9th Cir. 1978) (explaining that presence of a third-party agent of a client may not destroy attorney-client privilege); *Hoiles v. Superior Ct.*, 157 Cal. App. 3d 1192, 1200 (1984) (noting that privilege may extend to communications with "agents of the party or his attorneys").

[10] The FAC's allegations that Byrne disclosed trade secrets to Emert in anticipation of her own litigation are pleaded on information and belief and identify no particular secret allegedly disclosed. *See* FAC ¶¶ 124–28.

employees and establish another business enterprise." Opp. at 28. But the FAC's actual allegations support no plausible inference of the use of trade secrets in either.

On recruitment: FAC ¶ 131 alleges, "on information and belief," that Byrne "relied on Ameris information to recruit two former Ameris employees." The only trade-secret category identified is "employee contact information, salary information and other HR related data." FAC ¶ 131. But *recruiting known former colleagues* is lawful competition—it does not become misappropriation simply because the recruiter once had access to HR data. *AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.*, 28 Cal. App. 5th 923, 944–45 (2018) (identity of employees is not a trade secret when the recruiter already knew them independently); *Cypress Semiconductor Corp. v. Maxim Integrated Products, Inc.*, 236 Cal. App. 4th 243, 250–51, 255 (2015) ("no actionable wrong is committed by a competitor who solicits … his competitor's employees … so long as the inducement to leave is not accompanied by unlawful action"). The FAC alleges no facts showing that Byrne needed or used confidential salary or contact information to recruit the employees; it merely recites, on information and belief, that he "relied on Ameris information." The allegation therefore remains precisely the type of conclusory assertion that someone "apparently or improperly used a list" that *Cypress Semiconductor* found insufficient. 236 Cal. App. 4th at 262.

Ameris's reliance on *Albert's Organics, Inc. v. Holzman*, 445 F. Supp. 3d 463 (N.D. Cal. 2020), is misplaced. There, the court held that the plaintiff's generic category of "personnel files and records" was not a sufficient pled trade secret. *Id.* at 472–74. The trade secrets claim was allowed to proceed because more specific allegations such as that the defendant "sent correspondence to prospective business partners describing a proposed plan to create a competing business" and included confidential information in that correspondence. *Id.* at 473–74.

On the "new business": FAC ¶ 129 asserts that Byrne "intentionally used" trade secrets "for personal purposes unrelated to Ameris's business, including his

own business endeavors." FAC ¶ 130 then states, "on information and belief," that Byrne "is in the early stages of developing another business enterprise." The FAC does not identify the nature of the business, its industry, or that it competes with Ameris. A conclusory assertion that a defendant was "using trade secrets" to build an unspecified business is "a legal conclusion couched as a factual allegation" that does not survive a motion to dismiss. *Veronica Foods Co. v. Ecklin*, 2017 WL 2806706, at *14 (N.D. Cal. June 29, 2017) (dismissing trade-secret claims where plaintiff alleged, "in largely conclusory 'everything-but-the-kitchen-sink' fashion," broad categories of misuse "without specific factual allegations of misuse").

Because the FAC does not plausibly allege improper acquisition, use, or disclosure, the DTSA and CUTSA claims must be dismissed.

## III. THE FAC FAILS TO STATE A CLAIM UNDER PENAL CODE § 502.

In support of its Section 502 claim, Ameris argues that (1) Byrne acted "without permission" and that (2) Byrne's actions were not reasonably necessary to the performance of his work under section 502(h). In doing so, Ameris doubles down on the conclusory (even contradictory) allegations in its FAC and ignores the case law cited in Byrne's moving brief that broadly define permissible activity and what it means to act within the scope of one's employment.

### A. The FAC fails to allege Byrne acted "without permission."

Attempting to support its argument that Byrne acted "without permission" in violation of section 502(c), Ameris cites a wide range of FAC paragraphs that are, at best, conclusory, but also irrelevant to whether Byrne acted without permission and thus violated section 502. Ameris cites to FAC ¶¶ 26, 35–63, and 91–94. Opp. at 22:19–23. Yet none of these paragraphs plead facts showing that Byrne improperly accessed data or used Ameris information for an improper purpose (i.e., beyond the scope of his permission). Paragraph 26 merely states in conclusory fashion that Byrne "was not granted any permission or rights to misuse Ameris's computer systems or misappropriate Ameris's documents." Paragraphs 35-63, in large part, recite policies

but fail to overcome the fact the FAC pleads only legitimate uses for the information accessed. Paragraphs 91-94 cite Byrne's testimony, which confirms that he was permitted to access and use sensitive information in the scope of his employment and that it was common knowledge he would use his personal device to work from home.

Next, Ameris tries to emphasize that a Section 502 claim can survive even when a defendant has "authorized access" to sensitive information. Opp. at 23:3-9. But that argument misses the point that the FAC fails to plead Byrne did anything *without permission*. Byrne's position is not merely that his authorized access to information *automatically* precludes liability under section 502 (though authorized access is one factor showing he had permission). Byrne's position is that his authorized access *plus* his acting within the scope of his employment and/or for privileged purposes precludes liability. Byrne's position is confirmed by Ameris's own cited case law, where the defendants acted improperly, beyond the scope of their authorization, in a way the FAC fails to plead against Byrne.

In *United States v. Christensen*, for example, the Ninth Circuit upheld section 502-related *criminal convictions* of two defendants who accessed their employers' information and shared that information to knowingly aide a criminal wiretapping operation. 828 F.3d 763, 789–90 (9th Cir. 2015). The court held that the term "access … includes logging into a database with a valid password *and* subsequently taking, copying, or using the information in the database *improperly*." *Id.* at 789 (emphasis added). Thus, while the defendants arguably had authorized access to their employers' information, they violated section 502 because they shared that information with a third party to carry out criminal activity (i.e., they used the information without permission for an unauthorized purpose). *Id.*

Ameris's FAC makes no plausible allegation that Byrne used the information for an improper purpose. On the contrary, the FAC alleges that it was "pretty common knowledge" that Byrne used the information on his personal computer for work purposes and that Byrne otherwise used information for protected litigation purposes.

### B. Ameris's opposition fails to contend with subdivision (h)

Next, Ameris argues that Byrne's actions do not fall within subdivision (h)'s "within the scope of lawful employment" exemption. Ameris simply doubts Byrne's intentions by stating that Byrne "doesn't seriously contend that his actions … were 'reasonably necessary' to his duties as Balboa's CEO." The case Ameris cites—*M S Int'l, Inc. v. Patel*, 2018 WL 11350041 (C.D. Cal. Nov. 26, 2018)—is distinguishable because, there, the defendant-employees secretly accessed information on the plaintiff-employer's computers to "copy and steal" files and trade secrets, in part, for the benefit of a "direct competitor" with whom they had secured employment. *Id.* at *2. Again, the FAC does not plausibly allege that Byrne used the information for an improper purpose, such as to secretly benefit a competitor.

Instead, the FAC itself admits that Byrne accessed and transmitted sensitive information for a proper and widely-known purpose: to carry out his duties as CEO on his home computer. This admission falls plainly into subdivision (h)'s "within the scope of lawful employment" carveout. And to the extent Byrne used such information more broadly, the FAC also admits that Byrne used it for litigation purposes in his whistleblower retaliation suit, which is a protected purpose.

Finally, Ameris argues that whether Byrne acted within the scope of his employment is a factual issue. But Ameris's cases are distinguishable.[11] Here, the FAC pleads no facts to show that Byrne acted outside his scope of employment. To the contrary, the FAC admits that Byrne was authorized to access the information in question and does not plausibly plead any improper purpose. Accordingly, the FAC itself establishes that Byrne's activity falls within subdivision (h).

## IV. CONCLUSION

Byrne respectfully requests that the Court grant Byrne's Motion in its entirety.

[11] *See Erhart v. BofI Holding, Inc.*, 387 F. Supp. 3d 1046, 1052 (S.D. Cal. 2019) (allegations included that employee conducted unapproved investigations beyond the scope of audit plans); *Peralta v. United States*, 475 F. Supp. 3d 1086, 1090–91 (C.D. Cal. 2020); *Peralta v. United States*, 475 F. Supp. 3d 1086, 1090–91 (C.D. Cal. 2020) (not a section 502 case; discussing *respondeat superior* principles).

Dated: September 11, 2026

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
MATTHEW T. SESSIONS

By: *\/s/ Matthew T. Sessions*
MATTHEW T. SESSIONS
Attorneys for Defendant
PATRICK BYRNE

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel certifies that this brief complies with the 12-page limit set by court order dated May 31, 2026.

Dated: September 11, 2026

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
MATTHEW T. SESSIONS

By: */s/ Matthew T. Sessions*
MATTHEW T. SESSIONS
Attorneys for Defendant
PATRICK BYRNE